

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x

EMCOR GROUP, INC.,                                :    Civil Action No.
                                                              Docket 3:00-CV-2211 (AVC)
                              Plaintiff,              :
                                                              Judge Alfred V. Covello
vs.                                                       :

                                                              **SECOND AMENDED ANSWER**

INSURANCE COMPANY OF NORTH AMERICA.  :

                              Defendant.            :    June 14, 2002

------------------------------------------------------------------ x

Defendant INSURANCE COMPANY OF NORTH AMERICA ("INA"), by its attorneys

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, pursuant to Fed.R.Civ.P. 8(b) and 8(c)

hereby responds to Plaintiff's Second Amended Complaint as follows:

### AS AND FOR AN ANSWER TO THE FIRST COUNT

(Breach of Contract)

1.    Denies having knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations contained in Paragraph "1" of the Second Amended Complaint.

2.    Admits the allegations contained in Paragraph "2" of the Second Amended

Complaint.

3.    Denies having knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations contained in Paragraph "3" of the Second Amended Complaint,

except admits that INA was licensed to transact certain lines of insurance in the State of

Connecticut for certain periods of time.

1138922.1

4.     Denies the allegations contained in Paragraph "4" of the Second Amended Complaint, but admits that it issued general liability policies of insurance to JWP, Inc., the named insured, for the periods October 1, 1992 to October 1, 1993, October 1, 1993 to October 1, 1994, and October 1, 1994 to October 1, 1995. Further answering, INA states that the terms, conditions and exclusions of the above-referenced policies, including the endorsements, speak for themselves.

5.     Denies the allegations contained in Paragraph "5" of the Second Amended Complaint.

6.     Denies the allegations contained in Paragraph "6" of the Second Amended Complaint that Emcor duly paid insurance premiums to INA, and denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations.

7.     Denies the allegations contained in Paragraph "7" of the Second Amended Complaint except admits that the policies referenced in Paragraph "4" of this Second Amended Answer contain a Section I captioned "Coverages" which contain in part, the words alleged in Paragraph "7" of the Second Amended Complaint. Further answering, INA states that the terms, conditions and exclusions of the above-referenced policies, including the endorsements, speak for themselves.

8.     Denies the allegations contained in Paragraph "8" of the Second Amended Complaint, except admits that the policies referenced in Paragraph "4" of this Second Amended Answer contain a Section V captioned "Definitions" which contain in part, the words alleged in Paragraph "8" of the Second Amended Complaint. Further answering, INA states that the terms,

- 2 -

conditions and exclusions of the above-referenced policies, including the endorsements, speak for themselves.

9.    Denies the allegations contained in Paragraph "9" of the Second Amended Complaint, except admits that the policies referenced in Paragraph "4" of this Second Amended Answer contain a page captioned "Declarations" which set forth the limits of insurance as $2,000,000 general aggregate limit (other than Products/Completed Operations) and Products/Completed Operations aggregate limit of $3,000,000. Further answering, INA states that the terms, conditions and exclusions of the above-referenced policies, including the endorsements, speak for themselves.

10.    Denies the allegations contained in Paragraph "10" of the Second Amended Complaint, except admits that the policies referenced in Paragraph "4" of this Second Amended Answer contain a page captioned "Declarations" which set forth the limits of insurance as $2,000,000 general aggregate limit (other than Products/Completed Operations) and Products/Completed Operations aggregate limit of $3,000,000. Further answering, INA states that the terms, conditions and exclusions of the above-referenced policies, including the endorsements, speak for themselves.

11.    With respect to Paragraph "11" of the Second Amended Complaint, admits that the General Aggregate Limit of $2,000,000 of each of the policies referenced in Paragraph "4" of this Second Amended Answer has been exhausted, and that INA is no longer responsible to pay those sums the insured becomes legally obligated to pay as damages pursuant to the terms and conditions of the policies as a result of the exhaustion of the applicable limits of insurance.

- 3 -

Further answering, Defendant admits that it never had a duty to defend pursuant to Endorsement 32 of each referenced policy and denies all remaining allegations.

12.    With respect to Paragraph "12" of the Second Amended Complaint, admits that the Products/Completed Operations Aggregate Limits of Insurance in each of the policies referenced in Paragraph "4" of this Second Amended Answer have not been exhausted as of the date of this Answer and denies all remaining allegations.

13.    Denies the allegations contained in Paragraph "13" of the Second Amended Complaint.

14.    Denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph "14" of the Second Amended Complaint, but pursuant to the policies referenced in Paragraph "4" of this Second Amended Answer, INA has and had no obligation to defend Plaintiff or to pay for the defense of Plaintiff, and refers all questions of law to the Court for determination at the time of trial.

15.    Denies the allegations contained in Paragraph "15" of the Second Amended Complaint.

16.    Denies the allegations contained in Paragraph "16" of the Second Amended Complaint.

## AS AND FOR AN ANSWER TO THE SECOND COUNT

### (Breach of Contract)

1-16.   With respect to Paragraph "1-16" of the First Count of the Second Amended Complaint, repeats and incorporates by reference the responses contained in Paragraph "1" through "16" above as if set forth at length herein.

17.   Denies the allegations contained in Paragraph "17" of the Second Amended Complaint.

18.   Denies the allegations contained in Paragraph "18" of the Second Amended Complaint.

19.   Denies the allegations contained in Paragraph "19" of the Second Amended Complaint.

20.   Denies the allegations contained in Paragraph "20" of the Second Amended Complaint.

21.   Denies the allegations contained in Paragraph "21" of the Second Amended Complaint.

22.   Denies the allegations contained in Paragraph "22" of the Second Amended Complaint.

1138922.1

## AS AND FOR AN ANSWER TO THE THIRD COUNT

(Breach of Contract – Misclassification/Dynalectric)

1-4.    With respect to Paragraph "1-4" of the First Count of the Second Amended Complaint, repeats and incorporates by reference the responses contained in Paragraph "1" through "4" above as if set forth at length herein.

5.    Denies the allegations contained in Paragraph "5" of the Third Count of the Second Amended  Complaint, but admits that INA issued a general liability policy of insurance to Dynalectric Compnaies, the named insured, for the period October 1, 1993 to October 1, 1994. Further answering, INA states that the terms, conditions and exclusions of the above-referenced policy, including the endorsements, speak for themselves.

6.    Denies knowledge and information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph "6" of the Third Count of the Second Amended Complaint.  Further answering, INA states that the terms, conditions and exclusions of the 1993-1994 INA Policy, including the endorsements, speak for themselves.

7.    Denies the allegations contained in Paragraph "7" of the Third Count of the Second Amended Complaint.

8.    Denies the allegations contained in Paragraph "8" of the Third Count of the Second Amended Complaint.

9.    Denies the allegations contained in Paragraph "9" of the Third Count of the Second Amended Complaint.

- 6 -

1138922.1

## AS AND FOR AN ANSWER TO THE FOURTH COUNT

### (Bad Faith)

1-27.   With respect to Paragraph "1-22" of the Second Count and Paragraph "5-9" of the Third Count of the Second Amended Complaint, repeats and incorporates by reference the responses to Paragraph "1" through "22" and Paragraphs "5" through "9" above as if set forth at length herein.

28.   The allegations contained in Paragraph "28" of the Second Amended Complaint are conclusions of law as to which no response can be made or is required.  To the extent that any response is required, INA exercised the utmost of good faith and fair dealing with respect to the insured with respect to the policies referenced in Paragraph "4" of this Second Amended Answer, refers all questions of law and questions of the relations, rights, and obligations of the parties to the Court for determination at the time of trial, and denies all remaining allegations.

29.   Denies the allegations contained in Paragraph "29" of the Second Amended Complaint.

30.   Denies the allegations contained in Paragraph "30" of the Second Amended Complaint.

## AS AND FOR AN ANSWER TO THE FIFTH COUNT

### (Breach of Fiduciary Duty)

1-30.   With respect to Paragraph "1-30" of the Fourth Count of the Second Amended Complaint, repeats and incorporates by reference the responses to Paragraph "1" through "30" above as if set forth at length herein.

- 7 -

31.    The allegations contained in Paragraph "31" of the Second Amended Complaint are conclusions of law as to which no response can be made or is required.  To the extent that any response is required, INA denies the allegations and refers all questions of law to the Court for determination at the time of trial.

32.    The allegations contained in Paragraph "32" of the Second Amended Complaint are conclusions of law as to which no response can be made or is required.  To the extent that any response is required, INA considered the interests of its insured as required by the terms of the policies referenced in Paragraph "4" of this Second Amended Answer and applicable law, denies the remaining allegations, and refers all questions of law to the Court for determination at the time of trial.

33.    Denies the allegations contained in Paragraph "33" of the Second Amended Complaint.

34.    Denies the allegations contained in Paragraph "34" of the Second Amended Complaint.

## AS AND FOR AN ANSWER TO THE SIXTH COUNT

### (Declaratory Judgment)

1-27    With respect to Paragraph "1-22" of the Second Count and Paragraph "5-9" of the Third Count of the Second Amended Complaint, repeats and incorporates by reference the responses to Paragraph "1" through "22" and Paragraph "5" through "9" above as if set forth at length herein.

### FOURTH SPECIAL DEFENSE

Plaintiff breached the implied covenant of good faith and fair dealing inherent in its contract(s) with INA, and by virtue of said breach, Plaintiff's claims are barred in whole or in part.

### FIFTH SPECIAL DEFENSE

The causes of action in the Complaint are barred in whole or in part by the equitable doctrines of laches, waiver, estoppel, and unclean hands.

### SIXTH SPECIAL DEFENSE

The causes of action in the Second Amended Complaint are barred in whole or in part by the applicable Statutes of Limitations.

### SEVENTH SPECIAL DEFENSE

To the extent that Plaintiff claims that it is owed a duty or obligation by INA not expressly provided in the written insurance policies under which Plaintiff claims the duty or obligation arises, Plaintiff's causes of action with respect to such duty or obligation are barred by the Statute of Frauds.

### EIGTH SPECIAL DEFENSE

The causes of action in the Second Amended Complaint are barred in whole or in part because any and all exemplary or punitive damages claims alleged in the Complaint violate INA's right to procedural due process under the Fifth and Fourteenth Amendments of the United States Constitution and are therefore barred in whole or in part by virtue of the "supremacy clause" of Article VI of the United States Constitution.

- 10 -

## NINTH SPECIAL DEFENSE

The causes of action in the Second Amended Complaint are barred in whole or in part because any and all exemplary or punitive damages claims alleged in the Complaint violate INA's right to protection from "excessive fines" as provided in the Eighth Amendment of the United States Constitution and are therefore barred in whole or in part by virtue of the "supremacy clause" of Article VI of the United States Constitution.

## TENTH SPECIAL DEFENSE

The Second Amended Complaint fails to allege sufficient facts to support an award of punitive damages against INA.

## ELEVENTH SPECIAL DEFENSE

Plaintiff lacks the requisite capacity, standing and authority to bring the within action to the extent that it is not a real party in interest and/or has no right to any benefits provided under the terms and provisions of the policies referenced in Paragraph "4" and Paragraph "5" in the answer to the Third Count of this Second Amended Answer.

## TWELVTH SPECIAL DEFENSE

All classifications of claims by INA and all actions by INA during the terms of the policies referenced in Paragraph "4" and Paragraph "5" of this Second Amended Answer were performed properly, fairly, and in good faith.

## THIRTEENTH SPECIAL DEFENSE

The General Aggregate Limit of $2,000,000 of each of the policies referenced in Paragraph 4 of this Second Amended Answer has been exhausted, and therefore INA is no longer responsible to pay those sums the insured becomes legally obligated to pay as damages

- 11 -

pursuant to the terms and conditions of the policies as a result of the exhaustion of the applicable

limits of insurance.

### FOURTEENTH SPECIAL DEFENSE

The causes of action in the Second Amended Complaint may not be maintained in whole

or in part because of collateral estoppel, res judicata and/or release.

**WHEREFORE,** Insurance Company of North America respectfully requests that the

Court dismiss the Plaintiff's Complaint with prejudice, and grant such other and further relief as

this Court deems just and appropriate.

DEFENDANT INSURANCE COMPANY
OF NORTH AMERICA

Thomas Lehorn (CT #22106)
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000 -- telephone
(212) 490-3038 -- facsimile
File No.: 00756.35967

Co- Counsel
Duncan B. Hume (Federal Bar # 05581)
Hume & Associates
One Landmark Square
Stamford, Connecticut 06901-2620
(203) 348-7252

- 12 -

1138922.1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Second Amended Answer and Special Defenses of Defendant Insurance Company of North America was forwarded, via first class mail, postage prepaid, to the following counsel of record on June _18_ , 2002.

Saxe Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, Connecticut 06517
(203) 287-8890

_Gregory S. Pinter_
/Gregory S. Pinter

1138922.1



031113

24        right after lunch.

25                MR. VITA:  Normally, and as you have

DEL VECCHIO REPORTING
(203) 245-9583

6

**ROUGH DRAFT**

1        done with us already and us with you,

2        normally if there's a problem with the

3        privilege log that's been provided to

4        opposing counsel and it's insufficient in

5        some way, that's discussed between counsel,

6        not with the witness.

7                MR. OELSNER:  And that has been done in

8        this case.

9                MR. VITA:  And additional documents were

10        produced to you about two weeks ago.

11                MR. OELSNER:  Right.  And there is --

12        well, actually longer than that.  Whatever,

13        but there are additional documents that have

14        not been produced, which is fine.

15                MR. VITA:  That's correct, because

16        they're privileged.

17                MR. OELSNER:  In your view they're

18        privileged, and I'm entitled where this

Page 72

031113

19     witness has been involved in that particular

20     document, according to the privilege log, to

21     inquire in such a way as to assist the court

22     in developing whether or not the privilege or

23     ruling I should say, whether that privilege

24     was properly invoked because as I told you on

25     numerous occasions now that at least in my

DEL VECCHIO REPORTING<br>(203) 245-9583

6

**ROUGH DRAFT**

1     opinion the description on the document was

2     insufficient to support the particular

3     privilege that Emcor was taking.  But I'm not

4     going to debate.

5         MR. VITA:  The proper recourse is a

6     motion to compel, not to ask the witness the

7     basis of the privilege.  I asserted the

8     privilege, not him.

9         MR. OELSNER:  I can ask about the

10     document.

11         MR. VITA:  You can ask about -- I can't

12     imagine there's going to be very --

13         MR. OELSNER:  Whether you can imagine it

Page 73

031113

14    or not, and certainly --

15        MR. VITA:  I'm going to tell you it's

16    going to be heavily objected to and I'm going

17    to tell him not to answer.

18        MR. OELSNER:  Fine.  But certainly where

19    you've redacted heavily in documents where

20    all I see is a blank piece of paper, I think

21    I can inquire into that.  You disagree,

22    that's fine.  What's the worst that could

23    happen?  Three things would happen.  Either

24    you win, fine; I win, you give me the

25    document; or there's insufficient information

DEL VECCHIO REPORTING
(203) 245-9583

6

2

**ROUGH DRAFT**

1    and this witness will come back.  I don't

2    care, but I will go through it now and you'll

3    do, Jeff, whatever you think is appropriate.

4        MR. VITA:  And I think you should do

5    whatever you feel appropriate and normally

6    that's the motion to compel.

7        MR. OELSNER:  So get the privilege log

8    during the lunch break and we'll do that.

Page 74

031113

9      MR. VITA:  I will get the privilege log

10     and review it and I'll think about whether

11     I'm going to even produce it to you.  If you

12     wanted it, I've already given it to you, you

13     could have brought it.

14         MR. OELSNER:  I have it.  I'll get a

15     copy made of it.

16         MR. VITA:  Then get a copy made.

17         MR. OELSNER:  Okay.  We'll do that now.

18     It was just easier for you to do it, but why

19     don't we take a break and I'll get a copy of

20     the privilege log.  Want to do that.

21         MR. VITA:  Whatever you like to do.

22         MR. OELSNER:  Okay.  Why don't we take a

23     break and we'll get copies as soon as I can

24     find it.

25         I'll copy it during lunch.  That way I

DEL VECCHIO REPORTING
(203) 245-9583

3

6

**ROUGH DRAFT**

1      don't have to look for it.

2  BY MR. OELSNER:

3      Q    I want to go back on the record and resume on

Page 75

031113

4    the policies.

5              Mr. Thrasher, did Emcor have an excess policy

6    or an umbrella policy for the 1992 to 1993 INA policy

7    period?

8         A    Yes.

9         Q    And what carrier afforded that policy?  Was

10   it AIG?

11        A    It was AIG.

12        Q    And was that an excess policy or umbrella

13   policy if you recall?

14        A    I don't recall.

15        Q    And did AIG also provide an excess policy or

16   umbrella policy with respect to the 93 to 94 INA policy

17   period?

18        A    Yes.

19        Q    And what about with respect to the 94 to 95

20   policy period?

21        A    Yes.

22        Q    AIG?

23        A    Yes.

24        Q    Was there a point in time where Emcor applied

25   for a policy from CNA to cover claims that were

DEL VECCHIO REPORTING
(203) 245-9583

6

Page 76

031113

4

**\*\*ROUGH DRAFT\*\***

1    reported to INA under the '92/'93, '93/'94, '94/'95 INA

2    policies?

3        A    Could I hear that question once again?

4        Q    Let me simplify it.  Did Emcor ever apply for

5    a policy -- strike that.

6            Did Emcor ever seek to obtain a liability

7    policy from CNA?

8        A    Yes.

9        Q    When?

10       A    In a number of instances.

11       Q    When were those instances?

12       A    We moved our primary casualty program to CNA.

13       Q    When was that?

14       A    In as of October 1, 97.

15       Q    Did Emcor ever apply to CNA for a policy for

16   claims that occurred October 1, 1992 through October 1,

17   1996?

18       A    Yes.

19       Q    Was an application submitted by Emcor for

20   that, those type of claims to be covered by CNA?

21       A    I don't recall.

22       Q    CNA issue a policy for that risk?

Page 77

031113
23    A    I don't recall.

24    Q    You don't recall if CNA issued a policy?

25                MR. VITA:  Object to the form of the

DEL VECCHIO REPORTING
(203) 245-9583

5                                                                6


**ROUGH DRAFT**

1             question.

2    A    Which policy.

3    Q    You don't recall if CNA issue add policy to

4    cover claims that occurred from October 1, 1992 to

5    October 1, 1996?

6                MR. VITA:  Object to the form of the

7             question.

8    A    No, I don't recall.

9    Q    Does Emcor maintain a file for policies that

10   have been issued to it strike that.

11            Does Emcor have copies of policies that were

12   issued to Emcor?

13   A    Yes.

14   Q    Where would that be located?

15   A    Either at Emcor or in storage.

16   Q    Whose storage?

17   A    I believe we use a company called Meyers

Page 78

031113

18    Storage.

19        Q    But storage facilities of Emcor's as distinct

20    from another entity?

21        A    Yes.

22        Q    And does Emcor maintain a file for material

23    it may have provided to an insurer during the process

24    of -- during the application process for a policy?

25        A    It may.

DEL VECCHIO REPORTING
(203) 245-9583

6

6

**ROUGH DRAFT**

1        Q    Would Marsh have been the broker for any

2    applications to CNA for policies?

3        A    Marsh would be one of the possible brokers

4    for any CNA.

5        Q    Who were the other possible brokers be?

6        A    Depends on the year and the policy.

7        Q    For an application that CNA issued a policy

8    to cover general liability claims against Emcor's

9    subsidiaries entered or entered against Emcor or one of

10   its subsidiaries from October 1, 1992 to October 1,

11   1996?

12       A    Could I hear that question back, please.

Page 79

031113

13          (THEREUPON, THE REFERRED TO

14              QUESTION WAS READ BACK.)

15      Q    Let me -- why don't I withdraw that and ask

16  it in a different way.

17          Did Emcor ever seek to obtain a policy from

18  CNA to cover claims which were submitted to INA for the

19  policy periods 92 to 93, 93 to 94, 94 to 95 for which

20  there was no coverage because those policy limits were

21  exhausted?

22      A    Yes.

23      Q    When was that?  1998?

24      A    When was what?

25      Q    When was that application made to CNA?

DEL VECCHIO REPORTING
(203) 245-9583

7

6

**ROUGH DRAFT**

1      A    I don't know if an application was filled

2  out.

3      Q    I meant oral or written and I'll get to the

4  type of the application.  A request if you don't like

5  the term application.

6      A    And I'm sorry the question was when that

7  request was.

Page 80

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )
                                 SS.:

COUNTY OF WESTCHESTER   )

I, Joyce Koch, being duly sworn, deposes and says:

I am not a party to the action, am over the age of 18 years of age and reside in Harrison, New York.

On November 21, 2003, I served the within

### DECLARATION IN SUPPORT OF MOTION

### MEMORANDUM OF LAW IN SUPPORT OF MOTION

by depositing true copies thereof enclosed in a postpaid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following persons at the last known addresses set forth:

**TO:**    **Saxe Doernberger & Vita, PC**
           **Attorneys for the Plaintiff**
           **1952 Whitney Avenue**
           **Hamden, CT  06517**

_____
         Joyce Koch

Sworn to before me this
21th day of November 2003

_____
Notary Public

**ANA H. ARROYO**
Notary Public, State of New York
**No.: 01AR5069346**
Qualified in Westchester County
Commission Expires:  **November 25, 2006**

626377.1