IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
EMCOR GROUP, INC.                          :        Civil Action No.
                                           :        Docket 3:00-CV-2211
                                           :        (AVC)
                 Plaintiff,                :
                                           :        Judge Alfred V. Covello
v.                                         :
                                           :
INSURANCE COMPANY OF NORTH AMERICA         :
                                           :
                 Defendant.                :        July 12, 2004
---------------------------------------------------------------X

### MOTION FOR PERMISSION TO RE-OPEN DISCOVERY FOR THE LIMITED PURPOSE OF DEPOSING INA'S EMPLOYEE PATTY TOPPER

Plaintiff, EMCOR Group, Inc. ("EMCOR"), in good faith and with good cause, hereby requests permission to modify the scheduling order with respect to discovery for the limited purpose of obtaining the deposition of Insurance Company of North America's ("INA") employee, Patty Topper. Pursuant to Federal Rule of Civil Procedure 16(b), a scheduling order may be modified upon showing of good cause and by leave of the district judge. In support thereof, EMCOR represents as follows:

1.      Upon information and belief, Patty Topper is employed in INA's billing department and is familiar with the billing associated with the EMCOR account.

2.  This request for the reopening of discovery stems from the recent deposition of INA's 30(b)(6) deponent, Steven Snyder, on June 8, 2004 who testified that he relied to a large extent on information from Ms. Topper with respect to billing issues and potential credits and/or replenishments to EMCOR's general liability aggregate limits.

3.  The proper exhaustion of EMCOR's general liability aggregate limits is a central issue in the instant litigation.

4.  The billing issues and associated potential credits or replenishments to EMCOR's general liability aggregate limits have become important issues in the instant litigation with conflicting data being exchanged between INA and EMCOR. In light of this conflicting evidence, the accuracy of the information is of utmost importance.

5.  As Ms. Topper has repeatedly been referred to throughout the discovery process as the one with the most information regarding the billing process and as Mr. Snyder relied heavily on the conversations he had with Ms. Topper, and at no point verified the information himself by reviewing bills, it is imperative that EMCOR be given an opportunity to depose Ms. Topper. For example, during Mr. Snyder's recent deposition he testified that while he relied on Ms. Topper's assertions that recoding a claim would effect the aggregate financially, he did not personally review any relevant documentation. See Exhibit A (pp. 88-90).

6.  In addition, Mr. Snyder testified that Ms. Topper is responsible for certain financial transactions that would impact EMCOR's aggregate limits. See Exhibit B (pp. 112-113). Further, Mr. Snyder testified that Ms. Topper indicated that the recoding of a claim from general liability to completed operations would electronically generate a

credit to the general liability aggregate and a corresponding debit to the completed operations aggregate. See Exhibit C (pp. 113-116).

7.     This Court recently granted EMCOR's motion to amend its complaint to add a claim for damages associated with the recoding of approximately 42 claims from general liability claims to completed operations claims.

8.     In light of Mr. Snyder's testimony, it is apparent that Ms. Topper, and not Mr. Snyder, is the person most knowledgeable about the impact of the recoding of claims on the aggregate limits and whether the billing sent from INA to EMCOR properly reflects all of the credits and/or replenishments associated with the recording of claims by INA.

9.     Accordingly, it is imperative that EMCOR have the opportunity to depose Ms. Topper on this important issue.

10.    This case has been tentatively scheduled for trial in September, 2004 but this date has not yet been confirmed by the Court, and the parties are scheduled to meet again with Magistrate Smith for a settlement conference on August 16, 2004.

11.    The granting of this motion to allow the deposition of INA's employee Patty Topper will not prejudice INA in any way because it can easily be accomplished within the next 30 days, and certainly well in advance of the trial date. Moreover, any potential prejudice to INA is clearly outweighed by the importance of Ms. Topper's testimony on a critical issue in this litigation, particularly in light of this Court's recent order allowing EMCOR's amended complaint regarding INA's recoding of claims from general liability to products/completed operations.

Attached hereto is the Affidavit of Jeffrey J. Vita in support of Plaintiff's Motion for Permission to Re-Open Discovery for a limited purpose.

WHEREFORE, EMCOR moves for an order from this Court extending discovery for the sole purpose allowing EMCOR to depose INA's employee Patty Topper.

THE PLAINTIFF,
EMCOR GROUP, INC.

By: _____
Jeffrey J. Vita, Esq.
Fed. Bar No. ct08036
Heidi H. Zapp, Esq.
Fed. Bar No. ct24655
Saxe Doernberger & Vita, P.C.
1952 Whitney Avenue
Hamden, CT 06517
(203) 287-8890

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------------X
EMCOR GROUP, INC.                                : Civil Action No.
                                                 : Docket 3:00-CV-2211
(AVC)
                    Plaintiff,                   :
                                                 : Judge Alfred V. Covello
v.                                               :

INSURANCE COMPANY OF NORTH AMERICA               :

                    Defendant.                   : July 12, 2004
---------------------------------------------------------------------X

## CERTIFICATION

    This is to certify that the foregoing was mailed, postage prepaid, on this the 12th day of July, 2004 to the following counsel of record:

Thomas Leghorn, Esq. (CT 22106)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
3 Gannett Drive
White Plains, NY  10601
914-323-7000

Duncan B. Hume, Esq. (ct05581)
Hume & Associates
One Landmark Square
Stamford, CT 06901
(203) 348-7252

_____
Jeffrey J. Vita, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
EMCOR GROUP, INC.                             :    Civil Action No.
                                                                    Docket 3:00-CV-2211
                Plaintiff,                    :    (AVC)

                                                                    Judge Alfred V. Covello
v.                                                           :

INSURANCE COMPANY OF NORTH AMERICA:

                Defendant.                 :    July 12, 2004
---------------------------------------------------------------X

## ORDER

The foregoing Motion to Re-Open Discovery having been heard, it is hereby

ORDERED:


GRANTED/DENIED.



                              BY THE COURT


                              _____
                              Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
EMCOR GROUP, INC.                          :     Civil Action No.
                                           :     Docket 3:00-CV-2211
           Plaintiff,                     :     (AVC)

                                           :     Judge Alfred V. Covello
v.                                         :

INSURANCE COMPANY OF NORTH AMERICA:

           Defendant.                    :     July 12, 2004

---------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MOTION TO RE-OPEN DISCOVERY

STATE OF CONNECTICUT)
                       )   ss.   Hamden, Connecticut
COUNTY OF NEW HAVEN)

I, Jeffrey J. Vita, being first duly sworn, depose and state:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am the attorney for plaintiff EMCOR Group, Inc. ("EMCOR") in the above-titled action that is currently pending in the U.S. District Court for the District of Connecticut, Docket No. 3:00-CV-2211 (AVC).

3. I make the following statements upon personal knowledge.

4. The final extension on the Scheduling Order in this matter required all discovery be completed by November 30, 2003.

5. On June 8, 2004, I deposed Steven Snyder, INA's designated 30(b)(6) deponent in Philadelphia, Pennsylvania, during which Mr. Snyder stated repeatedly that he relied on conversations he had with Ms. Topper regarding billing and potential credits to EMCOR's account without ever verifying this information by personally reviewing bills with Ms. Topper. See Exhibits A, B and C attached hereto and incorporated herein.

6. EMCOR now seeks an extension of discovery with respect to the deposition of Patty Topper based upon the testimony given during the course of Mr. Snyder's 30(b)(6) deposition on June 8, 2004 in order to determine whether the invoices sent by INA to EMCOR in response to the recoding of claims from general liability to

products/completed operations reflect the appropriate credits and debits such that EMCOR's aggregate limits were exhausted correctly.

7.    The Court's recent order allowing EMCOR to amend its complaint to include the recoded claims requires that EMCOR take the deposition of Ms. Topper. Based on Mr. Snyder's testimony, Ms. Topper could most accurately explain the effect a recoded claim would have on the billing sent by INA to EMCOR, and upon reviewing said billing, could testify as to whether the billing accurately reflected all of the appropriate credits and debits for the recoded claims.

8.    EMCOR seeks an extension of thirty (30) days from the granting of this motion to obtain the requested deposition.

_____
Jeffrey J. Vita, Esq.

Subscribed and sworn to before me on July 12, 2004.

_____
Commissioner of the Superior Court

Emcor account?

        MR. OELSNER:  Can I hear that question back, please.

- - -

(Whereupon, the requested portion of the notes of testimony was read by the court reporter.)

- - -

        MR. OELSNER:  I object to the form.

A.    Yes.

Q.    Who did you ask?

A.    Patty Topper.

Q.    Anybody else?

A.    I don't believe there was anyone else that was involved with the Emcor dispute that is still with Ace.

Q.    That wasn't specifically the question I asked.  Did you ask anybody other than Patty Topper regardless of whether they are currently employed by Ace or not?

A.    No.

Q.    What did you ask Patty

EXHIBIT A

```
Topper?
    A.    I asked her if she was
aware of any claims where the codes were
changed from general liability to
completed operations.
    Q.    And what did she say?
    A.    Yes.
    Q.    And did you ask her how
many?
    A.    No.
    Q.    Did you ask her to identify
those cases for you?
    A.    She couldn't.
    Q.    Why not?
         MR. OELSNER:  Objection.
    A.    She doesn't have that
information.
    Q.    Well, how did she know that
claims were changed?
         MR. OELSNER:  Objection.
    A.    I didn't ask her how she
knew.  I asked her if she knew and she
said, "Yes."
    Q.    Okay.  Other than asking
```

```
 1   her if she knew if codes were changed
 2   did you ask her anything else?
 3        A.    Yes.
 4        Q.    And what did you ask her?
 5        A.    I asked her if codes were
 6   changed would that change the effect of
 7   the aggregate financially and she said
 8   that it -- it would.  It could.
 9        Q.    It could?
10        A.    And in this case it did.
11        Q.    Okay.  And did you ask her
12   for documentation to support that claim?
13        A.    No.
14        Q.    Why not?
15        A.    Because I believed her.
16        Q.    Okay.  Did you ask her to
17   produce any documentation for you in
18   preparation for today's deposition?
19        A.    No.
20        Q.    Why not?
21        A.    I saw no reason to.
22        Q.    Despite your belief that
23   Miss Topper was truthful, did you feel
24   an obligation to review the necessary
```

```
 1  testimony today?
 2          A.      No.
 3          Q.      Did you talk to a Steve
 4  Correll?
 5          A.      No.
 6          Q.      I want to get back into the
 7  financial documentation' for a minute.
 8  In what way is the risk advantage system
 9  more user friendly than the CRIS report
10  system?
11          A.      I'm not sure.  I'm just
12  told that it is.
13          Q.      And who told you that it
14  was?
15          A.      I don't recall.
16          Q.      What is -- withdrawn.  When
17  you spoke with Miss Topper in
18  preparation for today's deposition, what
19  was Miss Topper's job or title?
20          A.      She works in Ace Financial,
21  and I believe, I don't know what her
22  specific title is.  I believe she is
23  responsible for certain financial
24  transactions that would impact the
```

EXHIBIT B

```
 1  effect of the aggregates.
 2          Q.      I think earlier you
 3  testified that she told you that there
 4  had been -- withdrawn.  Remind me, did
 5  she say that there could be an effect on
 6  the aggregate due to the recoding or
 7  there was an effect on the aggregate due
 8  to the recoding?
 9          A.      I believe she said that
10  there was.
11          Q.      There was an effect?
12          A.      Yes.
13          Q.      And did she tell you what
14  that effect was?
15          A.      What she told me was that
16  when a claim would be recoded such that
17  the claim would be charged from the
18  general liability aggregate to the
19  completed operations aggregate where
20  that general aggregate -- where that
21  general liability aggregate was
22  exhausted and the claim was handled
23  under the 4337 contract, that that
24  activity electronically generates a
```

```
 1  effect of the aggregates.
 2          Q.      I think earlier you
 3  testified that she told you that there
 4  had been -- withdrawn.  Remind me, did
 5  she say that there could be an effect on
 6  the aggregate due to the recoding or
 7  there was an effect on the aggregate due
 8  to the recoding?
 9          A.      I believe she said that
10  there was.
11          Q.      There was an effect?
12          A.      Yes.
13          Q.      And did she tell you what
14  that effect was?
15          A.      What she told me was that
16  when a claim would be recoded such that
17  the claim would be charged from the
18  general liability aggregate to the
19  completed operations aggregate where
20  that general aggregate -- where that
21  general liability aggregate was
22  exhausted and the claim was handled
23  under the 4337 contract, that that
24  activity electronically generates a
```

EXHIBIT C

1  change. So that the debit and credit is
2  -- I'm not a financial person. There's
3  a debit and credit to the respective
4  aggregates in the finite loss fund. And
5  that Emcor is billed monthly for claims
6  that are their responsibility. And when
7  a claim is -- code is changed so that it
8  would fall it would replenish an
9  aggregate and become Ace's
10 responsibility under the finite
11 agreement then there's a debit and
12 credit generated and the billing to
13 Emcor for the -- under the 4337 claims
14 would be credited for that.
15         Q.    Did you review the billing
16 that you are referring to that went to
17 Emcor?
18         A.    No.
19         Q.    Did you ask to look at it?
20         A.    No.
21         Q.    Who told you that the
22 billing would contain a debit or a
23 credit if a claim code was changed?
24         A.    I just told you that.

1       Q.      Who told you that?
2       A.      I just told you that.
3  Patty Topper.
4       Q.      Okay. Tell me if this is a
5  fair statement. Are you suggesting that
6  to the extent a case -- a code is
7  changed from general liability to
8  completed operations, the financial
9  impact of that change is reflected on
10 the billing that ultimately goes to
11 Emcor?
12              MR. OELSNER: Objection.
13      Asked and answered.
14      Q.      Is that a fair statement?
15              MR. OELSNER: Asked and
16      answered.
17      A.      I believe what I said was
18 pretty clear. And what I said was that
19 when a -- when a change is made such
20 that a claim is charged from an
21 exhausted aggregate which would then
22 have been charged to the 4337 contract
23 to -- from general liability to complete
24 operations where the aggregate is no --

1  is not exhausted then there's a debit
2  that's created under the -- under the
3  2806 contract to charge that policy with
4  that claim and -- or the policy with
5  that claim in the finite agreement with
6  payment responsibility and a credit is
7  given to the billing -- a credit is
8  given under the 4337 contract that's
9  reflected in the monthly billing that is
10 sent to Emcor.
11        Q.    Do you know if INA or Cigna
12 or Ace has copies of the billing that
13 went to Emcor?
14        A.    I believe, I am not sure
15 exactly which entity is responsible for
16 that billing. And I have never seen a
17 copy of that billing. But I am
18 confident that there is a record of it.
19        Q.    And you are confident that
20 who would have a record of that?
21        A.    Who's ever responsible for
22 the billing.
23        Q.    Is Patty Topper responsible
24 for the billing?