STEVEN SNYDER

1          Cigna property and casualty and
2          not the Cigna health company that
3          exists today.  Do you understand
4          that.
5          A.     I understand that, but if
6   you are asking me about the present
7   tense a Cigna Property and Casualty
8   Company does not exist today.
9          Q.     I just said, when I say
10  Cigna to you I mean Cigna Property and
11  Casualty as it existed before it was
12  merged with Ace.  Do you understand
13  that?
14         A.     I understand that.
15         Q.     Okay?
16                MR. OELSNER:  And we'll take
17         it question by question.
18         Q.     Right, fine.
19                Did you ask anyone in
20  preparation for today's deposition to
21  review the billing records that had been
22  provided to Emcor concerning this
23  dispute?
24         A.     And by billing records

EXHIBIT

tabbies®

C

STEVEN SNYDER

1  you're referring to specifically what?

2          Q.    I'm referring -- I'm using

3  your terminology and I'm referring to

4  the documents that you said exists

5  somewhere where a debit and a credit

6  would be reflected.

7          A.    No, I did not.

8          Q.    Okay.  And why not?

9          A.    Because I didn't think it

10 was necessary.

11         Q.    Why didn't you think it was

12 necessary?

13         A.    Because the records --

14 because the billing records speaks for

15 themselves and Emcor has them and it's

16 my understanding that there are debits

17 and credits given to the billing records

18 that are reflected and would affect the

19 aggregate and that's all I need to know

20 for purposes of this deposition.

21                MR. OELSNER:  And I further

22         note your questions and your

23         deposition topics on matters known

24         or reasonably available to -- to

STEVEN SNYDER

1 and the only reason I'm aware of that a

2 claim would be charged back to the 2806

3 contract when it was originally

4 established under the 4337 contract is

5 because of a change in coding.

6          Q.     And do you know

7 approximately how many times that

8 occurred with respect to the Emcor cases

9 where you saw a change or Miss Topper

10 saw a change in -- in credit or debit?

11          A.     No, I do not.

12          Q.     Can you estimate

13 approximately?

14          A.     Not from my discussions

15 with Miss Topper I can't.

16          Q.     Do you know if Ace ever

17 replenished any of the general liability

18 aggregate limits that are at issue in

19 this case?

20          MR. OELSNER:    Objection to

21      form.

22          A.     I believe that the aggregate

23 limits at issue were under the '94-'95

24 and '93-'94 policies were -- were -- are

STEVEN SNYDER

1    Omni.    Is captured in a database and

2    that database feeds the CRIS database

3    among other things probably.

4            Q.    Do you know what the column

5    net-claim signifies?

6                MR. OELSNER:    What Bates

7            number?

8                MR. VITA:    029247, second

9            page.

10           Q.    It's not any page by the

11   way.

12           A.    Not specifically, no.

13           Q.    One of the topics that I

14   asked that you be ready to discuss is

15   the interpretation of the various loss

16   runs including the CRIS reports.    So who

17   would have the information as to what

18   the net-claim column means in the

19   context of a CRIS report?

20           A.    Probably Rich Laferty would

21   be able to identify that.

22           Q.    The last column where it

23   says, "expense paid."    Is it your

24   understanding that that's defense?

EXHIBIT

D

STEVEN SNYDER

1          A.     It may not be limited to

2    defense.  It would include defense.  It

3    would include any expenses that were

4    paid against the against the file.

5          Q.     Well, when you say expenses

6    you mean defense related expenses as

7    distinguished from indemnity, expert

8    costs, things like that?

9          A.     Yes, if there's an expense

10   that was incurred in the investigation

11   of the claim, and was paid under the

12   ESIS claim as an expense then

13   investigation and/or defense of the

14   claim then that expense would be

15   recorded in Omni as an expense and the

16   expense payments made against ESIS claim

17   files would, I would -- I believe, be

18   reflected as expenses paid on a run

19   similar to this.

20         Q.     And do you know looking at

21   any of these pages here, if this CRIS

22   report identifies whether in a given

23   case there was an indemnity payment?

24         A.     It may well identify that

STEVEN SNYDER

1    but I'm not completely certain.

2              Q.    At the top under the --

3    under the identification of CRIS it

4    says, "customized report."  Do you know

5    what that means?

6              A.    That means that, as I

7    mentioned before to you, a CRIS -- the

8    CRIS system allows for the generation of

9    reports based upon the type of inquiry

10   you make of it.  Based upon -- so you

11   can get reports on all claims reserved

12   at a certain dollar amount you can get

13   reports on all claims paid on a specific

14   day.  You can get reports on just a

15   myriad of data elements and you can get

16   reports of -- that incorporate a broad

17   range of data elements.  And so those

18   are I think what is termed customized

19   reports because you're asking for a

20   specific parameter of data to be pulled

21   from the CRIS database and submitted in

22   a report.

23             Q.    We talked about this this

24   morning.  I just want to clarify.  Is it

STEVEN SNYDER

1    been generally for any insured not

2    necessarily Emcor?

3         A.      Correct.

4         Q.      In preparing for today's

5    deposition did you ask her if, in fact,

6    she changed codes regarding the Emcor

7    claims?

8         A.      I don't recall.

9         Q.      Wouldn't that have been one

10   area that you would have needed to

11   explore in order to prepare for today's

12   deposition?

13              MR. OELSNER:  Objection to

14        form.

15        A.      Not necessarily.

16        Q.      Do you know if the recoding

17   of claims was one of the issues listed

18   in the Notice of Deposition under which

19   you are appearing to testify today?

20        A.      I believe so.

21        Q.      Did you ask anybody other

22   than Miss Donahue whether at any time

23   Cigna or Ace or INA changed any of the

24   codes as to claims associated with the

STEVEN SNYDER

```
 1            lot of documents in preparation
 2    for my deposition and I believe I
 3    reviewed documents sufficient to meet my
 4    obligation as a 30(b)(6) witness and I
 5    am prepared to testify.
 6            Q.     Okay.  Did you --
 7    withdrawn.  I believe you testified that
 8    you did not ask Miss Topper how many
 9    codes were changed; is that correct?
10            A.     That's correct.
11            Q.     Can you identify for me
12    today the Emcor cases where the codes
13    were changed from general liability to
14    completed operations?
15            A.     I believe that the
16    documents that I have reviewed describe
17    at least some of those specific claims
18    that were changed.
19            Q.     Okay.  I want to know all
20    of the cases where the code was changed
21    from general liability to completed
22    operations, which is within the scope of
23    this deposition, and I want to know from
24    you an identity of each of the specific
```

STEVEN SNYDER

1  cases that were changed on the Emcor

2  account from general liability cases to

3  completed operations cases?

4                MR. OELSNER:   Objection.

5        A.      I am not aware of the

6  specific cases that were changed, but I

7  am aware that many cases were changed.

8        Q.      Do you have an approximate

9  number?

10       A.      I believe it's 50, 60 maybe

11 more.

12       Q.      And do you know if any of

13 those 50 or 60 cases that were changed

14 are included in the litigation -- are

15 included in the claims at issue in this

16 litigation?

17       A.      I believe some of them are.

18       Q.      And do you have any

19 documentation or does INA have any

20 documentation to support the claim that

21 those cases were changed from general

22 liability claims to completed operations

23 claims?

24       A.      I believe there is

STEVEN SNYDER

1    documentation to that effect.

2          Q.      Okay.   And please describe

3    for me that documentation?

4          A.      I believe that there is

5    financial documentation that shows that

6    certain claims were changed and it's

7    reflected in the aggregate status under

8    particular policies.   I believe there's

9    testimony from Mr. Luhman and from Ginny

10   Lloyd that certain claims were changed.

11   I believe there is written documentation

12   and confirmation from Ann Marie Marson

13   to your client that certain claims were

14   changed.

15         Q.      And do you feel confident

16   in testifying today that those cases

17   that Mr. Luhman reviewed and Miss Marson

18   reviewed and Miss Lloyd reviewed were,

19   in fact, changed -- withdrawn.   Do you

20   feel confident in testifying today that

21   the cases that either Mr. Luhman, Miss

22   Lloyd, or Miss Marson concluded were

23   incorrectly coded were in fact changed

24   to the proper coding?

STEVEN SNYDER

1      Q.      Other than the documents

2  you received from counsel, did you

3  obtain -- withdrawn.  Did you obtain

4  documents other than the ones you

5  received from counsel to assist you in

6  preparation for today's deposition?

7      A.      No.

8      Q.      Did you talk to Virginia

9  Lloyd in connection with your

10 preparation for today's deposition?

11     A.      No.

12     Q.      Did you talk to Ann Marie

13 Marson in connection with your

14 preparation for today's deposition?

15     A.      No.

16     Q.      How about Pat Walton?

17     A.      No.

18     Q.      How about William Luhman?

19     A.      No.

20     Q.      Did you talk to anybody at

21 either Ace or Cigna or INA in connection

22 with preparation for today's deposition?

23              MR. OELSNER:  Objection to

24     form.

**EXHIBIT**

F

STEVEN SNYDER

1  documentation in preparation for today's

2  deposition?

3          A.     Maybe another 20 or 30

4  hours.

5                 MR. VITA:  All right.  Can

6          you mark this one, please, as

7          number 184?

8                 (Marked as Exhibit Number

9          184 for identification.)

10 BY MR. VITA:

11         Q.     Mr. Snyder, I'll ask you to

12 look at the document that's been marked

13 as Plaintiff's Exhibit 184 and ask you

14 if you've seen that document before?

15         A.     I don't believe I have, no.

16         Q.     Mr. Snyder, did you bring

17 any documentation with you today in

18 connection with your testimony today?

19         A.     No.

20         Q.     Excuse me?

21         A.     No.

22         Q.     Did you identify any or did

23 you -- withdrawn.  Did you -- do you

24 have in your possession whether at your

STEVEN SNYDER

1    office, at home, or anywhere documents

2    that assisted you in preparing for

3    today's deposition?

4          A.     Yes.

5          Q.     And where would those

6    documents be located?

7          A.     My office.

8          Q.     And approximately how many

9    boxes of documents are we talking about?

10         A.     Probably one.

11         Q.     In terms of the contents of

12   that box is it fair to say it -- sorry,

13   go ahead.  You seem to want to say

14   something.

15         A.     That's not all that I

16   reviewed, but that's all that I have.

17         Q.     In your possession?

18         A.     Yes.

19         Q.     All right.  In terms of the

20   contents of that box is there anything

21   in there other than the items we've

22   discussed already?

23         A.     Expert reports.

24         Q.     Okay.  Did you review



**SAXE DOERNBERGER & VITA, P.C.**

ATTORNEYS AND COUNSELLORS AT LAW

1952 WHITNEY AVENUE
HAMDEN, CT 06517
TELEPHONE (203) 287-8890
FACSIMILE (203) 287-8847
*www.sdvlaw.com*

Heidi H. Zapp

hhz@sdvlaw.com

**VIA FACSIMILE**

June 10, 2004

Richard S. Oelsner, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604

> Re:  **EMCOR v. INA**
> **Docket 3:00-CV-2211 (AVC)**

Dear Mr. Oelsner:

In light of yesterday's deposition of Mr. Snyder, we are concerned that we have not received copies of all documents upon which INA relies for any defenses to this litigation. For example, you have indicated in your disclosure pursuant to FRCP 26(a) that INA's witnesses may utilize certain Risk Advantage Detailed Loss Reports. We do not have a record of receiving any such reports. If you have provided them, please notify us of the designated bate stamp numbers. If you have not produced such reports or any other documents that your witnesses may rely upon for their testimony, please forward these documents immediately.

In addition, please forward copies of all documents your 30(b)(6) designee, Steven Snyder, relied on in preparation for his deposition, including but not limited to the box of documents he testified was in his office.

Further, since Mr. Snyder relied on Patti Topper for the assertion that all credits and debits for all recoded cases were accurately reflected in the billing records sent to EMCOR, we intend to depose Ms. Topper on these issues. Please provide several potential dates for her deposition as soon as possible.

Thank you for your anticipated cooperation in this matter.

Very truly yours,

Heidi H. Zapp



EXHIBIT
G



SAXE
DOERNBERGER &
VITA, P.C.

1952 WHITNEY AVENUE
HAMDEN, CT 06517
TELEPHONE (203) 287-8890
FACSIMILE  (203) 287-8847
www.sdvlaw.com

ATTORNEYS AND COUNSELLORS AT LAW

Heidi H. Zapp

hhz@sdvlaw.com

**VIA FACSIMILE**

July 21, 2004

Richard S. Oelsner, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604

      **Re:    EMCOR v. INA**
             **Docket 3:00-CV-2211 (AVC)**

Dear Mr. Oelsner:

      I am writing to you to follow up my letter dated June 10, 2004, wherein I indicated my concern, after taking Mr. Snyder's deposition, that we have not received copies of all documents upon which INA relies for its defenses to this litigation.  For example, you have indicated in your disclosure pursuant to FRCP 26(a) that INA's witnesses may utilize certain Risk Advantage Detailed Loss Reports.  We do not have a record of receiving any such reports.  If you have provided them, please notify us of the designated bate stamp numbers.  If you have not produced such reports or any other documents that your witnesses may rely upon for their testimony, please forward these documents immediately.

      In addition, please forward copies of all documents your 30(b)(6) designee, Steven Snyder, relied on in preparation for his deposition, including but not limited to the box of documents he testified was in his office.

      Thank you for your anticipated cooperation in this matter.

                      Very truly yours,

                      Heidi H. Zapp



**SAXE DOERNBERGER & VITA, P.C.**

ATTORNEYS AND COUNSELLORS AT LAW

1952 WHITNEY AVENUE
HAMDEN, CT 06517
TELEPHONE (203) 287-8890
FACSIMILE  (203) 287-8847
www.sdvlaw.com

Heidi H. Zapp

hhz@sdvlaw.com

**VIA FACSIMILE**

July 29, 2004
**THIRD REQUEST**

Richard S. Oelsner, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604

  Re:  **EMCOR v. INA**
     **Docket 3:00-CV-2211 (AVC)**

Dear Mr. Oelsner:

  I am writing to you to follow up my letter dated July 21, 2004, wherein I indicated my concern, after taking Mr. Snyder's deposition, that we have not received copies of all documents upon which INA relies for its defenses to this litigation.  For example, you have indicated in your disclosure pursuant to FRCP 26(a) that INA's witnesses may utilize certain Risk Advantage Detailed Loss Reports.  We do not have a record of receiving any such reports.  If you have provided them, please notify us of the designated bate stamp numbers.  If you have not produced such reports or any other documents that your witnesses may rely upon for their testimony, please forward these documents immediately.

  In addition, please forward copies of all documents your 30(b)(6) designee, Steven Snyder, relied on in preparation for his deposition, including but not limited to the box of documents he testified was in his office.  I will expect to hear from you regarding this matter imminently.

  Thank you for your anticipated cooperation in this matter.  I look forward to speaking with you.

       Very truly yours,

       Heidi H. Zapp



## SAXE DOERNBERGER & VITA, P.C.

1952 WHITNEY AVENUE
HAMDEN, CT 06517
TELEPHONE (203) 287-8890
FACSIMILE  (203) 287-8847
*www.sdvlaw.com*

ATTORNEYS AND COUNSELLORS AT LAW

Heidi H. Zapp

hhz@sdvlaw.com

**VIA FACSIMILE**

August 11, 2004
**FOURTH REQUEST**

Richard S. Oelsner, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604

> Re:  **EMCOR v. INA**
> **Docket 3:00-CV-2211 (AVC)**

Dear Mr. Oelsner:

I am writing to you to follow up my letter dated July 29, 2004, wherein I indicated my concern, after taking Mr. Snyder's deposition, that we have not received copies of all documents upon which INA relies for its defenses to this litigation. For example, you have indicated in your disclosure pursuant to FRCP 26(a) that INA's witnesses may utilize certain Risk Advantage Detailed Loss Reports. We do not have a record of receiving any such reports. If you have provided them, please notify us of the designated bate stamp numbers. If you have not produced such reports or any other documents that your witnesses may rely upon for their testimony, please forward these documents immediately.

In addition, please forward copies of all documents your 30(b)(6) designee, Steven Snyder, relied on in preparation for his deposition, including but not limited to the box of documents he testified was in his office. As this is my fourth request for this information, I will expect to hear from you regarding this matter in the immediate future.

Thank you for your anticipated cooperation in this matter. I look forward to speaking with you.

Very truly yours,

Heidi H. Zapp

STEVEN SNYDER

1  cases?

2       A.    I recall looking at them.

3  I don't specifically recall the exact

4  codes on those claims whether they were

5  complete operations or whether they were

6  some other code.

7       Q.    In preparation for today's

8  deposition did you feel it was your

9  obligation to confirm how these 106

10 cases were coded?

11      A.    No.

12      Q.    Okay.  When you read item

13 number 1 which says, "Matters known or

14 reasonably available to INA regarding

15 the coding of any of the claims

16 identified on Exhibit A attached hereto

17 as general liability claims," did you

18 feel compelled to do any work to prepare

19 to answer that question?

**EXHIBIT**

tabbies H

20      A.    Yes.

21      Q.    And what work did you do?

22      A.    I reviewed documents.  I

23 reviewed the policies.  I reviewed

24 expert reports.  That's what I reviewed.

STEVEN SNYDER

1          A.      Well, you know again, any

2    time that you're presenting me with a

3    question that's specific to the terms of

4    the policy, I really need to refer to

5    the policy to give you an absolute

6    accurate answer.  It's my recollection

7    that the '92-'93 policy was written such

8    that the defense costs were outside of

9    the limits and the '93-'94, '94-'95

10   policies were written such that defense

11   costs were incorporated within the

12   limits.

13         Q.      I am referring to

14   Plaintiff's Exhibit 183, item number 3

15   on this Notice of Deposition is,

16   "matters known or reasonably available

17   to INA regarding the identity of those

18   cases which contributed to the

19   exhaustion of the general liability

20   aggregate limits of the following

21   policies," and we identify the '92-'93,

22   '93-'94, '94-'95."

23                 Can you tell me what --

24   first of all, who you consulted to

EXHIBIT

I

STEVEN SNYDER

1   prepare for today's deposition as to

2   that topic?

3                MR. OELSNER:  If anyone.

4        Q.     If anyone?

5        A.     Could I look at, please?

6   Item number 3?

7        Q.     Yes.

8        A.     Okay.  I didn't consult

9   with anyone in particular about that

10  particular item.

11       Q.     Why not?

12       A.     I didn't believe it was

13  necessary.

14       Q.     Did you think it was your

15  role to determine what is necessary and

16  what isn't necessary?

17               MR. OELSNER:  Well, in

18         conjunction with counsel?

19       A.     I discussed my preparation

20  with counsel, and we concluded what was

21  appropriate and necessary for me to

22  prepare for this deposition.  I

23  testified several times what I've done

24  to prepare for this deposition and I

STEVEN SNYDER

1   as I've previously testified.

2           Q.      Do you know which cases Mr.

3   Luhman concluded were completed

4   operations?

5           A.      I don't know the specific

6   cases.  He did do a chart, but I

7   couldn't really tell exactly which case

8   that was on a particular chart, but I

9   believe he testified that certain of the

10  cases specifically he -- I believe he

11  testified to specific cases that he --

12  his review or his analysis showed that

13  the claims should be -- the claim code

14  should be changed from general liability

15  to complete operations in certain other

16  cases where the claim code should not be

17  changed and certain other claims where

18  he needed more information.

19          Q.      Do you know if the claims

20  that Mr. Bodi concluded were completed

21  operations were changed from general

22  liability to completed operations?

23          A.      No, I do not know.

24          Q.      Did you investigate that

EXHIBIT

J