```
                        IN THE UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF CONNECTICUT
------------------------------------------------------------------ x
EMCOR GROUP, INC.,                        :   Civil Action No.
                                              Docket 3:00-CV-2211 (AVC)
                    Plaintiff,            :
                                              Judge Alfred V. Covello
vs.                                       :

INSURANCE COMPANY OF NORTH AMERICA.       :
                                              September 14, 2004
                    Defendant.            :

------------------------------------------------------------------ x
```

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
APPROPRIATE 30(B)(6) WITNESS AND DOCUMENTS RELIED UPON BY 30(B)(6)
WITNESS STEVEN SNYDER**

The defendant INSURANCE COMPANY OF NORTH AMERICAN ("INA") submits this Memorandum of Law in opposition to Emcor's motion to compel appropriate 30(b)(6) witness and documents relied upon by 30(b)(6) witness Steven Snyder.

## INTRODUCTION

Emcor's motion to compel should be denied. This is Emcor's third motion to obtain yet another witness from INA long after the close of factual discovery. The first motion was denied. The second motion, for reconsideration, is pending. Each motion is premised on different grounds, although Emcor's ultimate goal is the same. Most instructive is the fact that Emcor waited two and one-half months since the 30(b)(6) deposition to serve the instant motion. Had Emcor truly believed the inadequacy of Mr. Snyder as a 30(b)(6) deponent, Emcor was in the position to immediately move for another 30(b)(6) witness. Emcor did not. Instead, it waited until its first motion was denied. Emcor's own delay is ample reason to deny the instant motion.

772957.1

In any event, INA produced a satisfactory 30(b)(6) designee and, thus, Emcor should not be entitled to a second deposition for this reason as well.

In addition, with regard to the portion of Emcor's motion seeking certain documents, that portion of the motion should be denied as moot. INA has produced most of the documents and is in the process of producing the remainder.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of an assortment of insurance coverage disputes. In early 2000, Emcor commenced this action and, shortly thereafter, discovery ensued. INA produced all of its claim files that involved the 106 claims that are in dispute.[1] ESIS also produced its claim files concerning the 106 claims in dispute. These files included electronic notes about the claims payment history and details, defense counsel reports, and the hardcopies and electronic claim summary sheets showing the codes assigned to each of these claims.[2]

Emcor deposed former INA employees Patrick Walton, William Luhman and Virginia Lloyd. Emcor deposed current ESIS employee Jackie Montefesco and former ESIS employee Ann Marie Marson. Interestingly, Emcor never sought to depose a 30(b)(6) witness from ESIS or of any of the ESIS claims adjusters whom worked on the disputed claims. This would have been the best method to determine how the ESIS files were organized and how ESIS conducted the claims.

Based upon the Court's scheduling order, which was extended several times, the parties were to complete fact discovery by November 30, 2003. Rather than schedule a 30(b)(6) deposition of INA at the commencement of the litigation, Emcor waited until October 20, 2003,

---

[1] Emcor and its counsel know that INA did not open a file for each claim reported to ESIS by Emcor. They also know that ESIS coded the files, either as a general liability claim or as a completed operations claim.

2

772957.1

a mere 41 days before fact discovery closed, to seek to conduct the 30(b)(6) deposition. By the parties' mutual consent, the deposition of Steven Snyder, INA's 30(b)(6) designee, was not conducted until June 8, 2004. Substantial motion practice then ensued. Each time, Emcor sought to obtain leave to depose an INA witness even though the fact discovery phase of the litigation had long since ended.

First, in mid-July, Emcor moved to "re-open" discovery, contending that it only recently learned of the existence of Ms. Patti Topper, an INA employee, and requested the Court grant it leave to depose her as a fact witness. Noting that, in its previous motion to amend the complaint, Emcor represented that it would not seek additional discovery, the Court denied the motion. The Court stated, "[a]ny order to the contrary would be simply inequitable."

Not happy with the result, Emcor moved again. This time, in mid-August, Emcor requested reconsideration of the order denying Emcor leave to re-open discovery. Emcor argued that the Court committed a clear error of law. As in its previous motion, Emcor asserted that the Court should grant it leave to depose Ms. Topper, despite the fact that (1) fact discovery has long since closed and (2) it represented that it would not seek any additional discovery if it were granted leave to amend its complaint. That motion remains pending.

Now, Emcor moves yet again. Emcor brings this motion purportedly because INA failed to produce a "knowledgeable and prepared" designee as required under Rule 30(b)(6) of the Federal Rules of Civil Procedure. However, even a cursory review of the deposition transcript of INA's 30(b)(6) designee reveals that INA satisfied its obligation to produce a knowledgeable and

---

( . . . continued)
[2] There are multiple "red wells" on most of these 106 claims. Counsel for Emcor spent days at ESIS reviewing the files and obtained copies of documents that it believed to be relevant.

prepared witness. A copy of the deposition transcript accompanies this brief as Exhibit "A". Thus, the motion should be denied.

Moreover, the motion should be denied because Emcor is merely requesting the same relief that this Court has already denied; Emcor is seeking, for the third time, to obtain a post-discovery phase deposition. And, in support of its argument, Emcor regurgitates the same tired arguments which this Court has already determined to be meritless. Therefore, as in its previous decision, the Court, here, too, should deny the motion.

## ARGUMENT

## POINT ONE

### INA PRODUCED A KNOWLEDGEABLE AND PREPARED DESIGNEE AS REQUIRED UNDER RULE 30(B)(6)

Emcor argues that INA failed to produce a knowledgeable and prepared designee as required under Rule 30(b)(6) of the Federal Rules of Civil Procedure. Emcor asserts that INA's designee, Steven Snyder, was "woefully unprepared" insofar as he purportedly was unable to testify as to the matters delineated in Emcor's 30(b)(6) notice.[3] Emcor's contentions completely lack merit.

Rule 30(b)(6) provides in its entirety:

> "A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent

---

[3] Mr. Snyder testified that he is a long-time employee of ACE, and is currently the Vice-President of claims. See Snyder Deposition, dated June 30, 2004, at 8. As Vice-President, he spends a majority of his time reviewing claims associated with general liability pollicies. See id. at 9. These policies contain definitions of completed operations claims. See id. at 11-15. Mr. Snyder explained the nature of a completed operations claim. See id. He then described the nature of the litigation, which Emcor's counsel considered "nice." Id. at 34. He then went on to explain how the claims, whether coded as a general liability claim or a completed operations claim, effected the policy's aggregates. See id. at 38, 40, 65. He stated that he deals with completed operations issues frequently. See id. at 45, 59, and 61.

4

772957.1

to testify on its behalf, and may set forth for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules."

While the deponents must be both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the organization (see Federal Deposit Ins. Corp. v. Butcher, 116 F.R.D. 196, 201 (E.D. Tenn. 1986)), Rule 30(b)(6) "is not designed to be a memory contest" (EEOC v. American International Group, 1994 U.S. Dist. LEXIS 9815, *8, 1994 WL 376052, at *3 (S.D. N.Y. 1994)). Moreover, because Rule 30(b)(6) witnesses testify on the corporation's behalf, courts routinely hold that such deponents need not have personal knowledge on a given subject, so long as they are able to reasonably convey the information known to the corporation. See Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D. Neb. 1995). Indeed, "Rule 30(b)(6) does not require a party to produce someone who is 'most knowledgeable' but only someone whose testimony is binding on the party." Cruz v. Coach Stores, 1998 U.S. Dist. LEXIS 18051, No. 96 Civ. 8099, 1998 WL 812045, at *4 n. 3 (S.D. N.Y. 1998)), aff'd in part, vacated in part on other grounds 202 F.3d 560, 573 (2d Cir. 2000); see also Rodriguez v. Pataki, 293 F. Supp. 2d 305, 310 (S.D. N.Y. 2003) ("it is settled law that a party need not produce the organizational representative with the greatest knowledge about a subject; instead, it need only produce a person with knowledge whose testimony will be binding on the party," aff'd 293 F. Supp. 2d 313 (S.D. N.Y. 2003)).[4]

---

[4] Mr. Snyder testified that he read the deposition transcripts of Virginia Lloyd, Bill Luhman and Pat Walton. See Snyder's Deposition, at 73. They are former employees of INA. See id. Mr. Snyder also reviewed various pleadings (see id. at 72), discovery responses (see id. at 80), the policies (see id. at 78) and other documents (see e.g. at 72-80, 135). He stated that he interviewed three current INA employees having knowledge about Emcor, Patti Topper, Rich Laferty and Anne Donahue (see id. at 82, 105). He stated that he reviewed the INA claim files
(continued . . . )

772957.1

**Item Number One of the 30(b)(6) Notice**

First, Emcor argues that Mr. Snyder was not prepared to discuss the first item listed in its 30(b)(6) notice. See Memorandum in Support of Motion to Compel, at 4. Item number one requests the 30(b)(6) witness to prepare to discuss "[m]atters known or reasonably available to INA regarding the coding of any claims identified on Exhibit A attached hereto as general liability claims." Exhibit "A" lists the 106 claims that are the subject of this insurance coverage dispute. The sole basis for Emcor's assertion is Mr. Snyder could not testify how the 106 claims are coded.

In this case, the crux of this litigation centers upon whether 106 claims (out of over 900 total claims) made under three commercial general liability insurance policies were properly coded as general liability claims. What is not in dispute is the fact that the 106 claims at issue are coded as general liability claims and that they were coded as general liability claims by ESIS. Thus, to say that Mr. Snyder could not answer "how" the claims were coded is a red herring. Emcor knows that the 106 claims are coded as general liability claims. Accordingly, the alleged lack of knowledge does not justify having another 30(b)(6) witness on the topic.[5]

**Item Number Two of the 30(b)(6) Notice**

Emcor next asserts that Mr. Snyder was unable to give adequate and knowledgeable responses to questions posed concerning topic number two. Item number two requests the 30(b)(6) witness to prepare to discuss those "[m]atters known or reasonably available to INA regarding the <u>creation</u>, <u>interpretation</u>, and <u>purpose</u> of the loss runs (and/or 'CRIS" reports) and

---

( . . . continued)
for the 106 claims, to the extent that they ever existed. See id. at 79. He reviewed the expert reports for INA. See id. at 132-133. In total, Mr. Snyder spent 40 to 50 hours preparing for the 30(b)(6) deposition. See id. at 130-131.

[5] In any event, Mr. Snyder's inability to recollect the exact nature of each claim is not indicative of his failure to reasonably prepare for the deposition. As the courts often state, Rule 30(b)(6) "is not designed to be a memory contest." American Int'l Group, 1994 U.S. Dist. LEXIS 9815 at *8, 1994 WL 376052 at *3.

772957.1

information contained therein for those claims identified on Exhibit A . . . ." (emphasis added). To support its argument, Emcor relies upon one snippet of the transcript where Mr. Snyder could not verify with complete certainty whether a certain CRIS report, generated March 25, 1998, reflected whether, for a given case, an indemnity payment occurred and that Mr. Lafferty might be able to provide information on the meaning of the net claim column.

A review of Mr. Snyder's deposition reveals that he was fully prepared to discuss the "purpose" of the CRIS reports. He was also able to "interpret" the CRIS reports and testify on issues surrounding their "creation." In fact, a review of the transcript indicates that Mr. Snyder spent a significant portion of his time discussing the issues surrounding the CRIS reports (see e.g. Snyder's Deposition, at 80, 96, 98, 100-109, 112, 124-125, 137-139, 158, 179, 188, 242-243, 254-260, 280-289, 204-205, 215, 228, 234, 263, 272, 277, 308, 313 and 319).

For instance, Mr. Snyder explained the "purpose" of the CRIS report. He stated that a CRIS report,[6] which is similar to a Risk Advantage Report, is a document generated – or "created" – by anyone who has access to the CRIS system (the insurance carrier, the third-party administrator or the insured), which includes any information that is related to a claim made under a particular insurance policy. See id. at 99-103. The reports can be customized so that they include only specific information. See id. at 103. For example, a CRIS report can be generated which only includes information on "reserves," "specific claims" or "summary information." Id. Mr. Snyder stated that a CRIS report could also be generated to show the breakdown between defense and indemnity (see id. at 103-104) and whether a particular claim is coded as a general liability claim or products completed operations claim (see id. at 104).[7] Mr.

---

[6] A CRIS report is often referred to by the parties as a "loss run" report.
[7] For a more expansive definition, Mr. Snyder stated the following with regard to the "purpose" of a CRIS report:

(continued . . . )

7

772957.1

Snyder added that CRIS reports are "created" by the "claims handlers" or by the "clerks," who work on behalf of the carrier, the third party administrator or the insured. Id. at 287-288.

When requested, Mr. Snyder was also able to "interpret" specific CRIS reports. For example, Emcor's counsel asked Mr. Snyder to identify Exhibit 190 and explain its central aspects. Exhibit 190 is purportedly a CRIS report, generated on March 25, 1998.[8] Mr. Snyder responded as follows:

> A: Well, based upon the first page this appears to be a CRIS report that was generated in – on March 25, 1998 for the Emcor account, and it looks like this first page are the parameters of the report is being sought.
>
> Q: Do you know what coverage code 23 and 24 is?
>
> A: It's my understanding coverage code 23 represents a general liability claim and coverage code 24 in CRIS represents a completed operations products claim.
>
> Q: This document was produced by INA in this litigation. Can you tell me what significance this document has to the coding of the cases that are identified on this document?
>
> A: It appears to identify ESIS claims that are found to have CRIS codes of 23 and 24 reflecting completed operations products, liability type claims, and general liability type claims.

See id. at 282-283.

---

( . . . continued)
> CRIS system allows for the generation of reports based upon the type of inquiry you make of it. Based upon – so you can get reports on all claims reserved at a certain dollar amount you can get reports on all claims paid on a specific day. You can get reports on just a myriad of data elements and you can get reports of – that incorporate a broad range of data elements. And so those are I think what is termed customized reports because you're asking for a specific parameter of data to be pulled from the CRIS database and submitted in a report

Id. at 290.

[8] Despite Emcor's counsel's assurances at the deposition of Mr. Snyder, Emcor has not provided INA with a copy of any of the exhibits referenced at the deposition.

8

772957.1

With regard to that same exhibit, later in his testimony, Mr. Snyder responded to Emcor's counsel's question regarding whether Exhibit 190 reflected information relevant to the exhaustion of the general liability aggregate limits. Mr. Snyder testified as follows:

> A:   It's a little difficult for me to tell from looking at this document whether it reflects the loss payments. It certainly reflects expense payments and to the extent that the expense payments erode the limits of the policies then as to specific types of claims, being general liability or complete operations.

Id. at 287.

Later during the deposition, the following conversation occurred regarding particular aspects of the CRIS report, marked as Exhibit 190:

> Q:   The last column where it says, "expense paid." Is it your understanding that that's defense?
>
> A:   It may not be limited to defense. It would include defense. It would include any expenses that were paid against the file.
>
> Q:   Well, when you say expenses you mean defense related expenses as distinguished from indemnity, expert costs, things like that?
>
> A.   Yes, if there's an expense that was incurred in the investigation of the claim, and was paid under the ESIS claim as an expense then investigation and/or defense of the claim then that expense would be recorded in Omni as an expense and the expense payments made against ESIS claim files would, I would – I believe, be reflected as expenses paid on a run similar to this.

Id. at 288-289. Mr. Snyder was also able to interpret other CRIS Reports. See e.g. id. at 282 (Exhibit 190); id. at 282 (Exhibit 191); and id. at 291 (Exhibit 192).

Thus, not only was Mr. Snyder prepared to generally discuss the topic of CRIS reports, he was also able to elaborate on what was contained in specific CRIS reports that were shown to him. More crucial, however, is the fact that Mr. Snyder was able to provide adequate and knowledgeable responses to questions posed concerning topic number two in that he offered detailed and illuminating responses to those questions regarding the "creation," "interpretation"

and "purpose" of the loss runs and CRIS reports. Thus, INA's designee satisfied its obligation to prepare for this item.

**Item Number Three of the 30(b)(6) Notice**

According to Emcor, Mr. Snyder was also not prepared to discuss item number three, which required the 30(b)(6) witness to prepare to discuss the identities of the cases that contributed to the exhaustion of the policies in question. See Memorandum of Law in Support of Motion to Compel, at 4-5. To support its argument, Emcor solely relies upon the fact that Mr. Snyder testified that he did not "consult with anyone in particular about that particular item." See id. Apparently, Emcor is under the impression that failure to discuss certain topics with any employee in particular represents a failure to properly prepare for a 30(b)(6) deposition.

Emcor's position is completely misplaced. Emcor fails to point out even a single question regarding item number three that Mr. Snyder allegedly could not answer due to his failure to prepare. As such, Emcor's argument is fatally flawed.

Moreover, Emcor completely misconstrues Mr. Snyder's testimony. Although he stated that he did not seek the guidance of any particular INA employee with regard to that very narrow issue, earlier in his testimony, Mr. Snyder explained that he spent scores of hours meeting with counsel and reviewing documents in preparation to testify to the items contained in the 30(b)(6) notice. See Snyder Deposition, at 130-131. In addition, Mr. Snyder specifically stated that he prepared to testify as to item number three by doing the following:

> "I did look at some cases as I testified that there were payments made that affected the aggregates. I've looked at documents that discussed claims that were charged against the aggregates. I looked at documents that reflected there were changes in coding that affected the aggregates. I looked at the policies. I looked at a lot of documents."

Id. at 185.

Further, he stated that the documents he reviewed identified "specific claims," which contributed to the exhaustion of the general liability aggregate limits. Id. at 185-186. Given this testimony, it is clear that Mr. Snyder properly prepared to discuss this topic at the deposition. See Starlight International Inc. v. Herlihy, 186 F.R.D. 626, 639 (D. Kansas) (if the designated person does not posses personal knowledge, the designee is obligated to prepare so that he may give knowledgeable and binding answers to the organization).

**Item Number Four of the 30(b)(6) Notice**

Fourth, Emcor asserts that INA's 30(b)(6) designee was not adequately prepared to discuss item number four of the 30(b)(6) notice, which required the witness to prepare to discuss matters reasonably available to INA regarding the recoding of any claims against Emcor. See Memorandum of Law in Support of Motion to Compel, at 5. To support its argument, Emcor quotes the following passage:

> Q. Do you know if the claims that Mr. Bodi[9] concluded were completed operations were changed from general liability to completed operations?
>
> A. No, I do not know.

Relying upon this passage, Emcor insinuates that Mr. Snyder's inability to answer this question is indicative of his overall inability to testify sufficiently as to item number four. Again, Emcor is wrong and its argument is a red herring.

Mr. Bodi is INA's expert in this case. As stated during the deposition, INA served Bodi's expert report over one year ago and Emcor deposed Mr. Bodi. INA's counsel explained during the deposition that INA stipulates that "that the claims that Mr. Bodi opined on have not been changed from general liability to completed operations because, exactly for what this

---

[9] Mr. Bodi is INA's expert witness.

witness said, we are in litigation and it's – it's still in dispute." Snyder Deposition, at 153-154. Mr. Snyder gave extensive and repeated testimony about claims that were recoded prior to the commencement of this litigation. This testimony centered on the investigation conducted by William Luhman. See id. at 74-78, 94-96, 152-153. He also gave testimony on a specific claim that was recoded. See id. at 197-200.

**Item Number Five of the 30(b)(6) Notice**

Last, Emcor asserts that Mr. Snyder was not prepared to discuss item number five, which required the 30(b)(6) designee to prepare to discuss whether INA "paid any money to EMCOR due to the recoding or replenished any general liability aggregate limits as a result of the recoding." See Memorandum of Law in Support of Motion to Compel, at 5. To support its argument, Emcor notes that Mr. Snyder did not actually review the billing records that purportedly reflect whether money was paid or the aggregates were replenished.

Emcor's argument is misplaced insofar as it fails to grasp the purpose of the 30(b)(6) witness. As discussed above, because Rule 30(b)(6) witnesses testify on the corporation's behalf, courts routinely hold that such deponents need not have personal knowledge on a given subject. See Dravo, 164 F.R.D. at 75. Thus, Mr. Snyder was not required to actually review the billing documents so that he could testify based upon actual knowledge.[10] Rather, he was merely obligated to prepare so that he was able to reasonably convey the information known to the corporation. See id. This is exactly what Mr. Snyder did.

---

[10] It is indeed ironic that Emcor believes that Mr. Snyder was not prepared to testify on this topic. Emcor itself has the billing invoices, initially mailed to Emcor and provided copies during this litigation. The records, which are hard copies only, contain detailed information on the credits given to Emcor, identifying the claims and amount involved. The invoices were generated on a monthly basis, for a four-year time frame. They contain information on a myriad of claims; the vast majority of which do not involve the claims in dispute. The information is not on an electronic database. Thus, to require Mr. Snyder to review this mountain of documents, merely to cull the very limited information concerning "credits," is simply unreasonable.

For instance, to prepare for the deposition, as recounted above, Mr. Snyder spent scores of hours meeting with INA counsel and independently reviewing documentation relative to this insurance coverage dispute. Mr. Snyder also spoke with several employees at INA who were able to assist him in preparing for the deposition, including Mr. Laferty and Ms. Topper. Although those two witnesses may have more knowledge about certain specific issues raised during the deposition, INA was not required to produce them. As the law makes clear, "Rule 30(b)(6) does not require a party to produce someone who is 'most knowledgeable' but only someone whose testimony is binding on the party." <u>Cruz</u>, 1998 U.S. Dist. LEXIS 18051 at *1, 1998 WL 812045 at *4 n. 3.

The content of Mr. Snyder's testimony also reveals that he was very prepared to discuss the billing practices of INA. The following highlights Mr. Snyder's preparedness on this issue:

Q. When you spoke with Miss Topper in preparation for today's deposition, what was Miss Topper's job or title?

A. She works in Ace Financial, and I believe, I don't know what her specific title is. I believe she is responsible for certain financial transactions that would impact the effect of the aggregates.

Q. * * * Remind me, did she say that there could be an effect on the aggregate due to the recoding or there was an effect on the aggregate due to the recoding?

A. I believe she said that there was.

Q. There was an effect?

A. Yes.

Q. And did she tell you what that effect was?

A. What she told me was that when a claim would be recoded such that the claim would be charged from the general liability aggregate to the completed operations aggregate where that general aggregate – where that general liability aggregate was exhausted and the claim was handled under the 4337 contract, that that activity electronically generates a change. So that the debit and credit is – I'm

13

772957.1

not a financial person. There's a debit and credit to the respective aggregates in the finite loss fund. And that Emcor is billed monthly for claims that are their responsibility. And when a claim is – code is changed so that it would fall it would replenish an aggregate and become Ace's responsibility under the finite agreement then there's a debit and credit generated and the billing to Emcor for the – under the 4337 claims would be credited for that.

\* \* \*

Q. Okay. Tell me if this is a fair statement. Are you suggesting that to the extent a case – a code is changed from general liability to completed operations, the financial impact of that change is reflected on the billing that ultimately goes to Emcor?

\* \* \*

A. I believe what I said was pretty clear. And what I said was that when a – when a change is made such that a claim is charged from an exhausted aggregate which would then have been charged to the 4337 contract to – from general liability to complete operations where the aggregate is no – is not exhausted then there's a debit that's created under the – under the 2806 contract to charge that policy with that claim and – or the policy with that claim in the finite agreement with payment responsibility and a credit is given to the billing – a credit is given under the 4337 contract that's reflected in the monthly billing that is sent to Emcor.

Snyder's Deposition, at 112-116.

In short, like the other items in the 30(b)(6) notice, Mr. Snyder was more than reasonably prepared to discuss item number five.

## POINT TWO

### EMCOR'S REQUEST TO DEPOSE MS. TOPPER AND MR. LAFERTY IS INAPPROPRIATE

Contending that INA failed to produce a satisfactory 30(b)(6) designee, Emcor appears to request the Court to grant it leave to depose "Ms. Topper and perhaps Mr. Laftery . . .." Memorandum of Law in Support of Motion to Compel, at 5. Emcor is not entitled to such relief.

As an initial matter, this is Emcor's third request for such relief. The Court has already determined that such relief was baseless. Thus, Emcor should not be allowed to end-around the

14

772957.1

Court's prior orders by granting it relief here. Accordingly, the Court should adhere to its prior decision and not afford Emcor the type of relief it seeks here.

In any event, Emcor is not entitled to the relief. The law is clear that Rule 30(b)(6) does not require a party to produce someone who is "most knowledgeable" but only someone whose testimony is binding on the party. Cruz, supra, 1998 U.S. Dist. LEXIS 18051, No. 96 Civ. 8099, 1998 WL 812045, at *4 n. 3; see also Rodriguez, supra, 293 F. Supp. 2d at 310 (It is settled law that a party need not produce the organizational representative with the greatest knowledge about a subject; instead, it need only produce a person with knowledge whose testimony will be binding on the party)). Thus, even if Emcor feels that Ms. Topper or Mr. Laferty are more knowledgeable, they are not entitled to choose their witnesses. So long as INA produces a party whose testimony is binding, INA can produce any witness it chooses.

## POINT THREE

## EMCOR'S REQUEST FOR CERTAIN DOCUMENTS IS MOOT

Emcor also requests several documents, including those upon which Mr. Snyder relied at his 30(b)(6) deposition. However, that request is moot. INA is in the process of gathering the requested documents, along with other certain "additional" loss run reports, and will provide Emcor with same within the next several days. Accordingly, that portion of Emcor's motion should be denied as moot or at least left in abeyance while INA complies with the outstanding discovery request.

## CONCLUSION

In light of the foregoing, it is respectfully submitted that Emcor's motion to compel should be denied.

772957.1

Dated: White Plains, New York
September 13, 2004

                DEFENDANT INSURANCE COMPANY
                 OF NORTH AMERICA

*/s/ Thomas Leghorn*
Thomas Leghorn (CT #22106)
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000 -- telephone
(914) 323-7001 -- facsimile
File No.: 00756.35967