IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------x

| | | |
|---|---|---|
| EMCOR GROUP, INC., | : | Civil Action No.<br>Docket 3:00-CV-2211 (AVC) |
| Plaintiff, | : | |
| | | Judge Alfred V. Covello |
| v. | : | |
| | | November 15, 2004 |
| INSURANCE COMPANY OF NORTH AMERICA. | : | |
| Defendant. | : | |

------------------------------------------------------------x

## INSURANCE COMPANY OF NORTH AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendant
INSURANCE COMPANY OF
NORTH AMERICA
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000
Fax (914) 323-7001
File No. 00756.35967

Rome McGuigan Sabanosh, P.C.
One State Street
Hartford, Connecticut 06103
(860) 549-1000
Fax (860) 724-3921

809347.1

# TABLE OF CONTENTS

                                                                   **PAGE**

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

    The Policies ............................................................................................................. 3

    The Claims Administration ...................................................................................... 5

    New York Litigation ................................................................................................. 8

    Claims in Dispute ................................................................................................... 11

ARGUMENT .................................................................................................................... 12

  POINT I

    THE SUBSTANTIVE LAW OF NEW YORK
    APPLIES TO EMCOR'S CONTRACT CLAIM .................................................. 12

  POINT II

    EMCOR WRONGLY CONSTRUES THE
    POLICY DEFINITION OF THE TERM
    "PRODUCTS-COMPLETED OPERATIONS
    HAZARD" ............................................................................................................. 13

  POINT III

    CLAIMS IN WHICH EMCOR'S WORK WAS
    NOT CAUSALLY RELATED TO THE
    PLAINTIFF'S INJURIES OR DAMAGE ARE
    GENERAL LIABILITY CLAIMS ....................................................................... 15

    A.    Summary Judgment Standard. .................................................................... 15

    B.    The bodily injuries or property damage in the
           EMCOR claims listed in Exhibit "A" and Exhibit
           "B" did not "arise out of" EMCOR's work because
           there was no element of proximate causation, as
           required under New York law ..................................................................... 17

C. Similarly, the bodily injuries or property damage in the EMCOR claims listed in Exhibit "A" and Exhibit "B" did not "arise out of" EMCOR's work because there was no element of causation, as required under Connecticut law. ...................................................................20

D. The claims listed in Exhibit "A" and Exhibit "B" are general liability claims because the underlying injuries were so far attenuated from, or had nothing to do with, EMCOR's work. ...................................................................22

POINT IV

THE COURT SHOULD GRANT INA'S PARTIAL MOTION FOR SUMMARY JUDGMENT WHERE THE FACTS SHOW THAT THE INSURED'S WORK WAS ON-GOING .................................................23

POINT V

THE COURT SHOULD GRANT INA'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS LISTED IN EXHIBIT "A" BECAUSE THE WORK, HAVING NOT BEEN BEGUN, COULD NOT HAVE BEEN COMPLETED BY THE TIME OF THE ACCIDENT ...................................................................24

POINT VI

EMCOR IS JUDICIALLY ESTOPPED FROM ASSERTING THAT THE CLAIMS SUBMITTED FOR COVERAGE UNDER THE 1993-1994 AND THE 1994-1995 POLICIES ARE COMPLETED OPERATIONS ...................................................................25

806524.3

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AXA Marine & Aviation Insurance (UK) Ltd. v. Seajet Industries*, 84 F.3d 622
(2d Cir. 1996) ..................................................................................................25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505,
91 L. Ed. 2d 202 (1986) ...................................................................................15

*Bates v. Long Island Railroad Co.*, 997 F.2d 1028 (2d Cir.), cert. denied 510 U.S. 992,
126 L. Ed. 2d 452, 114 S. Ct. 550 (1993) ........................................................25

*Beretta U.S.A. Corp., v. The Federal Insurance. Co.*, 17 Fed. Appx. 250
(4th Cir. 2001)..................................................................................................20

*Brazas Sporting Arms, Inc., v. American Empire Surplus Lines Insurance Co.*,
220 F.3d 1 (1st Cir. 2000) ................................................................................20

*Coregis Insurance Co. American Health Foundation*, 251 F.3d 123
(2d Cir. 2001) ...................................................................................................20

*Essex Insurance Co. v. Newton Agri-Systems, Inc.*, 832 F. Supp. 1565
(S.D. Georgia 1993) .........................................................................................21

*Kimmins Industrial Service Corp. v. Reliance Insurance Co.*,
19 F.3d 78 (2d Cir. 1994) ....................................................................17, 18, 19

*Klaxon Co. v. Stentor Electrical Manufacturing Co.*, 313 U.S. 487, 85 L. Ed.
1477, 61 S. Ct. 1020 (1941) .............................................................................12

*Lumberman's Mutual Casualty Co. v. Town of Pound Ridge*, 362 F.2d 430
(2d Cir. 1966) ...................................................................................................24

*Lund's Inc. v. Chemical Bank*, 870 F.2d 840 (2d Cir. 1989) .......................................12

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109
(2nd Cir. 1990)..................................................................................................25

*Musick v. Burke*, 913 F.2d 1390 (9th Cir. 1990) ........................................................16

## STATE CASES

*Aetna Casualty & Surety Co. v. Liberty Mutual Insurance Co.*, 91 A.D.2d 317,
459 N.Y.S.2d 158 (4th Dept. 1983) .................................................................18

809462.1

*American Medical Response v. New Hampshire Insurance*,
  1997 Conn. Super. LEXIS 704 (Super. Ct. 1997) ..................................................21

*Covenant Insur. Co. v. Sloat*, 2003 Conn. Super. LEXIS 1557
  (Conn. Super. Ct. 2003) ..................................................................................20, 21

*Empire Insurance Co. v. Schliessman*, 306 A.D.2d 512, 763 N.Y.S.2d 65
  (2d Dept. 2003) ..............................................................................................17, 19

*Family Farm Casulty Insur. Co. v. Trapani*, 301 A.D.2d 740, 753 N.Y.S.2d 198
  (3d Dept. 2003) ..............................................................................................17, 18

*Gibson v. Fullin*, 172 Conn. 407, 374 A.2d 1061 (1977) ..................................................12

*Hogle v. Hogle*, 167 Conn. 572, 356 A.2d 172 (1975) ......................................................20

*Holy Trinity Church of God in Christ. v. Aetna Casualty and Surety Co.*,
  214 Conn. 216, 571 A.2d 107 (1990) ..................................................................20

*Lumbermen's Mutual Casualty Co. v. Logan*, 88 A.D.2d 971,
  451 N.Y.S.2d 804 (2d Dept. 1982) ..........................................................17, 18, 19

*New York Central Mutual Fire Insurance v. Hayden*, 209 A.D.2d 927, 619
  N.Y.S.2d 910 (4th Dept. 1994) ............................................................................19

*O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986) ..........................................12

*Reichhold Chemicals, Inc. v. Hartford Accident & Indemnity Co.*, 243 Conn. 401, 703
  A.2d 1132 (1997) ..........................................................................................12, 13

*United Services Automobile Associate v. Kaschel*, 84 Conn. App. 139,
  851 A.2d 1257 (2004) ..........................................................................................21

*United Services Automobile Assoc. v. Aetna Cas. & Surety Co.*, 75 A.D.2d 1022,
  429 N.Y.S.2d 508 (4th Dept. 1980) ..........................................................17, 18, 19

*Wassau Underwriters Insurance Co. v. St. Barnabas*, 145 A.D.2d 314, 534 N.Y.S.2d
  982 (1st Dept. 1988) ............................................................................................19

*Whitfield v. Empire Mutual Insurance Co.*, 167 Conn. 499, 356 A.2d 139 (1975) ..........12

**FEDERAL STATUTES**

Fed. R. Civ. P. 56(c) ..........................................................................................................15

Fed. R. Civ. P. 56(e) ..........................................................................................................16

## PRELIMINARY STATEMENT

Plaintiff, EMCOR, Inc., ("EMCOR") alleges that Defendant Insurance Company of North America ("INA") prematurely depleted the aggregate general liability policy limits on three general liability policies issued to EMCOR's predecessor, JWP, Inc. a company identified in each policy as a New York company. EMCOR alleges, in part, in the third amended complaint that INA improperly coded 106 claims (of the hundreds and hundreds of claims submitted for coverage under the three policies) as general liability claims, thereby depleting the general aggregate limit of liability in each of the three policies. EMCOR asserts that these claims should have been classified as completed operations, with the costs associated with those claims applied to the products-completed operations aggregate limit.

INA respectfully submits this Memorandum of Law, along with the Motion for Summary Judgment dated November 15, 2004, with annexed exhibits in support of INA's motion for partial summary judgment. As INA demonstrates, there are no genuine issues of material fact that:

1. Claims listed in Exhibit "A" to the Third Amended Complaint where EMCOR never performed work at the site of the accident are general liability claims because the bodily injury or property damage did not "arise out of" EMCOR's work;

2. Those claims listed in Exhibit "A" to the Third Amended Complaint where the claimed bodily injury or property damage was not caused by

1

806524.3

EMCOR's work are general liability claims because the bodily injury or property damage did not "arise out of" EMCOR's work;

3. Claims listed in Exhibit "A" to the Third Amended Complaint where EMCOR never performed work at the site of the accident are general liability claims because the bodily injury or property damage cannot be deemed completed;

4. Those claims listed in Exhibit "A" to the Third Amended Complaint where EMCOR's work was in progress at the time of the bodily injury or property damage are general liability claims; and,

5. Under the doctrine of judicial estoppel, the claims listed in Exhibit "A" to the Third Amended Complaint that had been submitted for coverage under 1993-1994 and 1994-1995 policies are general liability claims because EMCOR agreed that these claims are general liability claims when the issue of whether the general aggregate limit had been exhausted for these policies was litigated in several actions in New York.

Accordingly, INA seeks summary judgment on the First Count of the Third Amended Complaint (Breach of Contract-Misclassification), the Fourth Count of the Third Amended Complaint (Bad Faith), the Fifth Count of the Third Amended Complaint (Breach of Fiduciary Duty) and the Sixth Count of the Third Amended Complaint (Declaratory Judgment) to the extent that these counts are based upon the claims included in the five categories listed above.

In the alternative, INA asks that this Court rule that as a matter of law that:

2

806524.3

1. Any claim in which the bodily injury or property damage did not arise out of EMCOR's work is a general liability claim because there must be a causal connection between the injury and EMCOR's work;

2. Any claim in which EMCOR's work was not completed at the time of the accident giving rise to the bodily injury or property damage is a general liability claim; and,

3. EMCOR is judicially estopped from arguing that the claims submitted for coverage under the 1993-1994 and 1994-1995 policies should be classified as completed operations.

## STATEMENT OF FACTS

**The Policies**

From October 1, 1992 through October 1, 1995, INA issued three successive commercial general liability primary insurance policies to JWP, Inc.[1] JWP, Inc. was located in New York at the time each policy was issued. The policies provided coverage pursuant to its terms and conditions for "occurrences" that occurred during the policy period.[2]

---

[1] The evidentiary support for the Statement of Facts is cited in detail in INA's Rule 56(a)(1) Statement and provided in the Exhibits accompanying the Rule 56(a)(1) Statement. This Court is respectfully referred to the Rule 56(a)(1) Statement and exhibits.

[2] By endorsement effective December 15, 1994, the named insured for the 1994-95 policy was amended to read EMCOR GROUP, INC. ("EMCOR"). There is no dispute that certain subsidiaries of JWP, Inc. or EMCOR such as Welsbach, Forest Electric and Penguin are insureds under the policies. For ease of use, INA will refer to the all the insureds as EMCOR.

Each of the INA policies had a policy term of one year, a general aggregate policy limit of $2,000,000 and a products-completed operations hazard aggregate limit of $3,000,000.

Each of the three INA general liability policies defined "products-completed operations hazard" coverage as:

> a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> (1)   Products that are still in your physical possession; or
>
> (2)   Work that has not yet been completed or abandoned.
>
> b.   "Your work" will be deemed completed at the earliest of the following times:
>
> (1)   When all of the work called for in your contract has been completed.
>
> (2)   When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
>
> (3)   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The term "Your work" is defined in each policy as:

> The term "Your work" means:
>
> a.   Work or operations performed by you or on your behalf; and,

4

    b.    Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

    b.    The providing of or failure to provide warnings or instructions.

Each policy had several relevant endorsements:

1. The Deductible Endorsement provides that JWP, Inc. agreed that INA did not have any duty to defend JWP in any suit.

2. The Deductible Endorsement provides that INA had the right at its sole discretion to pay any amount within the deductible to settle any claim or suit.

3. The Revised Endorsement No. 33 to the 1992-1993 policy provides that all allocated claims expense will be paid by JWP, Inc. Allocated claims expenses did not contribute towards the exhaustion of the general liability aggregate limits.

4. Endorsement No. 33 to the 1993-1994 policy provides that all allocated claims expenses will be paid by JWP, Inc. and will contribute towards the exhaustion of the general liability aggregate limits.

5. Endorsement No. 33 to the 1994-1995 policy provides that all allocated claims expenses will be paid by JWP, Inc. and will contribute towards the exhaustion of the general liability aggregate limits.

**The Claims Administration**

JWP Inc. entered into a written agreement with a company known as ESIS for ESIS to act as JWP's third party administrator. ESIS investigated, adjusted and otherwise administered the JWP claims.

ESIS decided, based upon the then available information, whether the claim should be classified as a general liability claim or classified as a completed operations

5

806524.3

claim.[3] This information, among other information about the claim, was maintained both in the "hard" file and in a computer system known as "OMNI".

At all relevant times, Susan Reinhard was EMCOR's risk manager. Ms. Reinhard's responsibilities included the administration of the EMCOR insurance policies and the management of the claims under those policies. EMCOR had access to the hard files and the information contained in the OMNI system. EMCOR reviewed the claim files maintained by ESIS and was intimately involved in the handling and administration of the claims.

### The Exhaustion of the General Aggregate Limits and EMCOR's Investigation into the Coding of the Claims as General Liability Claims

Hundreds and hundreds of claims were submitted by JWP Inc. or its subsidiaries for coverage under the three policy years. The claims were based upon accidents that occurred between October 1, 1992 through September 30, 1995 since each policy provided coverage for occurrences (accidents) occurring within their respective policy periods. At the time that each claim was submitted for coverage by JWP, Inc., ESIS determined if the claim should be designated as a general liability or a completed operations claim.

Pursuant to the terms of the 1992-1993 policy, only loss payments incurred by EMCOR resulted in a decrease of the limits of liability specified in the policy. However, pursuant to the terms of the 1993-1994 and the 1994-1995 policies, loss payments and claim expenses (such as legal defense costs) incurred by EMCOR decreased the limits of liability specified in each policy. The general aggregate limit for the 1992-1993 policy

---

[3] Payments made on claims that were classified as a general liability claims impaired the general aggregate limit and payments made on claims that were classified as a completed operations claims impaired the products-completed operations limit as provided in Endorsement 33 of the policies.

6

exhausted on June 9, 1998. The general aggregate limit for the 1993-1994 policy exhausted on November 3, 1997. The general aggregate limits for the 1994-1995 policy exhausted on October 28, 1998.

EMCOR began its review of whether claims submitted for coverage under the 1992-93 and the 1993-1994 policies were properly coded as general liability claims and properly reduced the general aggregate limits beginning in November 1997. EMCOR performed a similar review of the claims submitted for coverage under the 1994-1995 policy beginning in March 2000.

By November 1997, Ms. Reinhard had concluded that some claims submitted for coverage under the 1993-19934 policy were improperly classified as general liability claims. By March 1998, Ms. Reinhard, had concluded that some claims submitted for coverage under the 1992-1993 policy were improperly classified as general liability claims. By September 13, 2000, EMCOR had concluded that some claims submitted for coverage under the 1994-1995 policy were improperly classified as general liability claims. Beginning in March 1998, and at all times thereafter, EMCOR, through Ms. Reinhard and its broker, (Marsh), asserted that because the claims had been improperly coded as general liability claims, the general aggregate limit in each of the three policies had not been exhausted.

During this entire period of time, EMCOR regularly received loss runs for the claims submitted for coverage under the policies. These loss runs included the identity of the claimants, the financials, a description of the claim and whether the claim was classified as general liability or completed operations.

EMCOR retained the law firm of Dickstein Shapirio Morin & Oshinsky LLP in late 1997 or early 1998 with respect to the classification of claims issue. In 1998 and 2000, EMCOR also sought the assistance of the counsel representing it on most of the underlying claims, London Fischer, in EMCOR's investigation about the classification of the claims.

**New York Litigation**

During the time period that EMCOR was asserting that a number of claims submitted for coverage under each of the three policies had been improperly classified as general liability claims and thus the general aggregate limits were not exhausted, EMCOR, through its subsidiaries, was a party in several cases in New York where the same issue of the exhaustion of the aggregate limits was litigated.

In *The Port Authority of New York and New Jersey et al v. Insurance Company of North America et. al.*, pending in Supreme Court of the State of New York, Index No. 122068/98, an EMCOR subsidiary, Penguin Maintenance and Services Inc., in a cross motion filed on May 8, 2001, asserted that the 1994-1995 general aggregate limit was exhausted. In her affidavit filed in support of the cross motion, Ms. Reinhard testified that:

> The INA policy general aggregate limits became exhausted, but no earlier than December 1, 1998.

In her affidavit to the New York court, Ms. Reinhard did not state that the claims whose costs impaired the general aggregate limit were, in her opinion, incorrectly classified.

8

806524.3

EMCOR's counsel, London Fisher, in further support of the cross motion asserted:

1. Ms. Reinhard unequivocally states that the INA policy limits became exhausted, but no earlier than December 1, 1998.

2. Plaintiff's counsel is well aware of the fact that the policy is exhausted yet is taking a position it knows to be contrary to fact.

3. In the testimony of Richard Lafferty in the case Ambassador Construction Company v. Insurance Company of North America, Mr. Lafferty clearly and unequivocally testified based upon a claims loss run that the policy limits for the INA policy for that year had become exhausted.

In *Lehrer McGovern Bovis et. al. v. Forest Electric, Inc. et. al.* pending in Supreme Court of the State of New York, Index No. 106185/99, INA, in 2000, cross moved for summary judgment on the grounds that the general aggregate limits for the 1994-1995 was exhausted. Forest Electric, an EMCOR subsidiary, also moved for summary judgment. In support of its motion, Forest Electric submitted a copy of an affidavit of Susan Reinhard that had been used in a prior matter (*HRH Construction Corp., et. al. v. Forest Electric et. al*). EMCOR did not contest INA's evidence that the general aggregate limits for the 1994-1995 was exhausted. In her affidavit to the New York court, Ms. Reinhard again did not state that the claims whose costs impaired the general aggregate limit were, in her opinion, incorrectly classified.

In *HRH Construction Corp., et. al. v. Forest Electric et. al.* pending in Supreme Court for the State of New York, County of New York,, Index No. 104909/98, INA and

9

the EMCOR subsidiary, Forest Electric Corporation, each moved to dismiss in 1999. INA asserted in its motion papers that the aggregate general limit for the 1993-1994 policy was exhausted. In support of its motion, INA served upon all the parties an affidavit of Virginia Lloyd wherein Ms. Lloyd testified that the general aggregate limit of the 1993-1994 policy as exhausted. INA's motion papers were served upon counsel for all parties on or about March 30, 1999. Counsel for EMCOR's subsidiary was Dickstein Shapiro Marin & Oshinsky LLP.

Forest Electric, despite being represented by the Shapiro law firm (the firm who had two years earlier informed Susan Reinhard that a number of claims in its opinion had been wrongly classified as general liability claims), did not oppose INA's motion or controvert the evidence. In her affidavit to the New York court in support of Forest Electric's motion, Ms. Reinhard again did not state that the claims whose costs impaired the general aggregate limit were, in her opinion, incorrectly classified.

In *Structure Tone, Inc. v. JMP Forest Electric, et. al.* pending in Supreme Court for the State of New York, County of New York,, Index No. 104909/98, INA and the EMCOR subsidiary, Forest Electric Corporation in 1998 each moved for summary judgment. INA asserted that the general aggregate limit of the 1993-1994 policy as exhausted and submitted an affidavit of Carol A. Myrtetus in support. The INA motion, including the affidavit, was served upon all parties, including the EMCOR subsidiary, on or about January 21, 1998. EMCOR, through its subsidiary, did not oppose the INA motion nor controvert the affidavit.

10

**Claims in Dispute**

In this litigation, EMCOR alleges in its third amended complaint that 106 claims were improperly classified and, as a result, the aggregate general limits for the 1992-1993, 1993-1994 and 1994-1995 policies were prematurely exhausted.[4] In support of its position, EMCOR offers the expert report of William Stewart. In relevant part, EMCOR argues that unless EMCOR was in the process of physically working at a site, any claim against EMCOR should be considered under its products-completed operations aggregate limit, not its general aggregate limits.

In contrast, INA, through its expert, Al Bodi, asserts that the policy language provides that in order for a claim to fall within the products-completed operations hazard: (1) the claim must occur away from the premises the insured owns or rents; (2) the claim must arise out of the insured's work or product; and, (3) the insured must not have a product in physical possession or must have completed its work.

The majority of the cases asserted against EMCOR were cases in the greater New York City metropolitan area and involved an EMCOR subsidiary, Welsbach Electric. Essentially, Welsbach was retained by New York City to repair traffic signals within a two hour period after being notified about a traffic signal malfunction. Most of the cases involved motor vehicle accidents in which there was an alleged, often unspecified, malfunction of a traffic signal. The underlying plaintiffs sued The City of New York and Welsbach or the City of New York impleaded Welsbach.

---

[4] EMCOR agrees that one of these claims was properly coded as a general liability claim. EMCOR, in its supplemental expert report of William Stewart, attempts to add four additional claims. INA has moved to strike the supplemental expert report.

11

806524.3