Some cases were "trip and fall" claims in which the plaintiff claimed there was a hazardous condition in the street or on the sidewalk.

The evidence, in the form of admissions made by EMCOR or positions taken by EMCOR in the litigation against EMCOR giving rise to the claims now in dispute, demonstrates that there are claims in which:

1. EMCOR was never at the site involved in the accident or working at a remote location at the site. (Exhibit "A").

2. There is a clear lack of causation between the bodily injury or property damage and EMCOR's work at the site. (Exhibit "B").

3. EMCOR's work was ongoing at the time of the accident. (Exhibit "C").

## ARGUMENT

### POINT I

### THE SUBSTANTIVE LAW OF NEW YORK APPLIES TO EMCOR'S CONTRACT CLAIM

In a diversity case, a district court looks to the forum state to select choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941); *Lund's Inc. v. Chemical Bank*, 870 F.2d 840, 845 (2d Cir. 1989) ("A federal district court deciding a diversity case applies the same choice of law rules as the state courts in the state in which it sits."). Applying Connecticut's choice of law rules under a contract analysis, the district court should conclude that the substantive law of New York applies. *See O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986); *Whitfield v. Empire Mut. Ins. Co.*, 167 Conn. 499, 356 A.2d 139 (1975).

In determining the governing law, a forum applies its own conflict-of-law rules. *Gibson v. Fullin*, 172 Conn. 407, 411, 374 A.2d 1061 (1977). In *Reichhold Chemicals,*

*Inc. v. Hartford Accident & Indemnity Co.*, 243 Conn. 401, 703 A.2d 1132 (1997), the Connecticut Supreme Court adopted the Second Restatement Conflict of Laws most significant relationship approach to resolving conflict of law questions in contract cases.

New York has the most significant relationship to the issues pertaining to INA's motion for partial summary judgment. The issues involved in this motion pertain exclusively to the definitions of certain key terms within each of the three policies: the definition of "products/completed operations hazard", "Your work", and most significantly, the phrase "arising out of" as used in the definition of products/completed operations hazard. Applying Connecticut's choice of law rules, New York law should govern this issue. At the time each policy was issued, JWP, Inc. was located in Rye Brook, New York, as shown on the declarations page of each policy. The insurance contracts were negotiated, executed, and delivered in New York.

Moreover, in each litigation brought in New York in 1998, 1999 and 2000 involving two of the three polices at issue in this case and which involved the issue of whether the policy limits were exhausted, EMCOR never asserted that Connecticut law should be applied. In fact, New York law was applied. Accordingly, this Court should apply the substantive law of New York.

## POINT II

### EMCOR WRONGLY CONSTRUES THE POLICY DEFINITION OF THE TERM "PRODUCTS-COMPLETED OPERATIONS HAZARD"

It is plain common sense that when determining the meaning of a term contained in an insurance policy, the insurance policy should be first consulted. EMCOR alleges

13

that the claims in dispute fall within the definition of the term "products-completed operations hazard". Each policy clearly defines this term as:

> "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent **and** arising out of "your product" or "your work" except:
>
> (1) Products that are still in your physical possession; or
>
> (2) Work that has not yet been completed or abandoned.

*Emphasis added.*

Thus, in order to demonstrate that a claim falls within the policy definition of the term "products-completed operations hazards", EMCOR has the burden of demonstrating that each of the three elements of the definition has been meet with respect to each of the claims in dispute:

1. The "bodily injury" and "property damage" occurs away from premises you own or rent; and,

2. The "bodily injury" and "property damage" arises out of "Your product" or "Your work"; and,

3. Either the product is not in EMCOR's possession or EMCOR's work had been completed.[5]

EMCOR believes that "unless EMCOR was in the process of working at a site, any claim made against EMCOR should be considered under its products/completed operations aggregate limit, not its general aggregate limit". (Plaintiff's expert disclosure,

---

[5] There is no dispute that the claims asserted against EMCOR involve bodily injury or property damage away from its premises. There is no dispute that the claims do not involve EMCOR's product.

14

Stewart Report p. 4). EMCOR is wrong. EMCOR ignores the requirement clearly spelled out in each policy that the bodily injury or property damage must arise out of EMCOR's work. Simply stated, even if EMCOR's work was completed at the time of the accident, if the bodily injury or property damage did not arise out of EMCOR's work, then the claim does not meet the policy definition of "products-completed operations hazard" and must be a general liability claim.

Having demonstrated that EMCOR misconstrued the term "products-completed operations" hazard, INA will now demonstrate that the claims cited in Exhibits "A", "B" and "C" are properly classified as general liability claims because: 1. EMCOR's work was not causally related to the accident, as required under both New York and Connecticut law; or, 2. The work, having never been started, could not be deemed to have been completed; or, 3. The accident occurred during EMCOR's ongoing work.

## POINT III

### CLAIMS IN WHICH EMCOR'S WORK WAS NOT CAUSALLY RELATED TO THE PLAINTIFF'S INJURIES OR DAMAGE ARE GENERAL LIABILITY CLAIMS

**A.  Summary Judgment Standard.**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). To

defeat the motion, the non-moving party must affirmatively set forth facts showing there is a genuine issue for trial. *Id.* When the non-moving party bears the burden of proving the claim, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990).

When the moving party meets its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not respond with specific facts, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. P. 56(e).

Exhibit "A" lists the cases and evidence for the claims that EMCOR either never worked at the site of the accident or had at one time worked at a remote section of the site of the accident. Exhibit "B" lists the cases where the evidence demonstrates that the EMCOR work was not casually related to the plaintiff's bodily injury or property damage. Exhibit "C" lists the cases where the evidence indicates that EMCOR's work was on going at the time of the accident.[6] The fact patterns in these categories demonstrate that these claims are general liability claims because the bodily injury or property damage did not arise out of EMCOR's work. Moreover, the evidence shows that where EMCOR was not at the site, the work was not completed because the work had never even been begun.[7]

---

[6] This Court is respectfully referred to INA's charts summarizing the evidence in each of these cases and the specific evidence on each of the claims in support. Exhibits "A" "B" and "C."

[7] It is INA's position that far more of the disputed claims were properly coded but INA is not seeking summary judgment on them at this time.

16

> B.  The bodily injuries or property damage in the EMCOR claims listed in Exhibit "A" and Exhibit 'B" did not "arise out of" EMCOR's work because there was no element of proximate causation, as required under New York law.

In New York, coverage under a completed-operations provision requires a proximate cause relationship between the bodily injury or property damage and the insured's work or product. As discussed in Point III D herein, the application of the New York rule will result in a finding that the claims listed in Exhibit "A" and Exhibit "B" are general liability claims.

New York courts have not explicitly construed the meaning of "arising out of" contained in the definition of "products-completed operations hazards" as used in the policies issued to EMCOR. The courts, however, interpret the phrase "arising out of" as that term is used in automobile insurance policies and in various other policies, both with respect to policy provisions granting coverage and in exclusions.[8]

Among the cases dealing with insurance policy clauses using the "arising out of" terminology, New York courts have held that an injury does not "arise out of" a specified set of conditions unless it is proximately caused by those conditions. *Kimmins Indus. Serv. Corp. v. Reliance Insurance Co.*, 19 F.3d 78 (2d Cir. 1994); *Empire Insurance Co. v. Schliessman*, 306 A.D. 512, 763 N.Y.S.2d 65 (2d Dept. 2003); *Family Farm Casulty Insur. Co. v. Trapani*, 301 A.D.2d 740, 753 N.Y.S.2d 198 (3d Dept. 2003); *Lumbermen's*

---

[8] The phrase "arising out of" should be given the same meaning when analyzing whether the claim is covered under the definition of completed operations in the coverage section of the policy or excluded under the completed operations exclusion. *United Services Automobile Association v. Aetna Casualty & Surety Co.*, 7 A.D.2d 1022, 429 N.Y.S.2d 508, 510 (4th Dept. 1980) (holding that "there is no reason to construe the phrase 'arising out of' any differently for a homeowners' policy exclusion than for an auto carrier's coverage clause"). To construe the identical phrase "arising out of" differently between policies granting coverage or excluding coverage could lead to an inconsistent result regarding coverage. *Id.*

17

*Mutual Casualty Co. v. Logan*, 88 A.D.2d 971, 451 N.Y.S.2d 804 (2d Dept. 1982); *United Services Automobile Association v. Aetna Casualty & Surety Co.*, 75 A.D.2d 1022, 429 N.Y.S.2d 508 (4th Dept. 1980).

Although the issue before this Court relates to policy coverage rather than to an exclusion provision, the *Kimmins* construction of the expression "arising out of" is applicable to this case. In *Kimmins Industrial Service Corp. v. Reliance Insurance Co.*, the Second Circuit held that anything less than a causal relationship between the condition and the injury "would be a relaxation of New York's interpretation of 'arising out of' as requiring a relationship tantamount to proximate cause." *Kimmons Indus. Serv. Corp. v. Reliance Insurance Co.*, 19 F.3d 78 at 83 (the injuries could not have "arisen out of" the removal of the substance because the injuries were not caused by asbestos, nor related to the intrinsic nature of asbestos, nor proximately caused by the removal of asbestos).[9]

Similarly, in *Lumbermen's Mutual Casualty Co. v. Logan*, 88 A.D.2d at 971, 451 N.Y.S.2d at 805, the Second Department considered a policy that obligated the insurer to defend and indemnify an insured with respect to accidents resulting in bodily injury caused by an "occurrence and arising out of the ownership, maintenance or use . . . of an owned automobile." The Second Department held that a fall in an icy parking lot was not

---

[9] The Court in *Kimmins* analyzed several other cases in New York dealing with the "arising out of" clause. *Kimmins* noted that while most courts did not express their rulings in terms of proximate cause, in actuality the decisions were based on a proximate cause analysis. *Kimmins Industrial Service Corp. v. Reliance Insurance Co.*, 19 F.3d 78, 82 (2d Cir. 1994); *See Aetna Casualty & Surety Co. v. Liberty Mutual Insurance Co.*, 91 A.D.2d 317, 319, 459 N.Y.S.2d 158, 16 (4th Dept. 1983) (holding that the damage arose out of the use and loading of the truck where the evidence showed at trial that the overloading apparently caused friction between the wheels and the wheel wells which created heat causing the blasting caps to detonate and the dynamite to explode); *See Farm Family Cas. Ins. Co. v. Trapani*, 753 N.Y.S.2d 198, 200 (3d Dept. 2003), where the Court based its analysis of the "arising out of" phrase on proximate causation (holding in supplemental underinsured motorist context where insurance contract provides coverage for injuries arising

covered because the injury "neither arose from the intrinsic nature of the motor vehicle, as such, nor did the vehicle itself, produce the injury." The *Lumbermen's* Court ruled that the use of the motor vehicle must be the proximate cause of the injury in the underlying action to come within the ambit of the "use or operation" clause. *Id.* citing *United Services Automoble Assoc. v. Aetna Casulty & Surety*, 75 A.D.2d 1022, 429 N.Y.S.2d 508 (4th Dept. 1980).

In *United Services Automobile Association v. Aetna Casualty & Surety Co.*, 75 A.D.2d 1022, 429 N.Y.S.2d 508, 510 (4th Dept. 1980), the Fourth Department held that the assault of the plaintiff while riding as a passenger does not bring the claim within coverage because the use of the motor vehicle was not the proximate cause of the injury, as the occurrence did not arise out of its use or operation. *Id.*

When the facts fail to show proximate cause, the courts have held the "arising out of" clause inapplicable even though they did not express it in those terms. *See Kimmins*, 19 F.3d at 82; *Empire Insurance Co. v. Schliessman*, 306 A.D.2d 512, 763 N.Y.S.2d 65 (2d Dept. 2003) (holding that there was no duty to defend or indemnify where the truck was merely at the location of the accident and there were no allegations that the truck was used negligently or that its condition contributed to the accident); *New York Central Mutual Fire Ins. v. Hayden*, 209 A.D.2d 927, 619 N.Y.S.2d 910 (4th Dept. 1994) (holding that the accident did not arise out of the vehicle where a passenger exited the stalled truck on a railroad track, and subsequently, fell through a hole in a tressle). *Wassau Underwriters Insurance Co. v. St. Barnabas*, 145 A.D. 314, 534 N.Y.S. 982 (1st Dept. 1988) (holding that the insurer was not obligated to defend or indemnify a claim based on

---

out of ownership, maintenance, or use of vehicle, ownership, maintenance, or use must be "proximate cause" of alleged injuries).

an accident that did not arise from the use or operation of the insured's vehicle; the accident occurred inside the doors of the hospital and the use of the insured's vehicle was in no way involved in causing the passenger's injuries).

    **C.    Similarly, the bodily injuries or property damage in the EMCOR claims listed in Exhibit "A" and Exhibit "B" did not "arise out of" EMCOR's work because there was no element of causation, as required under Connecticut law.**

Even if Connecticut law applies, the claims listed in Exhibit "A" and Exhibit 'B" are still general liability claims.

Connecticut courts interpret the phrase "arising out of" as requiring a causal connection. *Coregis Ins. Co. American Health Foundation*, 251 F.3d 123 (2d Cir. 2001); *Covenant Insur. Co. v. Sloat*, 2003 Conn. Super. LEXIS 1557 (Conn. Super. Ct. 2003).[10] It is well established in Connecticut and "generally understood that for liability for an accident or an injury to be said to 'arise out of' the 'use' of an automobile for the purpose of determining coverage under the appropriate provisions of a liability insurance policy, it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of the automobile, in order to meet the requirement that there be a causal relationship between the accident or injury and the use of the automobile." *Hogle v. Hogle*, 167 Conn. 572, 356 A.2d 172 (Conn. 1975); *Holy Trinity Church of God in Christ. v. Aetna Casualty and Surety Co.*, 214 Conn. 216, 571 A.2d 107 (1990) (finding that the phrase "arising out of" in a policy

---

[10] Connecticut courts are consistent with other jurisdictions in requiring a causal relationship in construing the term "arising out of" in an insurance contract. See *Brazas Sporting Arms, Inc., v. American Empire Surplus Lines Insur. Co.*, 220 F.3d 1 (1st Cir. 2000) (applying Massachusetts law and finding that in a products completed operation exclusion the term "arising out of" falls somewhere between proximate and "but for" causation, an intermediate standard); *Beretta U.S.A. Corp., v. The Federal Insur. Co.*, 17 Fed.

exclusion was unambiguous and "signifies that a causal relationship between the injury and the excluded activity, as defined therein, removes the injury from the ambit of the policy's coverage"); *United Services Automobile Assoc. v. Kaschel*, 84 Conn. App. 139, 851 A.2d 1257 (2004) (citing *Hogle* and applying the same analysis of "arising out of" to an analysis an exclusionary clause in a homeowner's insurance policy); *Covenant Insur. Co. v. Sloat*, 2003 Conn. Super. LEXIS 1557 (Conn. Super. Ct. 2003).[11]

In *United Services Automobile Assoc. v. Kaschel*, 84 Conn. App. 139, 851 A.2d 1257 (2004), the Court analyzed an exclusionary clause in a homeowner's insurance policy. The Appellate Court held that any injuries that the injured parties allegedly sustained as a result of the insured's failure to render aid to him arose out of the insured's use of his motor vehicle. The motor vehicle accident was the operative event giving rise to the injuries, and therefore, those injuries were "connected with," "had their origins in," "grew out of," "flowed from," or were "incident to" the use of the vehicle. The Court distinguished its ruling in this case from a different factual situation where the injuries could have resulted *solely* from an independent act of failing to render aid.

In *American Medical Response v. New Hampshire Insur.*, 1997 Conn. Super. LEXIS 704 (Super. Ct. 1997), the Court determined there was no causation. The undisputed facts established that the emergency service personnel dropped the stretcher on which they were carrying the injured victim while they were still in his apartment. *Id.*

---

Appx. 250 (4th Cir. 2001) (determining that under Maryland law, the term "arising out of" implies "but for" causation in a products completed operations exclusion)

[11] In *Essex Ins. Co. v. Newton Agri-Systems, Inc.*, 832 F. Supp. 1565 (S.D. Georgia 1993), the District Court applied a causal analysis and held that the insured's claims were not included within completed operations coverage because they did not "arise out of" the insured's operations. Although it was held that the work performed by the insured (delivering corn) was an "operation" within the policy, the Court ultimately held that the insured's claims arose from alleged defects in the corn delivered, not from some act of the insured during delivery. Completed operations coverage was not triggered.

The Court held that the plaintiff failed to show some causal connection between the use of the ambulance and the injury. *Id.* The incident was too attenuated in time and space to permit the court to conclude as a matter of law that it arose out of the use of an automobile. *Id.*

Under the broadest causation analysis, the claims at issue in this case <u>do not</u> have injuries that were in any sense "connected with," "grew out of" "flowed from" or were "incident to" the insured's work or product.

> D. **The claims listed in Exhibit "A" and Exhibit "B" are general liability claims because the underlying injuries were so far attenuated from, or had nothing to do with, EMCOR's work.**

Whether New York or Connecticut law applies, common logic demonstrates that a claim does not fall within the policy definition of a "products-completed operations hazard" if EMCOR never performed work at the site of the accident: how can an injury "arise out of" "Your work" if the insured never worked at the site of the accident? The answer, of course, is that this type of claim cannot meet the policy definition of a "product-completed operations hazard". Furthermore, as the law in New York and Connecticut require, a claim cannot be a completed operations claims where there is evidence that there is no causal relationship between the bodily injury or property damage and EMCOR's work.

For the convenience of this Court, INA has compiled three summary charts listing those cases that the evidence demonstrates that:

> Exhibit "A": EMCOR was never at the site of the accident.
>
> Exhibit "B": Although EMCOR performed work on the site, the evidence demonstrates that there was no causal relationship between the work and the accident.

22

Exhibit "C": The evidence demonstrates that the EMCOR work was ongoing at the time of the accident.

As can be observed, the evidence, in the form of admissions by EMCOR or its counsel, during the underlying cases, is clear for each of the claims listed in the charts that EMCOR was never at the site, the bodily injury or property damage did not arise out of EMCOR's work or that the work was ongoing at the time of the injury. As to these claims, there is no genuine issue of material fact that the claims are anything but properly classified as general liability claims.

## POINT IV

## THE COURT SHOULD GRANT INA'S PARTIAL MOTION FOR SUMMARY JUDGMENT WHERE THE FACTS SHOW THAT THE INSURED'S WORK WAS ON-GOING

Exhibit "C" lists the claims wherein the evidence shows that the insured's work was on going and not yet complete at the time of the accident giving rise to the bodily injury or property damage. As conceded by EMCOR's expert, any claim in which the bodily injury or property damage occurred while EMCOR's work was ongoing, is properly classified as a general liability claim. Since there can be no issue of material fact that the accident occurred during EMCOR's ongoing work for these claims, this Court should rule that the claims were properly classified as general liability claims.

23

## POINT V

### THE COURT SHOULD GRANT INA'S PARTIAL MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS LISTED IN EXHIBIT "A" BECAUSE THE WORK, HAVING NOT BEEN BEGUN, COULD NOT HAVE BEEN COMPLETED BY THE TIME OF THE ACCIDENT

The claims listed in Exhibit "A" are not completed operations claims for yet another reason: in each claim, EMCOR never worked at the site of the accident. Plain common sense dictates that work cannot be deemed to have been completed if the work was never begun in the first place.

In *Lumberman's Mutual Casualty Co. v. Town of Pound Ridge*, 362 F.2d 430 (2d Cir. 1966), the Second Circuit considered whether the exclusion for products hazard precluded coverage for a claim in which a municipality had negligently removed snow and ice from a road. The Second Circuit recognized the common sense approach articulated by INA:

> The complaints in the state actions alleged failure to sand, as well as negligent removal of snow. It is at least arguable that sanding was a separate operation from snow removal, and that *the sanding operation, having not begun, cannot be described as 'completed.'*

Id. at 433 & n. 1 (1966).

Accordingly, the claims listed in Exhibit "A" are general liability clams for this additional reason.

## POINT VI

## EMCOR IS JUDICIALLY ESTOPPED FROM ASSERTING THAT THE CLAIMS SUBMITTED FOR COVERAGE UNDER THE 1993-1994 AND THE 1994-1995 POLICIES ARE COMPLETED OPERATIONS

The doctrine of judicial estoppel prevents a party from advancing contradictory factual positions in separate legal proceedings. See *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Industries*, 84 F.3d 622, 628 (2d Cir. 1996); *Bates v. Long Island Railroad Co.*, 997 F.2d 1028, 1037 (2d Cir.), cert. denied, 510 U.S. 992, 126 L. Ed. 2d 452, 114 S. Ct. 550 (1993). The doctrine is designed "to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions," and "to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings. *Bates*, 997 F.2d at 1038. In order to invoke judicial estoppel, a party must establish that the party against whom judicial estoppel is being asserted must have argued an inconsistent factual position in a prior proceeding and that the court in the prior proceeding must have adopted the prior inconsistent position in some manner. See *AXA Marine*, 84 F.3d at 628; *Bates*, 997 F.2d at 1038 & n.4. The Court of Appeals has also found that the party against whom the estoppel is claimed must actually have obtained a judgment as a result of the inconsistent position. See *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109, 114 (2d Cir. 1990).

During the time period beginning in late 1997 and continuing to this day, EMCOR asserts that a number of claims submitted for coverage under each of the three policies had been improperly classified as general liability claims and thus the general aggregate limits were not exhausted. Yet, beginning in 1997 through at least 2001, EMCOR, through its subsidiaries, was a party in litigation pending in New York where

25

the same issues were litigated. In each of these cases, the Court was confronted with the question whether the general aggregate policy limit was exhausted in the 1993-1994 or the 1994-1995 policy. In each case, INA asserted that the policies were exhausted, relying on either submitted loss runs or affidavits. In *The Port Authority of New York and New Jersey et al v. Insurance Company of North America et. al.*,), the EMCOR subsidiary itself affirmatively argued that the general aggregate policy limit of the 1994-1995 policy as exhausted. EMCOR submitted the affidavit of Ms. Reinhard herself wherein she admitted that the policy was exhausted. Ms. Reinhard submitted affidavits in both *Lehrer McGovern Bovis et. al. v. Forest Electric, Inc.* (involving the 1994-1995 policy) and in *HRH Construction Corp., et. al. v. Forest Electric et. al.* (involving the 1993-1994 policy) where she did not contest INA's position that the general aggregate limits were exhausted. Yet, Ms. Reinhard, at the same time, spearheaded EMCOR's effort to have claims in the 1993-1994 and the 1994-1995 policy years reclassified as completed operations claims and asserted that the general aggregate limits had not been exhausted. Ms. Reinhard never informed the New York courts that she held an opinion contrary to what she, under oath, told the New York courts. In fact, EMCOR in all the cases involving the aggregate general liability limits in the 1993-1994 and the 1994-1995 policies never contested INA's position that the general aggregate policy limits of the 1993-1994 and the 1994-1995 policies were exhausted.

Each case involved a factual determination inherent in the argument that the general aggregate policy limits were exhausted: whether the claims that were classified as general liability claims, the payments for which thereby impaired the aggregate limits, were properly classified as general liability claims. In each case, spanning a period from

1998 to 2001, EMCOR never asserted that any of the claims that were coded as general liability claims for each of the two policies were improperly classified. Thus, in effect, EMCOR agreed with the classification of these claims.

At the same time as the motions were submitted to the New York courts, EMCOR believed that a number of claims, including those in the 1993-1994 and 1994-1995 policies that it admitted in the New York litigation were general liability claims, were completed operations claims. The very EMCOR employee, Susan Reinhard, who had sworn under oath to a New York court that the 1994-1995 general aggregate policy limit as exhausted, at the same time told INA, ESIS and EMCOR's broker that certain of the claims had been miscoded (and as a result the general aggregate policy limits were not exhausted). Moreover, the very counsel who was involved in promoting EMCOR's position that certain claims had been miscoded as general liability claims (Dickstein Shapiro Morin & Oshinsky LLP) and EMCOR's defense counsel, who was asked to help in EMCOR's investigation in determining if certain claims had been miscoded (London Fisher), represented EMCOR's subsidiaries in the New York litigation.

EMCOR's counsel vehemently attacked the plaintiff's position in opposing EMCOR's position that the general aggregate limit of the 1994-1995 policy as exhausted in *Port Authority v. INA*, stating: "Indeed, what is worse is the fact that Plaintiffs counsel is well aware of the fact that the policy is exhausted yet is taking a position it knows to be contrary to fact...It is respectfully submitted that the position taken by counsel for the plaintiffs that the policy is not exhausted ... is one taken with the knowledge that it is contrary to fact." The very same argument offered by EMCOR in *Port Authority v. INA* applies to EMCOR's position in the case at bar. EMCOR had the loss reports for all three

27

policies beginning at least in November 1997. The loss reports contained the information necessary to make an argument in the New York litigation that the general aggregate limits in the 1993-1994 and 1994-1995 policies were not exhausted using the same argument it proffers in this litigation: Certain claims were wrongly coded as general liability claims and the general aggregate limits were not exhausted. EMCOR failed to do so. Having failed to take this position in motions involving the exact same issue during prior litigation, EMCOR should now be estopped from doing so in the case at bar. Accordingly, this Court should find, for this reason alone, that all claims listed in Exhibit "A" to the Third Amended Complaint for the 1993-1994 and the 1994-1995 policy year were properly classified as general liability claims

**WHEREFORE,** for the reasons and authorities discussed herein defendant Insurance Company of North America respectfully requests that this Court grant its motion for partial summary judgment.

Dated:     November 15, 2004
           White Plains, New York

                              Respectfully Submitted,

           **WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

                              By: _____
                              Thomas A. Leghorn (CT #22106)
                              Richard S. Oelsner (on the brief)
                              Carmen Chapman (on the brief)
                              Attorneys for Defendant
                              INSURANCE COMPANY OF NORTH
                              AMERICA
                              3 Gannett Drive
                              White Plains, New York 10604
                              (914) 323-7000
                              Fax (914) 323-7001
                              File No.: 00756.35967

806524.3

>Joseph B. Burns
>Co-Counsel
>Rome McGuigan Sabanosh, P.C.
>One State Street
>Hartford, Connecticut 06103
>(860) 549-1000
>Fax (860) 724-3921