IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------------- x

EMCOR GROUP, INC., : Civil Action No.
   Docket 3:00-CV-2211 (AVC)
          Plaintiff, :
   Judge Alfred V. Covello
vs. :

INSURANCE COMPANY OF NORTH AMERICA. :
   November 15, 2004
          Defendant. :

------------------------------------------------------------------- x

## INSURANCE COMPANY OF NORTH AMERICA'S LOCAL RULE 56 (a)(1) STATEMENT

Pursuant to the proposed L. Civ. R. 56 defendant INA, for purposes of its summary judgment motion, contends that there is no genuine issue to be tried as to the following material facts.

1. Insurance Company of North America ("INA") issued a general liability policy to the named insured JWP, Inc., Policy No. HDO G1 403379-8 for the policy period October 1, 1992- October 1, 1993 (the 1992-1993 policy). Exhibit "3".

2. INA issued a general liability policy to the named insured JWP, Inc., Policy No. HDO G1 658518 for the policy period October 1, 1993-October 1, 1994 (the 1993-1994 policy). Exhibit "4".

3. INA issued a general liability policy to the named insured JWP, Inc., Policy No. HDO G1 658789-8 for the policy period October 1, 1994-October 1, 1995 (the 1994-1995 policy). Exhibit "5".

4. By endorsement effective December 15, 1994, the named insured for the 1994-95 policy was amended to read EMCOR GROUP, INC. Exhibit "5" Bates No. 00276.

5. At the time that each policy was issued JWP, Inc. was located in Rye Brook, New York, as shown on the declarations page on each policy. Exhibit "3", Bates No. 00079; Exhibit "4", Bates No.000153; Exhibit "5", Bates No. 00220.

6. Each policy contained a $2,000,000 general aggregate limit (other than Products/Completed Operations). Exhibit "3", Bates No. 00082; Exhibit "5", Bates No.000154; Exhibit "5", Bates No. 00224.

7. Each policy contained a $3,000,000 Products/Completed Operations Aggregate Limit. Exhibit "3", Bates No. 00082; Exhibit "4", Bates No.000154; Exhibit "5", Bates No. 00224.

8. Each policy had a deductible of $500,000 per occurrence. Exhibit "3"-Bates No. 00141; Exhibit "4", Bates No.000207; Exhibit "5", Bates No. 00265.

9. Each policy contained a Deductible Endorsement that provided in part "you agree with Us that <u>We</u> shall not have any duty to defend any such "suit". Exhibit "3", Bates No. 00141 (Para. 2); Exhibit "4", Bates No.000208 (Para. 2); Exhibit "5", Bates No. 00265, (Para. 2).

10. The Deductible Endorsement of each policy provided that INA had the right at its sole discretion to pay any amount within the deductible to settle any claim or suit. Exhibit "3", Bates No. 00142 (Para. 4b); Exhibit "4", Bates No.000209 (Para. 4b); Exhibit "5", Bates No. 00266, (Para. 4b).

11. Revised Endorsement No. 33 to the 1992-1993 policy provided that all allocated claims expense will be borne by JWP, Inc. Exhibit "3", Bates No. 00143). In other words, allocated claims expenses did not contribute towards the exhaustion of the general liability aggregate limits.

12. Endorsement No. 33 to the 1993-94 policy provided that all allocated claims expenses will be borne by the Named Insured and will contribute towards the exhaustion of the General Aggregate. Exhibit "4", Bates No. 000211.

13. Endorsement No. 33 to the 1994-95 policy provided that all allocated claims expenses will be borne by the Named Insured and will contribute towards the exhaustion of the General Aggregate. Exhibit "5".

14. Each policy defines the term "Products-completed operations hazard".

> "Products-completed operations hazard" includes: all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned. Exhibit "3", Bates No. 0095 (Definition 11.a); Exhibit "4", Bates No.000171 (Definition 11.a); Exhibit "5", Bates No. 00236 (Definition 14.a).

15. Each policy defines when "Your work" is deemed completed:

> "Your work' will be deemed completed at the earliest of the following times: (1) When all of the work called for in your contract has been

2

804957.1

completed. (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site. (3) When that part of the work at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. Exhibit "3", Bates No. 0095-96 (Definition 11.b); Exhibit "4", Bates No.000171-172 (Definition 11.b); Exhibit "5", Bates No. 00236-237, (Definition 14.b).

16. Each policy defines "Your work":

    "Your work" means: a. Work or operations performed by you or on your behalf; and b. Materials, parts or equipment furnished in connection with such work or operations. "Your work" includes: a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work" and b. The providing or failure to provide warnings or instructions. Exhibit "3", Bates No. 00096 (Definition 15); Exhibit "4", Bates No.000172 (Definition 15); Exhibit "5", Bates No. 00237, (Definition 19).

17. The General Aggregate Limits for the 1992-1993 policy exhausted on June 9, 1998. Exhibit "6", Bates No. 028670, Walton E-mail to Virginia Lloyd dated June 22, 1998.

18. The General Aggregate Limits for the 1993-1994 policy exhausted on November 3, 1997. Exhibit "7", Bates No. 028679, Lloyd e-mail to DeAna Sheally dated November 4, 1997.

19. The General Aggregate Limits for the 1994-1995 policy exhausted on October 28, 1998. Exhibit "8", Bates No. ES11491, Walton e-mail to Charles Anspach dated October 28, 1998.

20. Susan Reinhard is the claims manager for EMCOR Inc. and has occupied that position since February 1995. Her responsibilities included the administration of the EMCOR insurance policies and the management of the claims under those policies. Exhibit "9", Reinhard affidavit, dated August 21, 2000.

21. In her affidavit filed with the Court on May 8, 2001, Ms. Reinhard informed the Supreme Court for the State of New York, County of New York in the matter of *The Port Authority of New York and New Jersey et al v. Insurance Company of North America et. al.* that the INA general aggregate limits for the 1994-95 policy was exhausted. Exhibit "9", ¶ 12, Reinhard affidavit. Ms. Reinhard did not assert that the claims whose costs led to the exhaustion of this policy were wrongly classified as general liability claims.

22. EMCOR, through its subsidiary that was a named defendant moved to dismiss in *The Port Authority of New York and New Jersey et al v. Insurance Company of North America et. al.*, on May 8, 2001. EMCOR argued that the INA general aggregate limits for the 1994-95 policy became exhausted no earlier than December 1, 1998. Exhibit "10", notice of cross motion, affidavit and reply of John Sparling of London Fischer in support.

23. EMCOR's counsel in *The Port Authority of New York and New Jersey et al v. Insurance Company of North America et. al.* referred to testimony in a separate proceeding about the exhaustion of the general aggregate limits in the 1994-1995 policy and a claims loss run that the policy limits had become exhausted. He argued that "it is respectfully submitted that the position taken by Plaintiffs that the policy is not exhausted in its reply and opposition papers is one taken with the knowledge that it is contrary to fact." Counsel also asserted that "Plaintiffs have the "loss run" served by INA on all parties which supports PENGUIN's [a subsidiary of EMCOR] claim that the INA policy was exhausted." Exhibit "10", Sparling reply affidavit, ¶¶ 14, 15, 21.

24. INA and the EMCOR subsidiary moved for summary judgment in 2000 in *Lehrer McGovern Bovis et. al. v. Forest Electric, Inc. et. al.* INA argued that the general aggregate limits for the 1994-1995 policy were exhausted and offered the affidavit of Carol Ann Myrtetus in support. Exhibit "11", Murphy reply affirmation and INA reply memorandum of law.

25. EMCOR, through its subsidiary, did not oppose INA's motion. Exhibit "12", Sparling affidavit.

26. The Court found that INA's evidence of the policy's exhaustion is uncontroverted. Exhibit "13", Decision, Order and Judgment filed September 13, 2000.

27. In support of its motion, the EMCOR subsidiary offered the affidavit of Susan Reinhard dated April 1, 1999 originally submitted in the matter of *HRH Construction Corp., et. al. v. Forest Electric et. al.* Exhibit "14". Ms. Reinhard did not assert that the claims whose costs led to the exhaustion of this policy were wrongly classified as general liability claims.

28. INA and the EMCOR subsidiary moved for summary judgment in 1999 in *HRH Construction Corp., et. al. v. Forest Electric et. al.* INA argued that the general aggregate limits for the 1993-1994 policy were exhausted and offered the affidavit of Virginia Lloyd. Exhibit "15", order to show cause, Lloyd affidavit and INA memorandum of law.

29. EMCOR, through its subsidiary, did not oppose INA's motion. Exhibit "16", Mirro affidavit, Forest Electric memorandum of law.

30. The law firm of Dickstein Shapiro Morin & Oshinsky LLP represented the EMCOR subsidiary in *HRH Construction Corp., et. al. v. Forest Electric et. al.* Exhibit "17", Order filed April 5, 1999.

31. The Court found that the material submitted on the motion to dismiss and the motion for summary judgment by both Forest Electric and INA reflects that the INA policy coverage was exhausted. Exhibit "17", Order filed April 5, 1999.

32. In support of its motion, the EMCOR subsidiary offered the affidavit of Susan Reinhard dated April 1, 1999. Exhibit "14". Ms. Reinhard did not assert that the claims whose costs led to the exhaustion of this policy were wrongly classified as general liability claims.

33. INA and the EMCOR subsidiary moved for summary judgment in 1998 in *Structure Tone, Inc. v. JMP Forest Electric, et. al.* INA argued that the general aggregate limits for the 1993-1994 policy were exhausted and offered the affidavit of Carol Myrtetus. Exhibit "18", order to show cause, Myrtetus affidavit and INA memorandum of law.

34. EMCOR, through its subsidiary, did not oppose INA's motion. Exhibit "19", Bernstein affidavit.

35. The Court found that there is apparently no dispute that the INA policy has been exhausted based on various other claims that were made under the coverage provided by the policy. Exhibit "20", Order filed April 3, 1998.

36. By November 26, 1997, Ms. Reinhard on behalf of EMCOR opined that some claims submitted for coverage under 1993-1994 policy were improperly coded as general liability claims and improperly reduced the general aggregate limits. She directed EMCOR's broker, Doug Willis to continue reviewing the remainder of the claims. Exhibit "21", Bates No. 041754, Reinhard fax to Doug Willis dated November 26, 1997.

37. By March 13, 1998, Ms. Reinhard opined that some claims submitted for coverage under 1992-1993 policy were improperly coded as general liability claims and improperly reduced the general aggregate limits. Exhibit "22", Bates No. ES11278, Reinhard letter to Ann Marie Marson dated March 13, 1998.

38. By September 13, 2000, EMCOR opined that some claims submitted for coverage under 1994-1995 policy were improperly coded as general liability claims and improperly reduced the general aggregate limits. Exhibit "23", Howley letter to Jackie Montefusco dated September 13, 2000, copied to Susan Reinhard. EMCOR began reviewing claims submitted for coverage under the 1994-1995 policy no later than March 21, 2000. Exhibit "24", Bates No. 0000302, Willis letter to London dated March 21, 2000.

804957.1

39. EMCOR's counsel, London Fischer was told in 1998 and then again in 2000 that EMCOR believed that some claims should have been classified as products-completed operations claims. Exhibit "25", Bates No. 0000219; Willis letter to London dated March 13, 1998. London Fisher was aware of the dispute on the coding of the claims prior to May 1999. Exhibit "32", deposition of Doug Willis dated October 23, 2003 at p.73.

40. The law firm of Dickstein Shapiro Morin & Oshinsky LLP was retained by EMCOR between November 1997 and January 1998 with respect to the coding issues. Exhibit "26", Reinhard deposition dated June 3, 2004 at p. 169.

41. In 1998 the law firm of Dickstein Shapiro Morin & Oshinsky LLP had advised EMCOR about its opinion that certain claims should have be classified as completed operations. Exhibit "27", Dickstein letter to Susan Reinhard dated November 2, 1998.

42. At the time of the decision on the motions for summary judgment in *HRH Construction Corp., et. al. v. Forest Electric et. al.* in 1999, EMCOR's counsel, Dickstein Shapiro Morin & Oshinsky LLP, knew about the opinion of EMCOR's broker, Marsh, that some claims had been improperly coded. Exhibit "26", Reinhard deposition dated June 3, 2004 at pp.173-174.

43. JWP, Inc. entered into a written agreement with ESIS for ESIS to act as the third party administrator for JWP, Inc. Exhibit "28", Claims Service Agreement # 2806.

44. Claims submitted for coverage under the 1992-93, 1993-94 and 1994-95 policies were to be submitted to ESIS by EMCOR. Exhibit "28", Claims Service Agreement # 2806, Article IV A.

45. ESIS was to maintain a file for each submitted claim. Exhibit "28", Claims Service Agreement # 2806, Article III E; Exhibit "29", deposition of Jacqueline Montefusco pp. 63-65, 72.

46. ESIS investigated, adjusted and otherwise administered the claims against EMCOR. Exhibit "28", Claims Service Agreement # 2806, Article III A.

47. For each file it opened, the ESIS claims adjuster would assign a "code" to the claim that designated the claim as either a general liability claim or a completed operations claim. Exhibit "30" deposition Ann Marie Marson at pp.73, 88; Exhibit "29", deposition of Jacqueline Montefusco pp.101-105.

48. The codes assigned by ESIS to the claim that designated the claim as either a general liability claim or a completed operations claim was indicated in the hard copy of the file and in an electronic data base known as OMNI. Exhibit "29", deposition of Jacqueline Montefusco pp.101-103; Exhibit "31", sample file from document production by non-party ESIS.

804957.1

49. The information about a claim maintained in OMNI was available to EMCOR. Exhibit "30", deposition of Ann Marie Marson at pp.117, 196; Exhibit "28", Claims Service Agreement # 2806, Article V.A.

50. EMCOR conducted multiple reviews of the claim files maintained by ESIS. Exhibit "29", deposition of Jacqueline Montefusco p. 24. Ms. Montefusco is familiar with the EMCOR account since she oversaw the files handled by her team. Exhibit "29", deposition of Jacqueline Montefusco pp. 24, 31.

51. EMCOR reviewed ESIS files. Exhibit "30", deposition of Ann Marie Marson at p.196.

52. ESIS was reviewed "ten different ways by EMCOR. ESIS did not breathe without going past EMCOR on everything. ESIS knew that Susan Reinhard was looking at everything that ESIS was doing." Exhibit "29", deposition of Ann Marie Marson at p.196.

53. EMCOR, through its broker, Willis, had loss runs for the 1992-93 and 1993-94 policy years showing claims that were coded as general liability. Exhibit "29", deposition testimony of Ann Marie Marson at p.290.

54. In reviewing the claims to determine if the claims were properly classified as general liability claims, Marsh (EMCOR's broker), on behalf of EMCOR looked at the complaint if there was a lawsuit, and the facts of the claim. Exhibit "32", deposition of Doug Willis dated October 23, 2003 at pp.53-54.

55. There were "hundreds and hundreds of claims" submitted by EMCOR for coverage under the 1992-1993, 1993-1994 and 1994-1995 policies. Exhibit "32", deposition of Doug Willis dated October 23, 2003 at pp.59-60.

56. A vendor, possibly GAB, produced loss runs. The loss runs contained the claimant's name, date of loss, a brief description, financials and whether a particular claim had been classified as a general liability or completed operations claim. Exhibit "32", deposition of Doug Willis dated October 23, 2003 at pp.60-61, 63-64.

57. EMCOR regularly received the loss runs. Exhibit "28", deposition of Doug Willis dated October 23, 2003 at p.64. Doug Willis had the loss runs by November 1997. Exhibit "32", deposition of Doug Willis dated October 23, 2003 at p.61.

58. EMCOR submitted an expert report of William Stewart in this action. Exhibit "33", Stewart report.

59. INA submitted an expert report of Al Bodi in this action. Exhibit "34", Bodi report.

60. There is clear evidence that bodily injury or property damage involved in claims listed on Exhibit "A" did not arise out of EMCOR's work because EMCOR was never at the site of the accident or EMCOR's work was at a remote location. EMCOR's work was not completed for those claims that EMCOR was never at the site because work cannot be deemed completed if the work was never begun. Exhibit "A".

61. The bodily injury or property damage in the claims listed in Exhibit "A" did not arise out of EMCOR's work and were properly coded as general liability claims and payments made on those claims properly were properly applied to the general aggregate limits.

62. Exhibit "B" lists the claims for which there is clear evidence that there was no causal relationship between EMCOR's work and the bodily injury or property damage.

63. The bodily injury or property damage in the claims listed in Exhibit "B" did not arise out of EMCOR's work and were properly coded as general liability claims and payments made on those claims properly were properly applied to the general aggregate limits.

64. Exhibit "C" lists claims for which there is clear evidence that the bodily injury property damage incurred while EMCOR's work was on going. Exhibit "C".

65. The claims listed in Exhibit "C" were properly coded as general liability claims and payments made on those claims properly were properly applied to the general aggregate limits.

Dated: White Plains, New York
       November 15, 2004

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Thomas A. Leghorn (CT #22106)
*Attorneys for Defendant INSURANCE COMPANY OF NORTH AMERICA*
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000
File No: 00756.35967

Joseph Burns
Rome McGuigan Sabanosh, P.C.
One State Street
Hartford CT 06103-3101

8

804957.1

STATE OF NEW YORK )
:ss.:
COUNTY OF WESTCHESTER )

**Terrence James Cortelli**, being duly sworn, deposes and says: Deponent is not a party to the action, is over 18 years of age and resides in Westchester County.

On November 15, 2004, deponent served, the within **PARTIAL MOTION FOR SUMMARY JUDGMENT with SUPPORTING EXHIBITS, RULE 56(a)(1) STATEMENT, NOTICE OF MANUAL FILING AND MEMORANDUM OF LAW IN SUPPORT** upon the following attorneys in this action, at the addresses indicated below, which addresses have been designated by said attorneys for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

TO:

SAXE, DOERNBERGER & VITA, PC
1952 Whitney Avenue
Hamden, Connecticut 06517
Attn: Jeffrey Vita, Esq.

_____
Terrence James Cortelli

Sworn to before me this
15th day of November, 2004

_____
Notary Public
DEBRA CUMMINGS
Notary Public, State of New York
No. 01CU5078272
Qualified in Westchester County
Commission Expires May 19, 2007

809362.1

STATE OF NEW YORK )
:ss.:
COUNTY OF WESTCHESTER )

**Terrence James Cortelli,** being duly sworn, deposes and says: Deponent is not a party to the action, is over 18 years of age and resides in Westchester County.

On November 15, 2004, deponent served, the within **PARTIAL MOTION FOR SUMMARY JUDGMENT with SUPPORTING EXHIBITS, RULE 56(a)(1) STATEMENT, NOTICE OF MANUAL FILING AND MEMORANDUM OF LAW IN SUPPORT** upon the following attorneys in this action, at the addresses indicated below, which addresses have been designated by said attorneys for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

TO:

SAXE, DOERNBERGER & VITA, PC
1952 Whitney Avenue
Hamden, Connecticut 06517
Attn: Jeffrey Vita, Esq.

Terrence James Cortelli

Sworn to before me this
15th day of November, 2004

Notary Public
DEBRA CUMMINGS
Notary Public, State of New York
No. 01CU5078272
Qualified in Westchester County
Commission Expires May 19, 2007

809362.1