IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------X

EMCOR GROUP, INC.                         :        Civil Action No.
                                                            Docket 3:00-CV-2211 (AVC)
                    Plaintiff,                  :
                                                            Judge Alfred V. Covello
v.                                                    :

INSURANCE COMPANY OF NORTH AMERICA :

                    Defendant.                :

-------------------------------------------------------X

**STATE OF CONNECTICUT**          )
                                                       )      **ss: Norwalk**
**COUNTY OF FAIRFIELD**              )


### AFFIDAVIT OF SUSAN J. REINHARD

Susan J. Reinhard, being first duly sworn, on oath deposes and says:

1.    I am over the age of eighteen and believe in the obligations of an oath.

2.    I am the Claims Director for the Plaintiff EMCOR Group, Inc. ("EMCOR") and in such position am responsible for the administration and handling of all claim risks presented to EMCOR through itself and its subsidiaries. In my position I administer and handle all insurance claims for EMCOR and its wholly owned indirect subsidiaries including, but not limited to, Welsbach Electric Corporation and Welsbach Electric Corp. of L.I. (collectively

"Welsbach"), Forest Electric Corp. ("Forest"), Penguin Air Conditioning Corp. ("Penguin"), JWP Maintenance & Service, Inc., and JWP Mechanical Services of New York, Inc.

 3. I make this affidavit based upon my personal knowledge and the books and records of EMCOR as well as the books and records of EMCOR's indirect subsidiaries referenced above.

 4. In the case known as the *Port Authority of New York and New Jersey, et al v. Insurance Company of North America, et al*, Index No. 122068/98 filed in the Supreme Court in the State of New York, County of New York ("Port Authority"):

 a. I submitted an affidavit on behalf of EMCOR Group, Inc. formerly known as JWP, Inc., regarding the issue of whether or not Penguin Maintenance and Services, Inc., a wholly owned and indirect subsidiary of EMCOR, procured the requisite insurance pursuant to a contract with Merrill Lynch & Co., Inc. (*See* Exhibit 1).

 b. In said affidavit I made the following statement:

> "the INA policy general aggregate limits became exhausted, but no earlier than December 1, 1998."
>
> (Exhibit 1, ¶ 12).

The INA policy referred to in my prior affidavit was INA policy number HDO-G1 658789-8 for the period October 1, 1994 through October 1, 1995, which is at issue in the present coverage action between EMCOR and INA.

c.    Prior to my submission of this affidavit, I was provided with information and documentation from INA wherein INA claimed that the general liability aggregate limits of the 1994 – 1995 INA policy were exhausted. The documentation consisted of a letter from INA stating that these particular general liability aggregate limits were exhausted (See Exhibit 2) as well as a loss run from INA showing the general liability aggregate exhaustion.

d.    I relied on the information provided to me by INA regarding the exhaustion of the general liability aggregate limits of this particular policy, and I submitted the affidavit because the statement at that time was true based on the information that had been provided to me by INA.

e.    INA utilized the information contained in the affidavit that I submitted to avoid liability in the Port Authority litigation.

f.    At the time I submitted the affidavit in the Port Authority action, I was actively investigating whether certain claims that had been classified by INA as general liability claims should have been classified as product-completed operations claims. INA also informed me that they were investigating my claims but had not yet concluded whether or not the classifications were incorrect, or whether any reclassifications would affect the exhaustion of the general liability aggregate limits of this particular policy.

g.    I did not indicate in the affidavit I submitted in the Port Authority action that I was currently disputing the classification of certain general liability claims because I did not have any information at that time as to whether or not a re-classification of claims would impact the exhaustion of the general liability

aggregate limits, and because the proper classification of claims was not an issue in the Port Authority litigation.

     5.    In the case known *HRH Construction Corp., et al v. Forest Electric Corp., et al*, Index number 98-104909/98 filed in the Supreme Court in the State of New York, County of New York ("*HRH*"):

     a.    I submitted an affidavit in support of Forest Electric's Motion for Summary Judgment (See Exhibit 3).

     b.    In said affidavit I attested to Forest Electric's procurement of insurance for the policy period of October 1, 1993 through October 1, 1994.

     c.    In said affidavit, I did not attest to whether or not the general liability aggregate limits of the applicable INA policy were exhausted because that was not an issue in this particular case. In addition, I had no reason to attest to whether the claims whose costs impaired the general liability aggregate limits for this particular policy were incorrectly classified, because that also was not an issue in this particular case.

     6.    In the case known as *Lehrer McGovern Bovis, et al v. Forest Electric, Inc., et al*, Index No. 106185/99 filed in the Supreme Court of the State of New York, County of New York ("*Lehrer McGovern*"):

     a.    INA's counsel, Michael P. Murphy filed an affidavit wherein he asserted that the relevant INA policy, no. HD0 G1658789-8 for the period October 1, 1994 – October 1, 1995 was completely exhausted (See Murphy Affid., Exhibit 4, ¶ 2). See also affidavit of Carol Ann Myrtetus, an INA liability specialist who also submitted an affidavit asserting that the general liability

aggregate limits for the same INA policy had been fully and completely exhausted by the payment of prior judgments, settlements and claim expenses. (See Myrtetus Affid., Exhibit 5, ¶ 7).

b.    I had no reason to contest INA's claim that the general liability aggregate limits for this policy were exhausted because I had already been provided with information from INA that showed the limits were exhausted.

c.    I did not state that the claims whose costs allegedly impaired the general aggregate limits were incorrectly classified because this was not an issue in the case and I had no information at that time that any re-classification of claims would impact the aggregate exhaustion.

7.    On or about June 22, 1998, I received correspondence from INA indicating that the general liability aggregate limits of the INA policy no. HDO-G1 403379-8 covering the period October 1, 1992 – October 1, 1993 were exhausted. (See Exhibit 6).

8.    On or about October 20, 1997, I received correspondence from INA indicating that the general liability aggregate limits of the INA policy no. HDO-G1 658518-A covering the period October 1, 1993 – October 1, 1994 were exhausted. (See Exhibit 7).

9.    On or about November 16, 1998, I received correspondence from INA indicating that the general liability aggregate limits of the INA policy no. HDO-G1 658789-8 covering the period October 1, 1994 – October 1, 1995 were exhausted. (See Exhibit 2).

10.    To this day, INA has not officially notified EMCOR or myself that any of the above referenced general liability aggregate limits are no longer exhausted, and consistent with this position, INA continues to invoice EMCOR for defense fees and costs and indemnity payments related to claims arising under the INA Policies.

11.    However, EMCOR recently became aware of INA's new assertion that the general liability aggregate limits of the 1993-94 and 1994-95 INA Policies are *no longer exhausted* through the recent deposition testimony of INA's 30(b)(6) witness Stephen Snyder on June 8, 2004 (See  Depo. of Stephen Snyder, Exhibit 8, pp. 96, 187-88).

12.    On a related issue, in its motion and supporting papers, INA maintains that ESIS, Inc. was responsible for the proper classification of EMCOR's claims.  ESIS, Inc. was EMCOR's third party administrator with respect to the INA Policies, and assisted in the handling and adjustment of claims.

13.    I requested ESIS and INA to reclassify the claims at issue in this litigation as completed operations claims but they have failed, neglected and/or refused to do so.

14.    Based on my dealings with both ESIS and INA throughout the duration of this dispute, ESIS, despite being EMCOR's agent, has always taken direction from or sought consent from INA.

15.    Finally, INA contends that each of the INA Policies contains a Deductible Endorsement (no. 32) that provides in part that "you agree with us that we shall not have any duty to defend any such 'suit'..." EMCOR did not consent to the inclusion of this language in any of the INA Policies, nor was EMCOR aware until much later that INA claimed that they had no duty to defend EMCOR in connection with the INA Policies.

Further affiant sayeth not.

Dated at Norwalk, Connecticut this 3rd day of December, 2004.

_____
Susan J. Reinhard

Subscribed and sworn to before me this 3rd day of December, 2004.

_____
Notary Public
My Commission Expires:

JOAN C. BURKE
*NOTARY PUBLIC*
MY COMMISSION EXPIRES SEP. 30, 2005

7

Exhibit

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------- x
THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, :
TRAVELERS PROPERTY CASUALTY, MERRILL LYNCH
PIERCE FENNER AND SMITH INCORPORATED and
MERRILL LYNCH & CO., INC.                            Index No.: 122068/98

         Plaintiffs,

                 AFFIDAVIT OF
                 SUSAN
-against-              REINHARD

INSURANCE COMPANY OF NORTH AMERICA, NATIONAL
UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA :
and PENGUIN MAINTENANCE AND SERVICES, INC. f/k/a
JWP MAINTENANCE & SERVICES, INC. a/k/a
JWP BROADWAY MAINTENANCE d/b/a
JWP PENGUIN ELECTRIC CORP.

         Defendants.
-------------------------------------------------------------- x

STATE OF CONNECTICUT)
          ): ss.:
COUNTY OF FAIRFIELD  )

    SUSAN REINHARD, being duly sworn deposes and says:

    1.   I am Claims Manager for EMCOR Group, Inc., formerly known as JWP,
INC., (hereinafter "EMCOR") and have been so employed since February of 1995.  My
responsibilities as Claims Manager include the administration of EMCOR insurance policies,
including those policies procured for PENGUIN MAINTENANCE & SERVICES, INC.
(hereinafter "PENGUIN") and under which it is a named insured.  I also managed the claims
arising under those policies.

2.      I am familiar with the facts set forth herein based upon my personal knowledge and review of records referred to in this Affidavit.

3.      PENGUIN is a wholly owned indirect subsidiary of EMCOR.

4.      I am advised that on February 17, 1995, there existed a contract between MERRILL LYNCH & CO., INC. (hereinafter "MERRILL") and PENGUIN that required the procurement of certain insurance coverage for MERRILL as additional insured. The coverage was to last "throughout the term of the Agreement".

5.      I am aware that a claim has been brought against defendant PENGUIN alleging, amongst other things, that PENGUIN did not comply with certain insurance procurement requirements in the contract with MERRILL

6.      I have also been advised that this action arises from an incident that allegedly occurred on February 17, 1995, when the plaintiff, (Agron Jani), in the underlying case *Jani v. The Port Authority of New York and New Jersey, et al., Index No.: 13337/95, (Supreme Court, Richmond County)*, injured himself while performing routine maintenance pursuant to the Contract.

## PENGUIN PROCURED THE REQUISITE INSURANCE

7.      PENGUIN did in fact procure the requisite insurance coverage required by the contract.

8.      On or about October 1, 1994, the Insurance Company of America ("INA") issued to JWP, Inc. (now EMCOR), a commercial general liability insurance policy, numbered GL 653789-8, with a policy period of October 1, 1994 through October 1, 1995 and with limits

of $1.5 million per occurrence and $2 million general aggregate limit. A copy of the policy is annexed to the Affidavit of John E. Sparling as Exhibit "G". JWP, Inc. (now EMCOR), is a named insured under the INA policy. In addition, the named insured endorsement to the INA policy provides that all owned or controlled subsidiaries of JWP, Inc., such as PENGUIN, are also named insureds.

9.    The INA policy also contains an "Additional Insured" endorsement which provides as follows:

> Who is an Insured (Section II) is amended to include as an Additional Insured any person, organization, corporation, municipality, legal entity, trustee or estate to which you are obligated by virtue of a written contract to provide insurance as provided hereunder, but only as respects liability arising out of your operations conducted on your behalf or out of the facilities owned or used by you.

*See*, Affidavit of John E. Sparling, Esq., dated August 22, 2000, Exhibit "G", Endorsement No.4.

10.    In addition, AIU Insurance Company issued an umbrella policy, numbered BE 309 14 14 with a policy period of October 1, 1994 to October 1, 1995, and limits of $25,000,000. A copy of that policy is annexed to the Affidavit of John E. Sparling dated August 22, 2000, as Exhibit "H".

11.    Accordingly, PENGUIN procured the requisite insurance coverage with limits far in excess of any requirements of the contract.

12.    The INA policy general aggregate limits became exhausted, but no earlier than December 1, 1998.

13.    Thereafter, the Continental Casualty Company issued a policy of commercial general liability insurance, policy no. 1-66805108, to EMCOR for the subject policy period (the "CNA Policy"). The CNA policy has a $1.5 million per occurrence limit and a $2 million aggregate limit that is excess of the underlying INA policy. A copy of the CNA Policy is annexed to the Affidavit of John E. Sparling dated August 22, 2000 as Exhibit "P".

14.    The CNA policy provides coverage to PENGUIN in that the INA policy provisions, including who is an insured, are part of the CNA policy.

15.    As a result of the coverage provided by the CNA policy, all named insureds and additional insureds under the INA policy are covered under the CNA policy subject to the terms, conditions, limitations and provisions of the CNA policy.

16.    Exhaustion of the INA aggregate policy limits, therefore, would not create a gap in coverage for any named or additional insureds under the INA policy.

17.    These policies were in full force and effect on or about February 17, 1995 and the copies annexed to the Affidavit of John E. Sparling are true and accurate copies of the insurance policies.

-4-

I have read the foregoing and now the information contained therein to be true and accurate to the best of my knowledge.

SUSAN REINHARD

Sworn to me before this
21st day of _August_ 2000

Notary Public

X.166.382/Motions/Aff-SR5

JOAN C. BURKE
NOTARY PUBLIC
MY COMMISSION EXPIRES SEP. 30, 2000

-5-

Exhibit 2

Charles Anspach
Aggregate Control Unit



CIGNA Property
& Casualty

November 16, 1998

TL-19A
Two Liberty Place
1601 Chestnut Street
Philadelphia, PA 19192-2198
Telephone 215.761.1679
Facsimile 215.761.5551

Ms. Susan Reinhard
Corporate Claims Manager
EMCOR
101 Merritt Seven, 7th Floor
Norwalk, CT 06851

<u>Aggregate Notification Letter</u>

Policy Number        :   HDO G1 403379-8
Policy Term          :   10/01/94 - 10/01/95
Aggregate Type/Line  :   General Liability

Dear Ms. Reinhard:

The general liability coverage aggregate has been exhausted.

The existing open general liability claims and any future general liability claims received for this policy period will be coded to ESIS contract number 4437. This is the same contract number that is currently being used for the '92-'93 and '93-'94 policy periods.

If you have any specific questions on the exhaustion of the aggregate, please contact Virginia Lloyd at 215.761.2703. If you have any questions on the continuing claim handling process, please feel free to contact Carl Cincotta of ESIS, New York or Anne Marie Marson of ESIS, Voorheese, NJ.

Sincerely,

Charles J. Anspach

Charles J. Anspach

c:  Carl Cincotta        ESIS, NY   1720
    John Lapreay         Marsh & McLennan
    Virginia Lloyd       CIGNA    TL20
    Anne Marie Marsen    CIGNA    CPC42
    Rona Taylor          CIGNA    1720
    Patricia Topper      CIGNA    1275

002842

Exhibit 3

LONDON  FISCHEL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HRH CONSTRUCTION CORP.,                                  Index No. 98-104909
STARRETT HOUSING CORP. and
AIU INSURANCE COMPANY,

                                                         AFFIDAVIT OF
                              Plaintiffs,                 SUSAN REINHARD
                                                         IN SUPPORT OF
          -against-                          :           FOREST ELECTRIC's
                                                         MOTION FOR
FOREST ELECTRIC CORP. and                    :           SUMMARY JUDGMENT
INSURANCE COMPANY OF NORTH AMERICA,
                                             :
                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF CONNECTICUT      )
                          )     ss.:
COUNTY OF FAIRFIELD       )


          SUSAN REINHARD, being duly sworn, deposes and says:

          1.     I am the Claims Manager for JWP, Inc./EMCOR Group, Inc.[1] and have

been so employed since February of 1995.  My responsibilities as claims manager include the

administration of EMCOR's insurance policies and management of the claims arising from

those policies.  I am familiar with the facts set forth herein based upon my personal knowledge

and review of records referred to in this Affidavit.

          2.     The Insurance Company of North America issued a policy of commercial

general liability insurance to "JWP, Inc." policy no. HDO G1-658518-A for the policy period

October 1, 1993 through October 1, 1994 (the "INA policy").  FOREST ELECTRIC CORP.

("FOREST"), a JWP wholly owned subsidiary was a named insured under the INA policy.

The INA policy has a $1.5 million per occurrence limit and a $2 million general aggregate

_____
[1]  EMCOR Group, Inc. was formerly known as "JWP, Inc."



limit.

3.    The Continental Casualty Company issued an excess policy of commercial general liability insurance, policy no. 1-66805108 to EMCOR Group, Inc. for the policy period October 1, 1992 through October 1, 1996 (the "CNA Policy"). The CNA policy has $1.5 million per occurrence limit and a $2 million aggregate limit which is excess of the underlying INA policy.[2] The CNA policy provided coverage to Forest in that the INA policy provisions, including who is an insured, were a part of the CNA policy.

4.    As a result of the coverage provided by the CNA policy, all named insureds and additional insureds under the INA policy would be covered under the CNA policy subject to the provisions of that policy. Exhaustion of the INA aggregate policy limits would not create a gap in coverage for any named or additional insureds under the INA policy.

SUSAN REINHARD

Sworn to before me this
1ST day of April, 1999

Notary Public

JOAN C. BURKE
NOTARY PUBLIC
MY COMMISSION EXPIRES SEP. 30, 20..

470 078.Affid-SR

---

2  In addition, the National Union Fire Insurance Company of Pittsburgh, PA issued a policy of excess commercial general liability insurance to JWP, Inc. policy no. BE 309-13-35 for the policy period October 1, 1993 to October 1, 1994 with limits of $25 million.



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------X

LEHRER McGOVERN BOVIS, INC.,
BETH ISRAEL MEDICAL CENTER, and
AIU INSURANCE COMPANY,

**ORIGINAL**

Plaintiffs,

Index No.: 106185/99

-against-

FOREST ELECTRIC CORP., INSURANCE
COMPANY OF NORTH AMERICA, CIGNA PROPERTY &
CASUALTY, ESIS, INC., CORD CONTRACTING COMPANY
AND CRUM & FORSTER INDEMNITY COMPANY,
(pertaining to an underlying action entitled *Anthony Picariello
v. Lehrer McGovern Bovis, Inc., et al.*)

**REPLY AFFIRMATION
OF MICHAEL P. MURPHY
IN FURTHER SUPPORT
OF INA's AND CIGNA
P&Cs MOTIONS FOR
SUMMARY JUDGMENT**

Defendants.

---------------------------------------------------------------------X

Michael P. Murphy, being duly sworn, deposes and says:

1.     I am a Partner in the Hodgson, Russ, Andrews, Woods & Goodyear firm and

am counsel to Insurance Company of North America ("INA") and CIGNA Property & Casualty

("CIGNA P & C") in this action. I submit this reply affirmation in further support of INA and

CIGNA P & C's motions for summary judgment.

SEP 13 200[illegible]

NEW YORK
COUNTY CLERK'S OFFICE

### The Exhaustion Of The INA Insurance Contract

2.     Try as they have, Plaintiffs have not -- and cannot -- raise an issue of fact

concerning the exhaustion of the INA Insurance Contract. In moving for summary judgment, INA

established, by admissible evidence, that the INA Insurance Contract is fully and completely

exhausted. Indeed, INA has introduced the testimony of its senior-most Claims Specialist -- the INA

representative responsible for all claims tendered to INA under EMCOR's (including Forest Electric's) insurance coverage program and the INA representative responsible for the overall review of the aggregate limits of liability under EMCOR's and Forest Electric's insurance contracts, including the INA Insurance Contract. This admissible evidence establishes, beyond any doubt, that the $2 million general aggregate limit of liability under the INA Insurance Contract has been fully and completely exhausted.

3.     In opposing INA's motion for summary judgment, Plaintiffs have failed to produce a single shred of *evidence* -- admissible or otherwise -- which establishes that the INA Insurance Contract is not exhausted or that a genuine issue of material fact exists with respect to INA's assertion that the contract is exhausted. Rather, Plaintiffs simply offer the affidavit of their *lawyer* who "speculates" that the INA Insurance Contract may not be exhausted and asserts that INA has not presented sufficient evidence to establish exhaustion. Needless to say, Plaintiffs' lawyer's "speculation" is *not* evidence and is *not* sufficient to defeat INA's motion for summary judgment.

4.     This Court should end this litigation now and grant INA summary judgment as a matter of law. Given the *evidence* submitted by INA, *the lack of evidence* provided by plaintiffs, and the prior rulings of Justice Wilk (to whom Plaintiffs' attorneys refer as "Judge Wilt"), it would be an enormous waste of time, resources and money to conduct a trial to resolve INA's exhaustion defense.

2

**Plaintiffs Are Guilty Of Late Notice**

     5.    In moving for summary judgment, INA established that Beth Israel and Lehrer McGovern breached the notice conditions of the INA Insurance Contract by failing to provide INA with any notice whatsoever of Mr. Picariello's July 31, 1999 construction accident. Under well-settled New York Law -- including precedent from this Court -- Beth Israel's and Lehrer's three years late notice vitiates any alleged coverage obligation of INA.

     6.    In opposing INA's motion, Lehrer and Beth Israel allege that they were not aware of Mr. Picariello's construction accident until the commencement of the underlying *Picariello* law suit. In support of this contention, Lehrer and Beth Israel's lawyer asserts (1) that "Mr. Picariello testified that there was no witness to his accident and that he only made a report of the accident to his employer, Forest Electric"; and (2) that "Lehrer McGovern's project manager for the Beth Israel job site himself stated that he was unaware of the incident until spring 1999, and he specifically denied that an incident report has ever been filed on this particular accident and that he was in charge of keeping the incident report filed". *See* Affirmation of Eric G. Cheng ¶ 4-5. *Neither* of these representations are supported by the record.

     7.    First, in opposing INA's motion for summary judgment, Beth Israel has failed to produce a single shred of evidence (admissible or otherwise) which proves that it had no notice of Mr. Picariello's construction accident. Indeed, Beth Israel has submitted no affidavit, no deposition testimony, and no evidence which proves (or even addresses) Beth Israel's lawyer's claim that Beth Israel's egregious late notice should be excused since it had no notice of Mr. Picariello's

3

construction accident prior to the commencement of the underlying *Picariello* action. Accordingly, INA's motion for summary judgment as against Beth Israel should be granted as a matter of law.

8.    Second and similarly, there is absolutely nothing in the record which establishes that Lehrer was unaware of Mr. Picariello's construction accident until the commencement of the underlying *Picariello* action. In opposing INA's motion, Lehrer's lawyer simply points to the deposition testimony of a project superintendent (an individual who Lehrer's lawyers inaccurately called a "project manager") for the Beth Israel job site. This testimony, however, does *not* establish that Lehrer (a major construction company with real live directors, officers and managers) had no notice of Mr. Picariello's accident; at most, the deposition testimony establishes that Lehrer's project supervisor (1) had no recollection about the incident; and (2) did not know whether Lehrer maintained a file with respect to Mr. Picariello's construction accident.

9.    Third, Lehrer's lawyer's contention that its project superintendent was "unaware of the incident until spring 1999" and that the project superintendent "specifically denied that an incident report has ever been filed on this particular accident" is similarly not accurate and is not supported by the record. Simply stated, the *evidence* in the *record* establishes that Lehrer's "project superintendent" (a mere employee of Lehrer and *not* Lehrer itself) has no recollection of what transpired on July 31 (the date of Mr. Picariello's construction accident) and nothing more.

10.    Finally, Lehrer's allegation that Mr. Picariello testified that there was no witness to his accident is not supported by the record before this Court.

4

11.    Accordingly, in addition to granting INA summary judgment on the grounds that the General Aggregate Limit of Liability of the INA Contract is exhausted, this Court should grant INA summary judgment based upon Lehrer's and Beth Israel's late notice.

## CIGNA P&C's Motion For Summary Judgment Should Be Granted

12.    In moving for summary judgment, CIGNA P&C established that it did *not* enter into any insurance contracts with EMCOR and/or Forest Electric and did *not* enter into any insurance contracts with Lehrer and/or Beth Israel. Accordingly, CIGNA P&C established, by admissible evidence, that it owes no possible obligation to provide any insurance coverage to Lehrer, Beth Israel and/or AIU with respect to the underlying *Picariello* litigation.

13.    In opposing CIGNA P&C's motion, Plaintiffs failed to produce a single shred of evidence (admissible or otherwise) which establishes any possible coverage obligation on the part of CIGNA P&C. Accordingly, this Court should also grant CIGNA P&C's motion for summary judgment since Plaintiffs have *not* -- and *cannot* -- state a viable cause of action against CIGNA P&C.

## INA IS ABSOLUTELY ENTITLED TO SUMMARY JUDGMENT

### A.    INA Has Proved That The INA Contract Is Exhausted

14.    In moving for summary judgement, INA offered the testimony of Carol Ann Myrtetus -- the senior-most INA Claims Specialist responsible for claims tendered to INA under EMCOR's (including Forest Electric's) insurance coverage program --including the *Picariello* claim

5

for which plaintiffs are, in this litigation, seeking additional insurance coverage from INA. The testimony of Ms. Myrtetus -- whose responsibilities include the overall review of aggregate limits of liability under the INA Insurance Contract -- is clear: "the $2 million general aggregate limit of liability for bodily injury and property damage claims under the INA Insurance Contract has been fully and completely exhausted by the payment of prior judgments, settlements and claim expenses". (*See* Myrtetus Aff. ¶ 7).

15.    In opposing INA's motion for summary judgment, Lehrer McGovern and Beth Israel failed to produce a single shred of _evidence_ which establishes that the INA Contract is not exhausted or that a genuine issue of material fact exists relative to the exhaustion of the INA Insurance Contract. *See* Cheng Aff. Under well-settled New York Law, a motion for summary judgment must be granted where a party submits admissible evidence sufficient to warrant judgment as a matter of law. *See* N.Y. CPLR 3212 (McKinney 1992 & Supp. 1999 - 2000); *See Zuckerman v. City of New York*, 49 N.Y.2d 557, 562, 427 N.Y.S.2d 595, 597 (1980); *Friends of Animals, Inc. v. Associated Fur Mfrs., Inc.*, 46 N.Y.2d 1065, 1067-68, 416 N.Y.S.2d 790, 791 (1979); *Smith v. Johnson Products Co.*, 95 A.D.2d 675, 463 N.Y.S.2d 464, 465-66 (1st Dep't 1983). Indeed, summary judgment is appropriate when no genuine, triable issues of fact exist. *See Suffolk County Dep't of Services v. James M.*, 83 N.Y.2d 178, 182, 608 N.Y.S.2d 940, 941 (1994).

16.    After a party submits *prima facie* evidence establishing that it is entitled to summary judgment, the burden shifts to the other party to "*lay bare its proof* and present *evidentiary facts* sufficient to raise a genuine, triable issue of fact." *See Smith*, 463 N.Y.S.2d at 466 (emphasis

6

added). "Mere conclusory allegations, devoid of evidentiary facts, are insufficient for this purpose, as is reliance upon surprise, conjecture or speculation." *Id.*; *Zuckerman*, 49 N.Y.S.2d at 562, 427 N.Y.S.2d at 598. Indeed, it is well-settled that a bare attorney's affirmation cannot defeat a motion for summary judgment. *See Zuckerman*, 49 N.Y.2d at 563, 427 N.Y.S.2d at 598; *See* also *Zidel v. Dunne*, 215 A.D.2d 472, 626 N.Y.S.2d 509, 510 (2d Dep't 1995).

17.    In this case, Lehrer McGovern, Beth Israel and AIU have presented no evidence in opposition to INA's motion for summary judgment -- which itself was based upon admissible evidence establishing the exhaustion of the INA Insurance Contract. Indeed, despite the fact that (1) INA raised the exhaustion defense in its October 5, 1998 disclaimer letter (*See* Myrtetus Aff., Ex. C, p. 8); and (2) INA asserted the exhaustion defense in its answer to Lehrer and Beth Israel's complaint in this action (*See* Reply Affirmation of Michael P. Murphy, Ex. A), Lehrer, Beth Israel and AIU have taken no discovery whatsoever to "test" the sufficiency of INA's exhaustion defense.[1] Rather, Lehrer and Beth Israel moved for summary judgment against INA contending that no fact issues exist to prevent this Court from resolving this coverage litigation. Thus, Lehrer and Beth Israel have no one but themselves to blame for their complete and total failure in submitting any *evidence* in opposition to INA's cross-motion for summary judgment -- a tactical error which, under settled New York Law, is fatal to their claim.

---

[1] In its October 5, 1998 disclaimer letter, INA stated "Indeed, INA disclaims any alleged coverage obligation to Lehrer McGovern, Beth Israel and/or AIG CS to the extent that the INA Policy is exhausted". In addition, in its answer to plaintiffs' complaint in this insurance coverage litigation, INA asserted the following Twenty Seventh Defense: "110. The Alleged Insured is entitled to no coverage for the Underlying Litigation to the extent the INA and/or CIGNA P&C Policy is exhausted". A true and correct copy of INA's answer is attached hereto as Exhibit A.

7

**B.**    **Under Settled New York Law, The
Exhaustion Of The INA Contract
Relieves INA Of Any Further
Coverage Obligation**

18.    Under well-established New York law -- including the decision of Justice

Wilk in the *Ambassador Construction Company* litigation -- where the full monetary limits of an

insurance contract have been paid, the insurer is under no obligation to provide any coverage under

the contract. As stated in *Presbyterian Hospital v. Empire Ins. Co.*, 220 A.D.2d 733, 633 N.Y.S.2d

340 (2d Dep't 1995):

> The plaintiff's assignor exhausted his $5,000,000 no-fault policy
> limits. The plaintiff contends that the defendant insurance carrier's
> failure to deny the instant claim precluded it from asserting the
> exhaustion of the policy limits as a defense. However, when, as
> here, a carrier "has paid the full monetary limits set forth in the
> policy, its duties under the contract of insurance cease". *Id.* at 734
> (citation omitted).

19.    Accordingly, INA is entitled to summary judgment since the general aggregate

limit of INA's liability under the INA Insurance Contract has been paid. *E.g. Stv. Group, Inc. v.*

*American Continental Properties, Inc.*, 234 A.D. 50, 51, 650 N.Y.S.2d 204, 205 (1st Dep't 1996)

("an insurer may settle with less than all of the claimants under a particular policy even if such

settlement exhausted the policy proceeds"); *Champagne v. State Farm Mutual Automobile Inc. Co.*,

185 A.D.2d 835, 837, 586 N.Y.S.2d 813, 816 (2d Dep't 1992) ("Since State Farm has already paid

the $100,000 limit for bodily injury .... it has no further liability under the policy and is not obliged

to defend or indemnify with respect to the loss of consortium cause of action"); *Rankin v. Travelers*

*Ins. Co.*, 254 A.D. 687, 3, N.Y.S.2d 444 (2d Dep't 1938) (the insurer has "no further liability to the

8

plaintiff on her judgment for bodily injuries beyond the sum of $2,500" which is the only amount remaining on the policy limits).

### C. Plaintiffs' Late Notice Extinguishes Any Possible Coverage Obligation of INA

20.     The INA Contract requires, as a *condition precedent* to coverage, that insureds and alleged additional insureds provide INA with *prompt* notice of an "occurrence", and immediate notice of a claim or suit. Plaintiffs' utter failure to notify INA of the Picariello occurrence, plaintiffs' failure to forward any legal papers to INA, and plaintiffs' failure to tender the *Picariello* claim to INA bar any possible coverage obligation on the part of INA.

21.     In opposing INA's motion for summary judgment, Lehrer and Beth Israel make several truly remarkable arguments.[2] First, Lehrer and Beth Israel contend that they are not guilty of late notice of occurrence since they allegedly were not aware of Mr. Picariello's construction accident until Picariello's commencement of the underlying litigation. Lehrer and Beth Israel have failed, however, to produce a single shred of evidence (admissible or otherwise) which supports this argument. As we set forth above. Beth Israel has failed to submit _any_ evidence to support this contention. *See* Cheng Affidavit. Accordingly, this Court should grant INA summary judgment as a matter of law. In addition, the so-called "evidence" relied upon by Lehrer simply does not support Lehrer's contention that it had no knowledge of Mr. Picariello's construction accident until Picariello commenced the underlying action against Lehrer.

---

[2]AIU has not even opposed INA's summary judgment motion.

22.    In his March 1, 2000 affirmation, Lehrer's lawyer, Eric G. Cheng, makes the following remarkable allegations:

1.    That Lehrer McGovern's "project manager" for the Beth Israel construction project was Gerald Stern.  *See* Cheng Aff. ¶ 5;

2.    That "Lehrer McGovern's project manager for the Beth Israel job site himself stated that he was unaware of the incident until spring 1999". *Id.*; and

3.    That Lehrer McGovern's project manager "specifically denied that an incident report has ever been filed on [Mr. Picariello's construction] accident." *Id.*

Cheng Aff. ¶ 5.


23.    Each of these representations is not supported by the record.  First, contrary to Mr. Cheng's assertion, Gerald Stern was not Lehrer McGovern's "project manager".  Rather, Stern was simply a field superintendent for the Beth Israel construction project and accordingly, was not the senior Lehrer representative responsible for the project. *See* Cheng Aff. Ex. A at p. 6, 10. Second, Stern did not testify that "he was unaware of the incident until spring, 1999". *See* Cheng Aff., ¶ 5. Rather, Stern testified that he simply did not recall the incident. Cheng Aff. Ex. A. at p. 29. In addition, Stern testified that he did not know whether Lehrer maintained a file that would indicate whether Lehrer was given an incident report relative to the *Picariello* construction accident. Stern testified as follows:

Q:    Is there a file that's maintained that would indicate whether Lehrer was given an incident report?

A:   That exists today?
     I don't know.

Q:   How about that existed then?

A:   If at the time an incident report was generated and
     turned over to Lehrer McGovern, we would have put
     it into a safety, um folder at the site.

Q:   Who was responsible for keeping that safety folder?

A:   At that time?

Q:   Yes.

A:   Myself.

Q:   How long were you there? The entire time at the job?

A:   This particular project, I was there the entire duration,
     from January '1995 to January '1996.

Q:   During that time, was anyone other than Mr. Picariello
     injured on the job such that an incident report was
     generated?

A:   Yes.

                    *    *    *

Q:   What happened to those reports?

A:   I don't know.

Q:   What did you do with them?

Q:   You just don't remember or what?

A:   Mr. Sawicki:  Well, his answer was that he doesn't
     remember. I mean what
     That's his answer.

Q:   Where did you keep them when you were on the job?

                        11

> A:    I have a job site office in which I had a file job site
>        incident reports.
>
> Q:    After you left the job, do you have any idea what
>        happened to them?
>
> A:    No.

Cheng Aff. Ex. A. at p. 29-31.

24.    Simply stated, there is nothing in the record which supports Lehrer's lawyer's

contention that Stern "was unaware of the incident until spring, 1999". Rather, the record establishes

that (1) Stern has no recollection of the incident; (2) that Stern does not know whether an incident

report relative to the *Picariello* accident was prepared and was sent to Lehrer; and (3) that Stern does

not know where Lehrer's incident reports relative to the Beth Israel construction project are

maintained today. Stern's testimony is clear and unambiguous: "I have no recollection of what

transpired on July 31st." *See* Cheng Aff. Ex. A at p. 56.

25.    Third, as the above testimony establishes, there is nothing in the record to

support Lehrer's lawyer's assertion that Stern specifically denied that "an incident report has ever

been filed on this particular accident".    Cheng Aff. ¶ 5.    Again, the record before this Court

establishes that, at most, Stern has no recollection of what transpired on July 31st. *Id.* at p. 56. In

addition, the testimony of Gerald Stern -- a mere field superintendent -- is not *evidence* of what

*Lehrer* (a major construction corporation with officers, directors and managers) knew about or did

not know about relative to the *Picariello* accident. Indeed, there is absolutely nothing in this record

which establishes that Stern's knowledge (or lack of knowledge) constitutes knowledge (or lack of

12

knowledge) of Lehrer. Simply put, Stern's testimony is useless, is self-serving and is not sufficient to defeat INA's motion for summary judgment.

26.    Accordingly, INA and CIGNA P&C's motions for summary judgment should be granted and plaintiffs cross-motion should be denied on the grounds that: (1) CIGNA P&C issued no insurance contract under which plaintiffs can possibly claim any entitlement to insurance coverage and thus plaintiffs' have failed to state a cause of action as against CIGNA P&C; (2) the general aggregate limit of liability under the INA Insurance Contract is fully and completely exhausted; and (3) plaintiffs breached the notice conditions of the INA Insurance Contract

Dated: New York, New York
       March 23, 2000

                              Respectfully submitted,

                              Michael P. Murphy
                              HODGSON, RUSS, ANDREWS,
                               WOODS & GOODYEAR, LLP
                              Attorneys for Defendant
                              INDEMNITY INSURANCE COMPANY
                               OF NORTH AMERICA AND
                              CIGNA PROPERTY & CASUALTY
                              65 East 55th Street - 10th Floor
                              New York, New York 10022
                              (212) 407-2343

NYCDOCS 25259-1 (HN01)

13



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
LEHRER McGOVERN BOVIS, INC.,
BETH ISRAEL MEDICAL CENTER, and
AIU INSURANCE COMPANY,

                    Plaintiffs,

       -against-

FOREST ELECTRIC CORP., INSURANCE
COMPANY OF NORTH AMERICA, CIGNA PROPERTY
& CASUALTY, ESIS, INC., CORD CONTRACTING
COMPANY AND CRUM & FORSTER INDEMNITY
COMPANY, (pertaining to an underlying action entitled
Anthony Picariello v. Lehrer McGovern Bovis, Inc., et al.)

                  Defendants.
-------------------------------------------------------------------X

Index No.: 106185/99

**AFFIDAVIT OF
CAROL ANN MYRTETUS**

STATE OF PENNSYLVANIA    )
                             ) ss:
COUNTY OF  PHILADELPHIA   )

      **CAROL ANN MYRTETUS**, being duly sworn, deposes and says:

      1.     I am employed by Ace USA and its affiliate Insurance Company of North American ("INA"), hold the position of Liability Specialist and, among other things, am responsible for handling all New York State construction claims for INA's Special Risk Facility -- the INA facility which underwrites insurance for large commercial policyholders such as Emcor and its affiliate Forest Electric Corporation ("Forest Electric").

      2.     In addition, I am the senior most INA Claims Specialist responsible for claims tendered to INA under Emcor's (including Forest Electric's) insurance coverage program. Those

claims include the *Picariello* claim for which plaintiffs Lehrer McGovern Bovis, Inc., ("Lehrer"),

Beth Israel Medical Center ("Beth Israel") and AIU Insurance Company ("AIU") are, in this

litigation, seeking additional insurance coverage from INA. My responsibilities also include the

overall review of aggregate limits of liability under Emcor's and Forest Electric's insurance

contracts, including INA Insurance Contract No. HD0G1658789-8 ("the INA Insurance Contact").

A full and complete copy of the INA Insurance Contract is attached hereto as Exhibit A. As such,

I am fully familiar with the facts and circumstances set forth below.

      3.     I submit this Affidavit in support of INA's motion for summary judgment on

the grounds that plaintiffs are not entitled to any coverage under the INA Insurance Contact since,

among other things, (1) the general aggregate limits of the INA Insurance Contract for bodily injury

claims have already been spent and the INA Insurance Contract is completely exhausted; and (2)

plaintiffs have breached the notice conditions of the INA Insurance Contract. In addition, I submit

this affidavit in support of CIGNA Property and Casualty's ("CIGNA P&C") motion for summary

judgment on the grounds that CIGNA P&C is not an insurance company; and did not enter into any

insurance contract under which Emcor, Lehrer, Beth Israel and AIU could possibly seek or be

entitled to any insurance coverage under. Simply put, CIGNA P&C is entitled to summary judgment

since plaintiffs have not (and cannot) state a claim or cause of action against CIGNA P&C. Finally,

I submit this Affidavit in opposition to plaintiffs' cross-motion for summary judgment.

## THE NATURE OF THIS ACTION

4.    In this insurance coverage litigation, AIU seeks to recover the defense costs and indemnity payments it allegedly made on behalf of its insureds, Lehrer and Beth Israel, in an underlying action entitled *Anthony Picariello v. Lord Construction Co., Inc.,* Index No. 113594/98 Supreme Court, New York County (the "*Picariello* action"). In the *Picariello* action, Mr. Picariello seeks monetary damages from Lehrer and Beth Israel for the alleged bodily injuries he sustained on July 31, 1995, while working on a construction project in New York City.

## THE INA INSURANCE CONTRACT

5.    INA and JWP, Inc., (Emcor's predecessor company) entered into the INA Insurance Contract for the policy period October 1, 1994 to October 1, 1995. See Exhibit A. The INA Insurance Contract was written on an occurrence basis and contained a $2 million general aggregate limit of liability for bodily injury claims arising out of covered accidents which occurred during the INA policy period (i.e., between October 1,1994 and October 1, 1995). Forest Electric is a named insured under the INA Insurance Contract. Id.

## THE GENERAL AGGREGATE LIMITS OF
## LIABILITY UNDER THE INA INSURANCE
## CONTRACT HAVE BEEN COMPLETELY EXHAUSTED

6.    As set forth above, the INA Insurance Contract clearly and unambiguously limits the most that will be paid under the general aggregate limit for bodily injury or property

damage liability to $2 million.[1] The Limits of Insurance section of the contract provides:

## SECTION III - LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought; or

    c.  Persons or organizations making claims or bringing "suits."

2.  The General Aggregate Limit [$2 million] is the most we will pay for the sum of: ...

    b.  Damages under Coverage A [Bodily Injury and Property Damage Liability].... See Exhibit A.  (emphasis supplied)

7.  The $2 million General Aggregate Limit of Liability for bodily injury and property damage claims under the INA Insurance Contract has been fully and completely exhausted by the payment of prior judgments, settlements and claim expenses.  Accordingly, INA owes no possible obligation to defend or indemnify any of the plaintiffs in this action relative to the underlying *Picariello* action.

---

[1]  Pursuant to Endorsement No. 33 to the INA Insurance Contract, allocated claims expenses (such as costs to defend claims under the insurance contract) impair the general aggregate limit of liability under the contract.  See Exhibit A.

## PLAINTIFFS BREACHED THE NOTICE
## CONDITIONS OF THE INA INSURANCE CONTRACT

8.　　As a *condition precedent* to any possible coverage obligation of INA, the INA

Insurance Contract requires that an insured entity (such as allegedly Lehrer and Beth Israel) provide

INA with *prompt* notice of an occurrence and immediate notice of a claim or suit.  A breach of the

notice conditions of the INA Insurance Contract vitiates any possible coverage obligation relative

to any claim for which there is late notice.  The INA Insurance Contract provides:

### SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

2.　　**Duties In The Event Of Occurrence, Claim Or Suit.**

a.　　You must see to it that we are notified as soon as practicable of an "occurrence"[2] or an offense which may result in a claim.  To the extent possible, notice should include:

(1)　　How, when and where the "occurrence" or offense took place;

(2)　　The names and addresses of any injured persons and witnesses; and

(3)　　The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.　　If a claim is made or "suit"[3] is brought against any insured, you must:

(1)　　Immediately record the specifics of the claim or "suit" and the date received; and

(2)　　Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon

---

[2]　　The INA Insurance Contract defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

[3]　　The INA Insurance Contract defines "suit" as "a civil proceeding in which damage because of 'bodily injury' . . . [is] alleged."

as practicable.

c.    You and any other involved insured must:

    (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

    (2)    Authorize us to obtain records and other information;

    (3)    Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

    (4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.    No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent. See Exhibit A

9.    Thus, Lehrer and Beth Israel -- to the extent they are insured entities under the INA Insurance Contract -- were required to give prompt notice to INA of the alleged Picariello construction accident and immediate notice of the resulting claim and suit.

10.    The incident which gave rise to Mr. Picariello's claim allegedly occurred on July 31, 1995.  Nevertheless, neither Lehrer nor Beth Israel provided any notice to INA prior to August 13, 1998 -- more than three years after Mr. Picariello was allegely injured in the July 31, 1995 construction accident.   Thus, Lehrer and Beth Israel are guilty of a minimum of *three years* late notice of occurrence.

## INA'S DISCLAIMER OF COVERAGE TO
## LEHRER, BETH ISRAEL AND AIU

11.    On August 13, 1998, Lehrer and Beth Israel's own insurer, AIU, wrote to Forest Electric's third-party claims administrator, ESIS and demanded that *Forest Electric* assume the full defense and indemnification of Lehrer and Beth Israel in the underlying *Picariello* action. See Exhibit B. AIU did *not* tender the *Picariello* action to INA. Needless to say, Forest Electric (INA's insured) is *not* INA.

12.    Despite the fact that Lehrer and Beth Israel had never provided any notice to INA of the Picariello construction accident and the resulting claim; that Lehrer and Beth Israel had never tendered the Picariello claim to INA; and that AIU itself had never tendered the Picariello occurrence and claim to INA, INA (after it received AIU's August 13, 1998 letter from Forest Electric's third-party claims administrator) promptly wrote to Lehrer, Beth Israel, and AIU and disclaimed any possible coverage obligation under the INA Insurance Contract. INA's disclaimer of coverage was based upon (1) the exhaustion of the INA Insurance Contract; (2) Lehrer and Beth Israel's breach of the notice conditions of the INA Insurance Contract; and (3) the fact that INA has no legal or contractual obligation to defend Lehrer and Beth Israel under the INA Insurance Contract. In addition, INA reserved its rights to disclaim coverage based upon various other coverage defenses. See Exhibit C.

## LEHRER, BETH ISRAEL AND AIU'S
## REPRESENTATION TO THIS COURT
## THAT INA FAILED TO DISCLAIM
## <u>COVERAGE IS NOT ACCURATE</u>

13.    In moving for summary judgment against INA, Lehrer, Beth Israel and

AIU represented to this Court that INA failed to disclaim coverage for the *Picariello* action.

Lehrer, Beth Israel and AIU further contend that INA has thus waived its rights to assert any

coverage defenses.  Lehrer, Beth Israel and AIU's representations to this Court are wrong

factually and their legal arguments are wrong as a matter of law.

14.    If Lehrer, Beth Israel and AIU had taken the time to read INA's October 5,

1998 disclaimer letter, before they misrepresented INA's letter to the Court, they would have

seen the following:

> For the reasons set forth below, INA will not defend
> or indemnify Lehrer McGovern and Beth Israel in
> the underlying *Picariello* litigation.  (Ex. B, p.1)

*    *    *

> In addition, INA disclaims any alleged or potential
> obligation to reimburse AIGCS for any costs it
> incurs in defending and/or indemnifying Lehrer
> McGovern or Beth Israel.  (Ex. B, p. 1-2).

*    *    *

> As things stand now, INA owes no coverage
> obligation to any entity, including Lehrer McGovern
> and Beth Israel since these entities have not
> tendered any loss or claim to INA.  (Ex. A., p. 2).

*    *    *

> Moreover, INA has no obligation to defend Lehrer

McGovern and/or Beth Israel under the terms of the
INA policy. (Ex. A., p. 2).

\*    \*    \*

In any event, Lehrer McGovern and Beth Israel to
the extent that they are insureds under the INA
Policy -- something which has not been established
-- have nonetheless breached the INA Policy by,
among other things, failing to provide INA with
timely notice of the July 31, 1995 incident which
allegedly injured Mr. Picariello. Moreover, Lehrer
McGovern and Beth Israel breached the separate
and distinct condition of the INA Policy which
requires that insured entities provide immediate
notice of any claim or suit to INA. (Ex. A., p. 2).

Under well - settled New York Law, the notice
conditions of the INA Policy are conditions
precedent to coverage. The failure of an alleged
insured (such as Lehrer McGovern and Beth Israel)
to comply with the notice conditions of the INA
Policy vitiates any possible coverage obligation of
INA, including any alleged obligation of INA to
defend Lehrer McGovern and/or Beth Israel in the
underlying *Picariello* litigation. Lehrer McGovern,
Beth Israel and AIG's late notice also vitiates any
possible obligation of INA to reimburse AIG for any
costs it incurs in defending and/or indemnifying the
interests of AIG's insureds Lehrer McGovern and
Beth Israel. The information which AIG has
belatedly provided to INA establishes that the
underlying event allegedly occurred on July 31,
1995. In addition, plaintiff's filed the *Picariello*
action in July 1995. To date, Lehrer McGovern and
Beth Israel have not provided any notice to INA of
the alleged occurrence or the *Picariello* litigation.
The notice which INA recently received from AIG
is late as a matter of fact and law and constitutes a
breach of the INA Policy. (Ex. A, p. 2).

\*    \*    \*

Indeed, INA disclaims any alleged coverage
obligation to Lehrer McGovern, Beth Israel and/or

AIGCS to the extent that the INA Policy is exhausted. (Ex. A, p. 2).

\*   \*   \*

INA's disclaimer of coverage and reservation of rights is based upon the limited facts which are available to INA at this time. (Ex. A, p. 4).

15.    Simply put, INA disclaimed any existing and/or alleged coverage obligation under the INA Insurance Contract.

Dated: New York, New York
      February 3, 2000

 

CAROL ANN MYRTETUS

Sworn to before me this
7<u>th</u> day of February, 2000.

**CAROL ANN BARKSDALE**
My Commission Expires
March 26, 2003
Newcastle County, DE
Notary Public

Exhibit 6

Carl R. Cincotta
Account Manager
ESIS-Account Services

**ESIS**

An Insurance Services Company

June 22, 1998

**VIA FACSIMILE**

EMCOR Group, Inc.
101 Merritt Seven, 7th Floor
Norwalk, CT 06851
Attn: Susan Reinhard

Re: **EMCOR GL Policy Aggregate Exhaustion 10/1/92-9/30/93**
     **Continued ESIS Claims Handling**

Dear Susan,

I have been advised by Ginny Lloyd of INA that the above referenced aggregate has been exhausted. ESIS will code all of the existing open GL claims and any future GL claims received for this policy period to contract number 4337. This is the same contract number currently being used for the 93-94 GL policy and referenced in my prior correspondence to John Lapreay of J&H Marsh & McLennan dated November 12, 1997.

All claim payments made by ESIS in excess of the aggregate for the above referenced policy will be made off of contract number 4337. It is EMCOR's responsibility to reimburse ESIS for these payments and to maintain an adequate paid loss deposit fund. Any future claims service handling fees for the 92-93 GL policy period, as previously outlined in our proposals, will be the responsibility of EMCOR. It is my understanding that they were not included in the INA finite premium collected for this policy period.

If you have any specific questions on the exhaustion of the aggregate please contact Ginny Lloyd of INA. If you have any questions on the continuing claims handling process please feel free to contact myself or Anne Marie Marson of ESIS in Vorhees, N.J.

Very truly yours,

Carl R. Cincotta
Account Manager

c: John Lapreay - J&H Marsh & McLennan
   Ginny Lloyd- INA
   Pat Walton - INA
   Anne Marie Marson - ESIS
   Patti Topper - ESIS

emc62298.ltr

002711



Charles Anspach
Aggregate Control Unit



October 20, 1997

TL-19A
Two Liberty Place
1601 Chestnut Street
Philadelphia, PA 19192-2198
Telephone 215.761.1679
Facsimile 215.761.5551

Ms. Susan Reinhard
Emcor Group
Corporate Claims Manager
101 Merrit Seven, 7th Floor
Norwalk, CT 06851

<u>Aggregate Notification Letter</u>

Policy Number   :  HDO G1 658518 A
Policy Term       :  10/01/93 - 10/01/94
Insured Name     :  JWP, Inc.
Aggregate Type/Line :  General Liability

Dear Ms. Reinhard:

Our Aggregate Reporting and Control System provides advance notice to you when the applicable aggregate limit is reached or exhausted on an incurred loss basis. This notice does not imply the aggregate is exhausted since only paid losses generally deplete the aggregate. However, you may wish to advise your excess carrier that an aggregate limit is being approached.

According to our records, review of the CRIS database today reveals $ 1,995,577.13 against the applicable aggregate of $ 2,000,000. Additionally, there are $ 1,529,000 in open reserves against this policy.

If you have any questions, please contact your Account Services representative or call our Aggregate Control Unit at (215) 761.1679.

Sincerely,

Charles J. Anspach

c:  V. Lloyd
    C. Cincotta

Page 1

1        IN THE UNITED STATES DISTRICT COURT

2    FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3              -   -   -

4    EMCOR GROUP, INC.      : CIVIL ACTION
                            :
5          V.               :
                            :
6    INSURANCE COMPANY OF   :
     NORTH AMERICA          : NO. 3:00-CV-2211
7              -   -   -

8              June 8, 2004

9              -   -   -

10             Videotape deposition of

11   STEVEN SNYDER, held in the offices of

12   Wilson, Elser, Moskowitz, Edelman &

13   Dicker, LLP, Curtis Center, Suite 1130

14   East, Philadelphia, Pennsylvania 19106

15   commencing at 9:04 a.m., on the above

16   date, before Harvey Krauss, a

17   Federally-Approved Registered

18   Professional Reporter and a Commissioner

19   of the Commonwealth of Pennsylvania.

20             -   -   -

21         ESQUIRE DEPOSITION SERVICES
                  15th Floor
22        1880 John F. Kennedy Boulevard
          Philadelphia, Pennsylvania 19103
23             (215) 988-9191

24

1    changed?

2                    MR. OELSNER:    Objection.

3          Asked and answered.

4          A.      I have already testified

5    that the financial reports indicate that

6    there were changes made to claims with

7    respect to the aggregates.  The only

8    claims that would have been changed were

9    the ones that were either reviewed by

10   Mr. Luhman or reviewed otherwise by ESIS

11   at the request of Emcor, and that

12   evidence suggests that changes were

13   made.

14         Q.      When you say financial

15   documentation do you mean the CRIS

16   reports?

17         A.      It's my understanding that

18   the present state of the policy under

19   the '94 -- '93-'94, '94-'95 indicate

20   that there are -- that the aggregates

21   are not completely exhausted.

22                    MR. VITA:  Can you read that

23         answer back, please.

24                         -    -    -

STEVEN SNYDER

1    and the only reason I'm aware of that a

2    claim would be charged back to the 2806

3    contract when it was originally

4    established under the 4337 contract is

5    because of a change in coding.

6          Q.     And do you know

7    approximately how many times that

8    occurred with respect to the Emcor cases

9    where you saw a change or Miss Topper

10   saw a change in -- in credit or debit?

11         A.     No, I do not.

12         Q.     Can you estimate

13   approximately?

14         A.     Not from my discussions

15   with Miss Topper I can't.

16         Q.     Do you know if Ace ever

17   replenished any of the general liability

18   aggregate limits that are at issue in

19   this case?

20              MR. OELSNER:  Objection to

21         form.

22         A.     I believe that the aggregate

23   limits at issue were under the '94-'95

24   and '93-'94 policies were -- were -- are

STEVEN SNYDER

1    no longer eroded completely.

2              Q.       This is your copy.

3              Do you know if Ace ever

4    issued any checks to Emcor for cases

5    which may have been recoded from general

6    liability to complete operations?

7              A.       It's my understanding that

8    it was not necessary to issue a check

9    because the matter was addressed under a

10   debit and credit process.  It's a

11   monthly billing.

12             Q.       So, it's Ace's position

13   that the system somehow automatically

14   captured these debits and credits and

15   billed accordingly?

16             A.       Correct.

17             Q.       The risk advantage reports

18   and the CRIS reports that we talked

19   about earlier, do you know if they

20   identify who paid the amounts that are

21   on those reports, in other words,

22   whether they were paid by the insured or

23   whether they were paid by the insurer.

24             A.       I did not review any CRIS