IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------------X
EMCOR GROUP, INC.                          :   Civil Action No.
                                                         Docket 3:00-CV-2211 (AVC)
          Plaintiff,              :
                                                         Judge Alfred V. Covello
v.                                                  :

INSURANCE COMPANY OF NORTH AMERICA   :

          Defendant.            :   December 6, 2004
---------------------------------------------------------------X

### A.    Plaintiff's Local Rule 56(a)2 Statement

1.  Admitted.

2.  Admitted.

3.  Admitted.

4.  Admitted.

5.  Admitted that as of October 1, 1994, EMCOR was located in Rye Brook, New York, however, EMCOR moved to Norwalk, Connecticut on or about December 10, 1994.

6.  Admitted

7.  Admitted.

8.  Admitted only as to the 1992-1993 policy. Denied as to the 1993-1994 and 1994-1995 policies. (See INA's Exhibits 3, 4, and 5, Endorsement #32).

9.  Admitted that the endorsement contains that language, however, (1) EMCOR was unaware of the inclusion of that language in the policies (See Exhibit D, Affid. of Susan J. Reinhard, ¶ 12) and (2) the responsibility for payment of defense and indemnity was transferred back to INA by the CIPA and Finite Agreement. (See Exhibit G.3, ¶ 3).

10. Admitted that the policies contain that language, however, according to the claims service/field operations agreement, anything over $25,000 required the authorization of Susan J. Reinhard. (See Exhibit H, Claims Service/Field Operations Agreement,

p. 2, Bate Stamp # 000295, ¶1; See Exhibit I.2, Deposition of Susan J. Reinhard, Vol. II p.115).

11. Admitted; however, Endorsement No. 33 to the 1992-1993 policy was supplemented by the CIPA and Finite Agreement whereby INA was required to reimburse EMCOR for all allocated claims expenses. (See Exhibit G.3 ¶3). Admitted that allocated claims expenses did not contribute towards the exhaustion of the general liability aggregate limits for the 1992-93 policy.

12. Admitted; however, Endorsement No. 33 to the 1993-1994 policy was supplemented by the CIPA and Finite Agreement whereby INA was required to reimburse EMCOR for all allocated claims expenses. (See Exhibit G.3 ¶3).

13. Admitted, however, Endorsement No. 33 to the 1994-1995 policy was supplemented by the CIPA and Finite Agreement whereby INA was required to reimburse EMCOR for all allocated claims expenses. (See Exhibit G.3 ¶3).

14. Admitted.

15. Admitted.

16. Admitted.

17. Denied; in the present litigation EMCOR contends that the general liability aggregate limits for the 1992-1993 policy did not exhaust on June 9, 1998. (See Exhibit J, Expert Mark Sobel Report, p. 2).

18. Denied; in the present litigation EMCOR contends that the general liability aggregate limits for the 1993-1994 policy did not exhaust on November 3, 1997. (See Exhibit J Expert Mark Sobel Report, p. 4; See Exhibit D.8, 30(b)(6) Deposition of Stephen Snyder, pp. 96, 187-188).

19. Denied; in the present litigation EMCOR contends that the general liability aggregate limits for the 1994-1995 policy did not exhaust on October 28, 1998. (See Exhibit J Expert Mark Sobel Report, p. 4; See Exhibit D.8, 30(b)(6) deposition of Stephen Snyder, pp. 96, 187-188).

20. Admitted.

21. Admitted that Ms. Reinhard made the statement that the "general aggregate limits became exhausted but not earlier than December 1, 1998." However, Ms. Reinhard's statement was made in good faith based on INA's information that those limits were exhausted. (See Exhibit D, Affid. of Susan J. Reinhard, ¶ 4(d); sub-exhibit D.2, D.6, D.7).

22. Denied; although Penguin, EMCOR's subsidiary, stated that the 1994-95 policy's general liability aggregate limit had become exhausted, Penguin further stated that such exhaustion was "irrelevant to the litigation." (See INA's Exhibit 10, John

        Sparling's Reply Affidavit in Support of Penguin's Cross-Motion and In Opposition to Plaintiff's Motion, pp. 10-11, ¶21).

23. Admitted; however, EMCOR's counsel's statement was based on the deposition testimony of Richard Lafferty, an employee of INA, who stated that the INA policy was exhausted. (See INA's Exhibit 10, John Sparling's Reply Affidavit in Support of Penguin's Cross-Motion and In Opposition to Plaintiff's Motion, pp. 6-7, ¶¶14, 15, p. 10-11 ¶ 21).

24. Admitted; however, INA and EMCOR filed separate motions for summary judgment. INA continued to assert that the 1994-95 policy general liability aggregate limits were exhausted by testimony of INA's employee Carol Ann Myrtetus. (See INA's Exhibit 11).

25. Admitted; however, INA's Exhibit 12 was submitted only with respect to EMCOR's subsidiary's motion. (See INA's Exhibit 12).

26. Admitted; however, such decision was based on INA's affidavit. (See INA's Exhibit 13, p. 5).

27. Admitted; however, Ms. Reinhard makes no statement as to whether or not the 1993-1994 policy was exhausted. (See INA's Exhibit 14).

28. Admitted; however, INA and Forest Electric Corp., EMCOR's subsidiary, moved separately for summary judgment on different grounds. (See INA's Exhibit 15 and 16).

29. Admitted; however, INA's Exhibit 12 was submitted only with respect to Forest Electric's Motion. (See INA's Exhibit 12).

30. Admitted.

31. Denied; the Court found that the material submitted on INA's motion reflected that the policy was exhausted. (See INA's Exhibit 17).

32. Admitted; however, Ms. Reinhard makes no statement as to whether or not the 1993-1994 policy was exhausted. (See INA's Exhibit 14).

33. Admitted; however, Ms. Reinhard makes no statement as to the exhaustion of the INA general liability aggregate limits. (See INA's Exhibit 18).

34. Admitted; however, Ms. Reinhard makes no statement as to the exhaustion of the INA general liability aggregate limits. (See INA's Exhibit 19).

35. Admitted; as to INA's motion based on its affidavit. Forest Electric's motion was not based on the exhaustion of the INA policy. (See INA's Exhibit 20).

3

36. Denied; this misstates Ms. Reinhard's letter which expressed her concerns about the improper coding of certain general liability claims. (See INA's Exhibit 21).

37. Admitted.

38. Admitted.

39. Admitted as to London Fischer being told in 1998 that EMCOR believed that some claims should have been classified as products-completed operations claims, but denied that London Fischer was told again in 2000 as INA supplied no evidence regarding London Fischer being informed in 2000. As for the remainder of this statement regarding London Fischer being aware of the dispute on the coding of the claims prior to May 1999, it appears to misstate Doug Willis' deposition testimony. (See Exhibit K, Deposition of Doug Willis, p. 73).

40. Denied as a misstatement of Ms. Reinhard's 30(b)(6) deposition testimony. (See Exhibit I.4, 30(b)(6) Deposition of Susan J. Reinhard, p. 169).

41. Admitted.

42. Denied as a misstatement of Ms. Reinhard's 30(b)(6) deposition testimony. (See Exhibit I.4, 30(b)(6) Deposition of Susan J. Reinhard, p. 174).

43. Admitted.

44. Admitted as to the 1993-1994 Policy. Denied as to the 1992-1993 and 1994-1995 policy years as INA failed to supply evidence that the same terms applied to those years. (See INA's Exhibit 28).

45. Admitted.

46. Admitted as to the terms/requirements of the contract only. (See INA's Exhibit 28 Claims Service Agreement # 2806, Article III A).

47. Denied as this is a disputed issue of fact to be determined at trial. (See Exhibit I.3 Deposition of Susan J. Reinhard, p.51).

48. Admitted as to the assignment of a code to a claim as either general liability or completed operations, but denied as to which entity assigned the codes. (See Exhibit I.3, Deposition of Susan J. Reinhard, p. 51).

49. Admitted.

50. Admitted.

51. Admitted.

52. Admitted but only as to the fact that Ann Marie Marson made that statement during her deposition. Denied as to the veracity of that statement. (See Exhibit I.4, 30(b)(6) Deposition of Susan J. Reinhard, pp. 130-131; Exhibit I.3, Deposition of Susan J. Reinhard, pp. 65-66).

53. Admitted only that EMCOR, through its broker, had some loss run information.

54. Admitted; however, other documents contained in the file were reviewed as well. (See Exhibit K, Deposition of Doug Willis, pp. 53-54).

55. Denied as there is no exact count as to how may claims were submitted by EMCOR for coverage under the 1992-93, 1993-94, and 1994-95 policies. (See Exhibit I.2, Deposition of Susan J. Reinhard, pp. 122-124).

56. Admitted that a vendor produced loss runs and that they contained the described information.

57. Denied as a misstatement of Doug Willis' deposition testimony. (See Exhibit K, Deposition of Doug Willis, p. 64, p. 61).

58. Admitted.

59. Admitted.

60. Denied as there is evidence that bodily injury involved in claims listed on INA's Exhibit A did arise out of EMCOR's work because EMCOR was at the site of the accident and completed its work prior to the accident and/or the complaint contained allegations that EMCOR had completed its work prior to the accident. (See EMCOR's Exhibit A #1-30).

61. Denied as there is evidence that the bodily injury in the claims listed in INA's Exhibit A did arise out of EMCOR's work and were improperly coded as general liability claims and payments made on those claims were improperly applied to the general liability aggregate limits. (See EMCOR's Exhibit A # 1-30).

62. Denied as there is clear evidence that there is a causal relationship between EMCOR's work and the bodily injury alleged. (See Memorandum of Law in Support of EMCOR's Opposition to INA's Motion for Partial Summary Judgment, pp. 24-26).

63. Denied as the bodily injury alleged arose out of EMCOR's work or was alleged to have arisen out of EMCOR's work and the claims were not properly classified as general liability claims and payments made on those claims were not properly applied to the general liability aggregate limits. (See Memorandum of Law in Support of EMCOR's Opposition to INA's Motion for Partial Summary Judgment, pp. 24-26).

64. Denied as there is clear evidence that as to the claims listed on INA's Exhibit C, EMCOR had completed its work, returned the premises to its intended use, and left the scene prior to the accident. (See EMCOR's Exhibit C).

65. Denied as the claims listed in INA's Exhibit C were not properly coded as general liability claims and payments made on those claims were improperly applied to the general liability aggregate limit. (See EMCOR's Exhibit C).

### B. Plaintiff's Local Rule 56(a)2 Statement of Disputed Issues of Material Facts

Pursuant to L.Civ.R. 56(a)(2), plaintiff EMCOR Group, Inc., for purposes of its opposition to INA's Motion for Partial Summary Judgment, contends that the following statements constitute genuine issues of material fact to be tried regarding the claims set forth in INA's Motion:

1. The investigation, adjustment and otherwise administration of EMCOR claims was ultimately handled by INA.

2. The classification of claims as either general liability or completed operations was ultimately determined by INA.

3. When the general aggregate limits of each of the INA policies would have properly exhausted based on the proper coding of claims is unknown.

4. The allegations contained in a complaint together with other available documents are reviewed in order to determine the proper classification or coding.

5. EMCOR's subsidiaries conducted all of the work in the claims at issue in the present litigation away from premises owned or rented by EMCOR.

6. The claims listed on INA's Exhibit A fall within the completed operations aggregate as EMCOR completed a repair, returned the premises to its intended use and left the scene prior to the date of loss; and/or the complaint in the underlying claim alleges that EMCOR completed a repair prior to the date of loss.

7. The bodily injury claims listed in INA's Exhibit A, arise out of EMCOR's work and should properly be classified as completed operations claims pursuant to the INA Policies.

8. Payments for those claims listed in INA's Exhibit A should not have been charged against the general liability aggregate limits of the INA Policies.

9. The bodily injury claims listed in INA's Exhibit B are causally connected to EMCOR's work and therefore should be classified as completed operations claims pursuant to the INA Policies.

10. Payments for those claims listed in INA's Exhibit B should not have been charged against the general liability aggregate limits of the INA Policies.

11. The bodily injury alleged in the claims listed in INA's Exhibit C did not occur during EMCOR's ongoing work.

12. The claims listed in INA's Exhibit C are completed operations claims as EMCOR had completed its work, returned the site to its intended use and left the scene prior to the accident.

13. The claims listed in INA's Exhibit C were improperly classified as general liability claims and payments should not have been charged against the general liability aggregate limits of the INA Policies.

14. The 1992-1993 general liability aggregate limits did not properly exhaust on June 9, 1998.

15. The 1993-1994 general liability aggregate limits did not properly exhaust on November 3, 1997.

16. The 1994-1995 general liability aggregate limits did not properly exhaust on October 28, 1998.

17. EMCOR made statements regarding the exhaustion of the general liability aggregate limits of the 1994-95 INA Policies in the *Port Authority* action based in good faith reliance on apparently false statements made to it by its insurer, INA.

18. Pursuant to the CIPA, both EMCOR and INA agreed to be governed by Pennsylvania law in light of any disputes arising under that agreement which incorporated by reference the three INA Policies.

19. The purpose of the Finite Agreement was to transfer from EMCOR to INA the obligation to make the payments for defense and indemnity of claims subject to the underlying retentions and line of business aggregate limits in exchange for an up front payment by EMCOR, of $22,500,000.

20. ESIS and INA cannot be considered separate entities as their employees were intermingled in their duties and in who they reported to.

21. INA did not have the right at its sole discretion to pay any amount within the deductible to settle any claim or suit.

THE PLAINTIFF,
EMCOR Group, Inc.

By: _____
Jeffrey J. Vita (Federal Bar # ct08036)
Heidi H. Zapp (Federal Bar # ct24655)
Saxe Doernberger & Vita, P.C.
Attorneys for the Plaintiff
EMCOR Group, Inc.
1952 Whitney Avenue
Hamden, Connecticut 06517
(203) 287-8890

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------X
EMCOR GROUP, INC.                : Civil Action No.
                                 Docket 3:00-CV-2211 (AVC)
            Plaintiff,           :
                                 Judge Alfred V. Covello
v.                               :

INSURANCE COMPANY
OF NORTH AMERICA                 :

            Defendant,           :
                                 December 6, 2004

---------------------------------------------------X

## CERTIFICATION

This is to certify that the foregoing was mailed, postage prepaid, on this the 6th day of December, 2004 to the following:

Thomas Leghorn, Esq. (ct22106)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY  10601
914-323-7000

Duncan B. Hume, Esq. (ct05581)
Hume & Associates
One Landmark Square
Stamford, CT 06901-2620
(203) 348-7252

Joseph B. Burns, Esq. (ct00403)
1 State Street
Hartford, CT 06103
(860) 549-1000

_____
Jeffrey J. Vita, Esq.