820446.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------------- x
EMCOR GROUP, INC.,                          :     Civil Action No.
                                            :     Docket 3:00-CV-2211 (AVC)
                Plaintiff,                  :
                                            :     Judge Alfred V. Covello
v.                                          :
                                            :     December 6, 2004
INSURANCE COMPANY OF NORTH AMERICA.         :
                                            :
                Defendant.                  :
------------------------------------------------------------------- x


**INSURANCE COMPANY OF NORTH AMERICA'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND IN SUPPORT OF ITS CROSS-MOTION**


WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendant
INSURANCE COMPANY OF
NORTH AMERICA
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000
Fax (914) 323-7001
File No. 00756.35967

Rome McGuigan Sabanosh, P.C.
One State Street
Hartford, Connecticut 06103
(860) 549-1000
Fax (860) 724-3921

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Wright*, 468 U.S. 737, 751, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984) ............................ 23

*Celotex Corp. v. Catrett*, 477 U.S. 317, 328, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ............. 14

*Circuit Irving Trust Co. v. United States*, 221 F.2d 303, 305 (2d Cir.1995), *cert. denied* 350 U.S. 828 (1955) ................................................................................................................................ 14

*City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983) ... 23

*FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) ...................................................................... 14

*Flast v. Cohen*, 392 U.S. 83, 99-100, 20 L. Ed. 2d 947, 88 S. Ct. 1942 (1968) ........................... 23

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 60 L. Ed. 2d 66, 99 S. Ct. 1601 (1979) ........................................................................................................................................ 23

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir. 1995) ......................................... 23

*Interface Flooring Sys. v. Aetna Cas. & Sur. Co.*, 261 Conn. 601, 804 A.2d 201 (2002) .......... 9,10

*In re United States Catholic Conference (Abortion Rights Mobilization, Inc. v. Baker)*, 885 F.2d 1020, 1023-24 (2d Cir. 1989), *cert. denied* 495 U.S. 918, 109 L. Ed. 2d 309, 110 S. Ct. 1946 (1990) ........................................................................................................................................ 23

*Lund's Inc. v. Chemical Bank*, 870 F.2d 840, 845 (2d Cir. 1989) ................................................... 5

*Mack v. United States*, 814 F. 2d 120, 124 (2d Cir. 1987) ........................................................... 13

*Manufacturers Casualty Insurance Company v. Goodville Mutual Insurance Company*, 403 Pa. 603, 607-608, 170 A.2d 571, 573 (1960) .................................................................................. 21

*McCabe v. Old Republic Insurance Company*, 425 Pa. 221, 223, 228 A.2d 901, 903 (1967) ..... 21

*Reichhold Chemicals v. Hartford Accident and Indem. Co.*, 243 Conn. 401, 703 A.2d 1132 (1997), *reversed on other grounds* 252 Conn. 774, 750 A.2d 1051 (2000) ...................... 5,6,10

*Sadowski v. Dell Computer Corp.*, 268 F. Supp. 2d 129, 135 (D. Conn. 2003) (Droney, J.) ....... 10

*Township of Springfield v. Ersek*, 660 A.2d 672, 676 (Commonwealth Ct. 1995) ..................... 21

*U.S. Underwriters Insurance Co. v. Liberty Mutual Insurance Co.*, 80 F.3d. 90, 94-95 (3d Cir. 1995) .......................................................................................................................................... 21

- ii -

**STATUTES**

U.S. Const. Art. III, § 2, cl. 1 .................................................................................................. 23

**TREATISES**

*Appelman on Insurance* § 5.3 (2004) ........................................................................................ 17
Restatement (Second) of Conflict of Laws. § 6 ........................................................................ 6

TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................................1

STATEMENT OF FACTS .........................................................................................................3

ARGUMENT ............................................................................................................................. 4

POINT I    THE SUBSTANTIVE LAW OF NEW YORK APPLIES TO THE INTERPRETATION OF THE INSURANCE POLICIES ISSUED TO JWP, INC., A NEW YORK BASED COMPANY....................................................................................................4

POINT II   THE AFFIDAVIT OF REX THRASHER AND UNSUPPORTED EVIDENTIARY STATEMENTS IN EMCOR'S MEMORANDUM OF LAW MUST BE DISREGARDED BY THIS COURT ..............................................................................................11

   A.   THRASHER AFFIDAVIT........................................................................11

   B.   EMCOR'S ASSERTIONS THAT ARE NOT SUPPORTED BY ANY CITED EVIDENCE OR CONTRADICTED BY THE TESTIMONY F REX THRASHER SHOULD BE DISREGARDED......................................................................14

POINT III  EMCOR IGNORES THE ELEMENT OF "ARISING OUT OF" AS USED IN THE POLICY DEFINITION OF "PRODUCTS-COMPLETED OPERATIONS HAZARD"................................................................................................16

POINT IV   EMCOR FAILS TO DEMONSTRATE THAT 40 OF THE CLAIMS UPON WHICH IT SEEKS SUMMARY JUDGMENT AROSE OUT OF ITS WORK BECAUSE THERE WAS NO PROXIMATE CAUSATION, AS REQUIRED UNDER NEW YORK LAW..........................................................................................................18

POINT V    EMCOR FAILS TO DEMONSTRATE THAT 40 OF THE CLAIMS UPON WHICH IT SEEKS SUMMARY JUDGMENT AROSE OUT OF ITS WORK BECAUSE THERE WAS NO ELEMENT OF CAUSATION, AS REQUIRED UNDER EITHER CONNECTICUT OR PENNSYLVANIA LAW ..............................................................................20

   A.   EVEN IF CONNECTICUT LAW APPLIES, EMCOR FAILS TO SHOW THAT THE 40 CLAIMS FALL WITHIN THE DEFINITION OF "PRODUCTS-COMPLETED OPERATIONS HAZARD"..................................................20

   B.   EVEN IF PENNSYLVANIA LAW APPLIES, EMCOR FAILS TO SHOW THAT THE 40 CLAIMS FALL WITHIN THE DEFINITION OF "PRODUCTS-

820792.1

|         |                                                                                                                                                                                                                                |       |
|---------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|
|         | COMPLETED OPERATIONS HAZARD"………………………………………..21                                                                                                                                                                                 |       |
| POINT VI | EMCOR IS JUDICIALLY ESTOPPED FROM ASSERTING THAT THE CLAIMS SUBMITTED FOR COVERAGE UNDER THE 1993-1994 AND THE 1994-1995 POLICIES ARE COMPLETED OPERATIONS …………………………………………………………………………………...……………..20 | |
| POINT VII | THIS COURT LACKS SUBJECT MATTER JURISDICTION WITH RESPECT TO CLAIMS SUBMITTED FOR COVERAGE UNDER THE 1992-1993 POLICY IN WHICH NO LOSS PAYMENT WAS MADE AND FOR WHICH EMCOR DID NOT PAY ANY DEFENSE COSTS……………………………………………………..23 | |
| POINT VIII | EMCOR'S MOTION MUST BE DENIED ON THE THREE CLAIMS THAT IT DID NOT RECEIVE COURT LEAVE TO ADD TO ITS THIRD AMENDED COMPLAINT …………………………………………………………………………………………..25 | |

820792.1

**PRELIMINARY STATEMENT**

Insurance Company of North America ("INA") respectfully submits this Memorandum of Law and annexed exhibits in opposition to plaintiff's motion for partial summary judgment and in support of its Cross Motion for Summary Judgment dated December 6, 2004.[1]

Plaintiff, EMCOR, Inc., ("EMCOR") alleges that INA prematurely depleted the aggregate general liability policy limits specified in three general liability policies issued to EMCOR's predecessor, JWP, Inc., a company identified in each policy as a New York company. EMCOR alleges in its third amended complaint that INA improperly coded 106 claims (not 110 claims as EMCOR now states in its motion for partial summary judgment) as general liability claims, thereby depleting the general aggregate limit of liability provided in each of the three policies. EMCOR asserts that these claims should have been classified as completed operations based upon the definition of the term "products-completed operations hazard" that is contained in each of the three policies.

Based upon the arguments contained in INA's initial motion and EMCOR's motion seeking partial summary judgment, the parties agree upon the following two key issues:

1. The definition of the term "products-completed operation" found in each of the policies states that the bodily injury or property damage must arise out of EMCOR's work; and,

---

[1] For the sake of clarity, a brief review of the procedural posture of this matter is warranted. Pursuant to the Court's scheduling order, the parties were to file their respective summary judgment motions on November 15, 2004, which both parties did. INA moved for such relief, asserting that it was entitled to a judgment as matter of law with regard to the claims it included in Exhibits "A", "B" and "C". The exhibits were included with its initial motion papers. Concurrently, EMCOR moved for summary judgment. It asserted that the coding issue with respect to 47 claims could be resolved as a matter of law. Now, INA cross moves. *See* INA Notice of Cross Motion, dated December 6, 2004, with respect to the claims in Exhibits "A","B", "C" & "D" annexed to the declaration of Thomas
(continued . . . )

- 2 -

2. The definition of the term "products-completed operation" is unambiguous.

INA's motions for partial summary judgment must be granted and EMCOR's motion for partial summary judgement must be denied because[2]:

1. As demonstrated by INA in its initial motion, the definition of the term "products-completed operations hazard" requires a finding that the bodily injury or property damage arose out of EMCOR's work. See INA Memorandum of Law submitted in support of its motion for partial summary judgment.

2. The evidence with respect to the claims listed in Exhibit "A" to the declaration of Thomas A. Leghorn demonstrates that these claims were properly classified as general liability claims and thus the cross-motion should be granted; or, alternatively, the evidence relied upon by EMCOR shows that there is a question of material fact that the bodily injury or property damage arose from EMCOR's work as required by the policies. Thus EMCOR's motion should be denied. See Points II, III, IV and V.

3. EMCOR suffered no damage by the coding of the claims listed in Exhibit "B" to the declaration of Thomas A. Leghorn and thus this Court lacks subject matter jurisdiction with respect to these claims. See Point VII.

---

( . . . continued)
A. Leghorn. This Memorandum of Law is submitted: (1) in opposition to EMCOR's motion for partial summary judgment; and, (2) in support of INA's Cross-Motion.
[2] INA has already moved for partial summary judgment on the following claims that are also the subject of EMCOR's motion: Gartenberg v. Lyons Dodge, Reinhard Aff'd ¶ 30.13; Freda v. Welsbach Corp., Reinhard Aff'd ¶ 30.8; State Farm Mutual Auto. Ins. Co. a/s/o Robert Napolitano v. The City of New York, Reinhard Aff'd ¶ 30.14; Roth v. Welsh, Reinhard Aff'd ¶ 30.16; Thercier v. Pierre, Reinhard Aff'd ¶ 30.44; Skulsky v. Welsbach Electric Corp., Reinhard Aff'd 30.41; Lopez v. Thrifty Car Rental, Reinhard Aff'd ¶ 30.26; Waldron v. The City of New York, Reinhard Aff'd ¶ 30.45; Clerge v. JWP Welsbach Corp., Reinhard Aff'd ¶ 30.31.

819547.5

4. EMCOR is judicially estopped from asserting that the claims listed in Exhibit "C" to the declaration of Thomas A. Leghorn were improperly coded because of positions it advanced in litigation in New York. See Point VI and INA's initial motion for partial summary judgment wherein INA has sought summary judgment on these claims.

5. EMCOR wrongly seeks summary judgment with respect to three claims listed in Exhibit "D" to the declaration of Thomas A. Leghorn that are not listed as a disputed claim in the third amended complaint. See Point VIII.

6. The affidavit of Rex Thrasher, to the extent relied upon by EMCOR in support of its position on the reasons for the establishment of the aggregate limits under the policies, must be disregarded by the Court because it is contradicted by his testimony as a Rule 30(b)(6) witness. See Point II.

7. Numerous statements relied upon by EMCOR must be disregarded because: (1) EMCOR fails to cite any supporting proof; (2) the proof it relies upon is wrong; or, (3) the proof is contradicted by the deposition testimony of EMCOR witnesses. See Point II.

According, INA' cross motion must be granted.

## STATEMENT OF FACTS

In the interest of brevity, INA respectfully refers the Court to the Statement of Facts contained in INA's Memorandum of Law, dated November 15, 2004, the accompanying Statement of Undisputed Facts pursuant to Rule 56 (a)(1) and the exhibits attached to the declaration of Thomas A. Leghorn.

- 3 -

819547.5

# ARGUMENT

## POINT I

### THE SUBSTANTIVE LAW OF NEW YORK APPLIES TO THE INTERPRETATION OF THE INSURANCE POLICIES ISSUED TO JWP, INC., A NEW YORK BASED COMPANY

The INA motions for partial summary judgment and the EMCOR motion involve the same issue: the meaning of certain key terms contained in the three general liability policies issued to EMCOR's predecessor, JWP, and whether the claims for which each party is seeking summary judgment were properly coded as general liability claims. In its initial Memorandum of Law, INA demonstrated that the substantive law of New York should be applied in the interpretation of the policy terms. *See* INA Memorandum of Law, at 12-13.

EMCOR believes that the substantive law of Pennsylvania applies because of a choice of law provision contained in an agreement known as the "Finite Agreement" and because INA's principal place of business is Pennsylvania. EMCOR is wrong.

The central issue involved in the motions – whether the aggregate general limit in the three policies was prematurely exhausted by the improper coding of 106 claims – will be determined by the definitions of certain key terms within each of the three policies: the definition of "products-completed operations hazard", "Your work" and "arising out of" as used in the definition of "products-completed operations hazard". The Finite Agreement is irrelevant because these terms are not defined in the Finite Agreement and the Finite Agreement does not set forth the aggregate general limits. Moreover, applying Connecticut's choice of law rules, New York law should govern this issue. At the time each policy was issued, JWP was located in Rye Brook, New York, as shown on the declarations page of each policy. The insurance contracts were negotiated, executed, and delivered in New York by INA's underwriting department and JWP/EMCOR's broker both of which were located in New York.

- 4 -

819547.5

Moreover, in prior lawsuits brought in New York, involving two of the relevant three polices, EMCOR never asserted that Pennsylvania law applied. In fact, New York law was applied. Simply put, EMCOR has not shown any overriding reason to substitute New York law by that of Pennsylvania, as required under Connecticut's choice of law jurisprudence.

As EMCOR concedes, in a diversity case, such as the case at bar, the district court applies the same choice of law rules as the state courts in the state in which it sits. *Lund's Inc. v. Chemical Bank*, 870 F.2d 840, 845 (2nd Cir. 1989). Thus, Connecticut's choice of law jurisprudence applies.

The seminal Connecticut decision that discusses Connecticut's choice of law jurisprudence is *Reichhold Chemicals v. Hartford Accident and Indem. Co.*, 243 Conn. 401, 703 A.2d 1132 (1997), *reversed on other grounds* 252 Conn. 774, 750 A.2d 1051 (2000). This decision, issued by Connecticut's highest court, adopted the "most significant relationship" test, as set forth in the Restatement (Second) of Conflict of Laws. *Id.* at 407, 1135 (citing 1 Restatement [Second], Conflict of Laws § 187 et seq. [1971 and Sup. 1988]).

The *Reichhold Chemicals* Court determined that the most significant relationship approach of the Restatement (Second) should be followed in contract cases. *See Id.* at 406-414, 1135-1138. In so determining, the Court adopted "the . . . general presumption [of the Restatement (Second), supra, § 188], which provides that unless another state has an **overriding** policy-based interest in the application of its law, the law of the state in which the bulk of the contracting transactions took place should be applied." *Id.* at 414, 1138 (emphasis added). The Court also adopted "the . . . special presumption for liability insurance contracts [of the Restatement (Second), supra, § 193], which provides that unless another state has an **overriding**

policy-based interest in the application of its law, the law of the state in which the insured risk is located should be applied." *Id.* (emphasis added).

Taking these principles together, the Connecticut Supreme Court concluded that "the most significant interest test mandates that, in the absence of **extraordinary** circumstances, the law of the state where the principal insured risk is located will apply." *See Reichhold Chemicals*, 252 Conn. 774, 788-789, 750 A.2d 1051, 1059, *supra* (emphasis added).

Applying these principles to the facts at bar, it is clear that New York law should apply as that is the jurisdiction where the insured risk was located. As shown on the declarations page of each policy, JWP was located in Rye Brook, New York at the time that each of the three policies was issued. *See* Exhibits 3, 4 and 5 that were submitted in connection with INA's initial motion. Further, EMCOR admits in its motion that "[t]he overwhelming majority of these claims involve EMCOR's wholly owned indirect subsidiary, Welsbach Electric Corporation," which is a "company that contracts with municipalities in and around the New York area to install, maintain, and repair all traffic signals, street lights, and pedestrian walk signals within the municipality for a specified period of time." EMCOR's Memorandum in Support of its Motion for Summary Judgment at pp. 3-4.[3]

Other factors support applying New York law to EMCOR's contract claims. The place of contracting, negotiating, performing and the place of business of the parties should be taken into account when performing the significant factors test. *See Reichhold Chemicals*, at 252 Conn. 774, 783, 750 A.2d 1051, 1056, *supra* (citing 1 Restatement (Second), Conflict of Laws § 6). Here, the insurance contracts were negotiated, executed, placed, underwritten and delivered

---

[3] EMCOR is moving for summary judgment, asserting that 47 of the disputed 106 claims can be resolved as matter of law. All 47 of these claims arise out of claims against Welsbach. *See* EMCOR's Memorandum of Law in Support of Cross Motion for Summary Judgment at p. 5.

in New York and Marsh & McLennan – EMCOR's insurance broker – was located there. *See* Affidavit of Rona Taylor, the underwriter for the policies at issue, attached as Exhibit "E" to the Leghorn declaration; the Affidavit of Michael S. Kelly, a Vice President of Marsh & McLennan, attached as Exhibit "F" to the Leghorn declaration.

The paramount interest of New York on the issue involved in the motions for summary judgment and policy interpretation is demonstrated by Mr. Kelly's affidavit submitted in an action commenced by INA against JWP, EMCOR and others. Mr. Kelly, Vice President of EMCOR's own broker, Marsh & McLennan, swore under oath to a New York court that:

1. Commencing in 1992, Marsh & McLennan, JWP, Inc.'s broker, represented JWP's interest in the negotiation, placement, and funding of a comprehensive, multi-risk insurance program which included, among other things, JWP's purchase of the 1992-1993 general liability policy;

2. Marsh & McLennan was in 1992 headquartered in New York County and maintained its principal place of business at 1166 Avenue of the Americas, New York, New York 10036;

3. Marsh & McLennan participated in the negotiation of the terms, conditions, nature, scope and extent of coverages afforded under the INA contract with executives and representatives of INA's Special Risk underwriting division which was headquartered in New York County and was located at 195 Broadway, New York, New York;

4. The discussions and negotiations concerning the nature, scope and extent of coverages afforded under the INA contract took place principally in New York County, discussions and negotiations concerning the extent of

        the self-insured retentions assumed by the insureds under the INA contract took place in New York County, discussions and negotiations concerning which JWP-affiliated entities and other entities were entitled to seek insurance coverage under the INA contract took place in New York County;

5.    INA issued the INA policy to JWP in New York County;

6.    The INA policy issued to JWP in New York County was executed by INA executives in New York County and JWP paid its premiums to INA in New York County; and,

7.    Most of the Marsh & McLennan brokers who worked on the placement of the INA contract and the JWP insurance program for the 1992-93 policy year are currently located in 1995 in New York County.

In her affidavit (Exhibit "E") Rona Taylor, INA's lead underwriter responsible for the negotiation, placement, underwriting and funding of the three policies at issue, echoes Mr. Kelly's statements that the negotiations, placement, underwriting, funding, and issuance of the three relevant policies (as well as other policies issued to JWP/EMCOR) took place in New York.

As EMCOR's third amended complaint and prior complaints make clear, each of the seven causes of action are based upon the policies, not the Finite Agreement. EMCOR's lead legal argument in its motion is captioned "Interpreting the INA Policies is a Question of Law to be Determined by the Court." EMCOR Memorandum of Law at pg. 8. Thereafter, EMCOR's discussion is based upon an interpretation of the policies. Indeed, as EMCOR admits: "At issue, for purposes of this summary judgment motion, is the definition of the 'completed operations

hazard' under the INA Policies. *Id.* at 9. Ms. Reinhard testified that INA has been sued on the basis that it violated the three policies and the policies are the subject of the litigation. Reinhard deposition dated February 3, 2004, at pg. 163.

EMCOR argues that Pennsylvania law applies to the issues involved in its motion because it is a national corporation with business that spreads throughout the United States, that "the risks ensured under the INA policies can and do occur literally anywhere in the United States" and, therefore, since INA is located in Pennsylvania "there is no state with a materially greater interest in this insurance coverage dispute than Pennsylvania. However, this very argument was specifically rejected by the Connecticut Supreme Court.

In *Interface Flooring Sys. v. Aetna Cas. & Sur. Co.*, 261 Conn. 601, 804 A.2d 201 (2002), the insured was incorporated in Georgia and its principal place of business was there. The insured maintained manufacturing plants in Georgia and marketed and sold its products throughout the United States and abroad. The insured purchased general liability coverage from an insurer located in Connecticut. The insured was sued for copyright infringement and anti-competitive trade practices by one of its competitors. The insured commenced an action in Connecticut for coverage under the policy against its insurer.

The insured asserted that Connecticut law should apply. The insured argued that because the underlying claim alleged copyright infringement and unfair and anti-competitive trade practices that occurred throughout the United States and abroad, it was impossible to ascertain the principal location of the insured risk. The insured argued that the Court should apply Connecticut law because the insurer was located in Connecticut and thus "Connecticut has an interest in applying its laws * * * with regard to insurance contracts in order to protect the

'justified expectations' of policy holders who purchase policies from Connecticut insurance companies." *Id.* at 610-611, at 206.

The Connecticut Supreme Court rejected the insured's argument and held that Georgia law applied. Applying the significant contacts test, the Court declined to decide whether the insured risk was located in Georgia. Instead, it concluded that, notwithstanding whether Georgia was the principal location of the insured risk, the general presumption for contracts as outlined by *Reichhold Chemicals* compelled that Georgia law apply. *Id.* at 607-608, at 205. The Court noted that the choice of law analysis outlined by *Reichhold Chemicals* included a general presumption that "when the place of negotiation and the place of performance are in the same state, the local law of this state will usually be applied." *Id.* at 609-610, at 206 (*quoting Reichhold Chemicals, Inc. v. Hartford Accident & Indemnity Co., supra*, at 414, at 1138. Noting that the contract was entered into in Georgia by the insured and the insurer, that Georgia was the place of performance of the contract because the insured's headquarters and several of the insured's manufacturing facilities were located there, the Court concluded that Georgia law should apply as that was the location where "the bulk of the contracting transactions" took place. *Id.* at 610, at 206. The Court added that the insured's contention that Connecticut law should apply – as that was the location where the insurer was incorporated – was not enough to "override the presumption in favor of the applicability of Georgia law." *Id.* at 611-612, at 207; *see also Sadowski v. Dell Computer Corp.*, 268 F. Supp. 2d 129, 135 (D. Conn. 2003) (Droney, J.) (citing *Interface Flooring* with approval).

The application of *Interface Flooring* to the facts at issue here mandates that this Court apply the law of New York to EMCOR's contract claims as this is location where "the bulk of the contracting transactions" took place. As in *Interface Flooring*, here, the insurance contracts

- 10 -

819547.5

were negotiated, executed, placed, underwritten and delivered in New York. Marsh & McLennan – EMCOR's insurance broker – was located in New York and at the time that each policy was negotiated and issued, JWP was located in Rye Brook, New York.

In summary, New York applies.

## POINT II

### THE AFFIDAVIT OF REX THRASHER AND UNSUPPORTED EVIDENTIARY STATEMENTS IN EMCOR'S MEMORANDUM OF LAW MUST BE DISREGARDED BY THIS COURT

In an obvious attempt to create an impression that the primary coverage purchased by EMCOR's predecessor, JWP, Inc., was products-completed operations coverage, EMCOR relies upon the affidavit of Rex Thrasher and/or relies upon "factual" statements unsupported by the evidence it cites. The Court must reject these attempts.

A.   **Thrasher Affidavit**

In its Memorandum of Law, EMCOR wrongly attributes a number of statements concerning the policy and the policy aggregate limits to Rex Thrasher's affidavit. These will be chronicled shortly but, at the outset, it is important for this Court to be aware of what Mr. Thrasher actually states in his affidavit and, more importantly, in his deposition testimony.

In his affidavit, Mr. Thrasher states, under oath, that "EMCOR purchased the INA Policies with separate aggregate limits for both GL claims and Completed Operation claims due to the nature of EMCOR's business which included exposure to both GL risks and Completed Operations risks." Thrasher affidavit, ¶ 10. Mr. Thrasher's statement is flatly contradicted by his sworn deposition testimony.