Mr. Thrasher was deposed both as a fact witness and as EMCOR's 30(b)(6) witness with respect to the topic of the negotiations between INA and EMCOR for the 1992-1993, 1993-1994 and the 1994-1995 policies issued by INA to EMCOR/JWP, Inc.  Mr. Thrasher testified that:

1.   JWP's only consideration for selecting the general aggregate limit of $2,000,000 and the aggregate completed operations limit of $3,000,000 was the cash collateral that JWP would be required by CIGNA to make. Exhibit "H", [4] Thrasher deposition testimony, dated June 4, 2004 at pp. 26, 28.

2.   The goal at the time of the first policy was to have a low general aggregate limit because of the required cash collateral and that resulted in the $2,000,000 limit. Exhibit "H", Thrasher deposition testimony, dated June 4, 2004 at pp. 26.

3.   Thrasher did not know whether EMCOR or JWP considered the nature of its business in its evaluation of the limits it wanted for the general aggregate limit. Thrasher deposition testimony, dated June 4, 2004 at pp. 27-28.

4.   Thrasher did not know of any other considerations that EMCOR/JWP had in determining the general aggregate limit other than the collateral requirements. Exhibit "H", Thrasher deposition testimony, dated June 4, 2004 at p. 28.

---

[4] Mr. Thrasher testified that collateral was required because the policies had high deductibles and EMCOR, due to its financial condition, was not able to reimburse CIGNA for claim payments made on EMCOR's behalf. The collateral could be used to fund the deductible obligations if necessary. *See* Thrasher deposition testimony at p. 27.  (The reference to CIGNA is a term that was used after the merger in 191 of Connecticut General and INA).

5.   The same criteria was used by EMCOR/JWP with respect to its evaluation of the product completed operations aggregate limit. Exhibit "H", Thrasher deposition testimony, dated June 4, 2004 at p. 28.

6.   Thrasher did not know why the aggregate limit for products completed operations was higher than the general aggregate limit. Exhibit "H", Thrasher deposition testimony, dated June 4, 2004 at pp. 30, 36.

7.   The same considerations were used by EMCOR/JWP with respect to the 1993-1994 policy as were used for the 1992-1993 policy. Exhibit "H", Thrasher deposition testimony dated June 4, 2004 at pp. 31, 32, 40-41.

8.   EMCOR had the same consideration, the collateral, with respect to the 1994-1995 aggregate limits. Exhibit "H", Thrasher deposition testimony dated June 4, 2004 at pp. 35-36.

Clearly, the above deposition testimony is at odds with paragraph 10 of the Thrasher affidavit. Mr. Thrasher testified that he did not know whether EMCOR/JWP considered the nature of its business in its evaluation of the limits it wanted for the general aggregate limit. He had no knowledge, despite being EMCOR's 30(b)(6) witness, about the reason for the monetary difference between the generous aggregate and completed operations limits. The only consideration he could cite for the establishment of the limits was the need to post collateral.

In light of the disparity between paragraph 10 of the Thrasher affidavit and his deposition testimony, the statements contained in paragraph 10 of the Thrasher affidavit must be disregarded by this Court. *See Mack v. United States,* 814 F. 2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment").

- 13 -

**B.     EMCOR's assertions that are not supported by any cited evidence or contradicted by the testimony of Rex Thrasher should be disregarded**

The party moving for summary judgment bears the initial burden of production to demonstrate that the requisite standard for summary judgment as set forth in Rule 56(c) has been met. *See FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) ("[t]hus on appeal as well as in the district court, a movant for summary judgment must bear the burden of production").   The movant cannot meet this burden merely by asserting that summary judgment should be granted. *See Circuit Irving Trust Co. v. United States*, 221 F.2d 303, 305 (2d Cir.), *cert. denied* 350 U.S. 828 (1955) (mere unsubstantiated assertion of claim arising out of probate dispute cannot, without more, defeat summary judgment motion).   Nor is the initial burden satisfied by conclusions and unsupported factual allegations.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 328, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (White, J., concurring) (to discharge its initial burden in seeking summary judgment, movant must do more than simply allege that claimant non-movant has failed to prove its case).   The moving party must inform the court for the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 2548, 265 (quoting Fed. R. Civ. P. 56(c)).

The following statements by EMCOR in its memorandum of law should be disregarded by this Court for the reasons following each statement.

1.      When negotiating the implementation of these policies, INA was well aware of the nature of EMCOR's business.    EMCOR Memorandum of Law at 9.

EMCOR fails to cite any evidence in support of this statement.

2.      INA was aware at the outset of its relationship with Welsbach that the majority of its work would involve completed operations.[5]   EMCOR Memorandum of Law at 9-10.

EMCOR fails to cite any evidence in support of this statement.

3.      EMCOR purchased products completed operations coverage knowing that as a services company it had significant exposure for liability resulting from off-site claims. Affidavit of Thrasher at ¶ 10.    EMCOR Memorandum of Law at 11.

Paragraph 10 of the Thrasher affidavit simply does not say this.  As also discussed above, the paragraph must be disregarded based on the Thrasher deposition testimony.

4.      As further evidence of the extent of EMCOR's need for products completed operations coverage, EMCOR purchased a higher limit for its product completed operations coverage, citing the Reinhard affidavit at ¶¶ 9,10. EMCOR Memorandum of Law at 11-12.

EMCOR's reference to paragraph 9 of the Reinhard affidavit is incorrect since this paragraph does not state this.  Ms. Reinhard was not involved in the negotiations of any of these three policies since she joined EMCOR in February or March 1995, after the date the 1994-1995 policy was issued.  Exhibit "I", Reinhard deposition dated February 3, 2004 at p. 37.  Thus, she has no personal knowledge why this limit was obtained.  Reinhard's job did not involve the negotiations of the policies. Reinhard deposition dated February 3, 2004 at p. 41, 44-45. Reinhard testified that she has never fully read each of the policies.  Exhibit "J", Reinhard

---

[5]  EMCOR asserts INA was aware that the INA policies issued to Welsbach provided separate aggregate limits for general liability claims and completed operations claims. No policies were issued to Welsbach, they were issued to JWP, Inc.  Welsbach was an insured under the policies.

(continued . . . )

deposition dated February 12, 2004 at p.105. Thrasher, who was with EMCOR/JWP at the time these policies were issued, was involved in the negotiation of the last policy and was EMCOR's corporate designee[6] to testify about the policies, could not identify any business reasons for why the limits were established as they were and did not know why there was a higher limit for completed operations coverage, but could only state that the need for collateral was EMCOR's sole criteria in selecting the limits. Exhibit "H", Thrasher deposition testimony dated June 4, 2004 at pp. 26-28, 30-31, 32, 35-36, 40-41.

5.      INA underwrote EMCOR's risk as a services company with completed operations exposure in connection with its sale of the INA Policies.

EMCOR fails to cite any evidence in support of this statement.

## POINT III

### EMCOR IGNORES THE ELEMENT OF "ARISING OUT OF" AS USED IN THE POLICY DEFINITION OF "PRODUCTS-COMPLETED OPERATIONS HAZARD"

Both INA and EMCOR agree that the three policies unambiguously define the term "products-completed operations hazard". INA and EMCOR also agree that the definition has three elements:

1.      The "bodily injury" and "property damage" occurs away from premises you own or rent; and,

2.      The "bodily injury" and "property damage" arises out of "Your product" or "Your work"; and,

---

( . . . continued)

[6] Thrasher testified that he spoke with Susan Reinhard in preparation for his deposition as a 30(b)(6) witness. Exhibit "H", Thrasher deposition dated June 4, 2004 at pp.12-13. Despite this meeting, he could not
(continued . . . )

3.    Either the product is not in EMCOR's possession or EMCOR's work had been completed.

INA and EMCOR also agree that the claims at issue in this case involve either bodily injury or property damage that occurred away from EMCOR's premises.

Despite EMCOR's recognition that the policy definition requires that the bodily injury or property damage must arise out of its work, EMCOR ignores this requirement in the application of the definition to the claims for which it seeks summary judgment. This is readily observable when one performs even a casual reading of the evidence relied upon by EMCOR. Giving EMCOR the benefit of doubt, the evidence, at best, shows that the Welsbach work on a traffic light had been completed and the light had been placed back into operation prior to the alleged accident.[7] EMCOR completely ignores the "arising out of" element of the definition of "products-completed operations." As such, EMCOR violates the fundamental rule of policy and contract interpretation: "courts must assume that the drafters of policies use all language for a purpose and therefore it must be given effect where a plain and ordinary interpretation will render the provision clear and unambiguous." 2-5 *Appelman on Insurance* § 5.3 (2004) (cited authorities omitted). For this reason alone, EMCOR's argument is flawed and the motion should be denied.

---

( . . . continued)
attribute the reasons for setting the aggregate competed operations limits in his deposition. Now, mysteriously, Ms. Reinhard remembers the reason this limit was established at $3,000,000.

[7] In two claims, Gartenberg (number 13 in the Reinhard affidavit) and Thercier (number 44 in the Reinhard affidavit), the evidence in actuality shows that the work was ongoing at the time of the accident.

819547.5

## POINT IV

**EMCOR FAILS TO DEMONSTRATE THAT 40 OF THE CLAIMS THAT IT SEEKS SUMMARY JUDGMENT AROSE OUT OF ITS WORK BECAUSE THERE WAS NO PROXIMATE CAUSATION, AS REQUIRED UNDER NEW YORK LAW**

In its Memorandum of Law submitted in support of its motion for summary judgment, INA demonstrated that in New York, coverage under a completed operations provision requires a proximate cause relationship between the bodily injury or property damage and EMCOR's work. *See* INA Memorandum of Law at pp. 17-20. For the sake of brevity, INA will not repeat its discussion herein.

The evidence cited by EMCOR in support of its position that 40 of the claims fall within the "products-completed operations hazard" definition does not support a finding the bodily injury or property damage was proximately caused by EMCOR's work. INA lists these claims and then fully discusses the evidence with respect to each of these 40 claims in Exhibit "A", attached to the declaration of Thomas A. Leghorn.

The insufficiency of the evidence proffered by EMCOR can best be illustrated by three claims where plaintiff fails to show any causation between the claimed injury and EMCOR's work.

In <u>Barnett/Connolly v. Sikorsky</u>, the Affidavit of Brandon Frederich, Welsbach's work order, the Traffic Signal Maintenance History and the complaint cited by EMCOR do not demonstrate that the bodily injury arose out of EMCOR's work on the light. The decision and order of Judge Allan L. Winick of New York Supreme Court, Nassau County, dated November 13, 1995, shows that there was no evidence that EMCOR's work caused the accident. Judge Allan L. Winick found that, "Since there was a working red light for the westbound direction of

traffic on East Merrick Road at the time of the accident, the traffic light would not as a matter of law have been a proximate cause of the accident.

In <u>Lux/Keanna v. The Board of Education of the City of New York</u>, Welsbach's work record and the complaint cited by EMCOR do not demonstrate that the bodily injury arose out of EMCOR's work on the traffic light.  The decision and order of Judge Harry H. Kutner of New York Supreme Court, Nassau County establishes that there was no evidence that the accident arose out of EMCOR's work. In granting Welsbach's motion for summary judgment, Judge Kutner held that "…in the absence of any connection to the alleged failure of the traffic control signals to operate properly, J.W.P. Welsbach may not be liable for contractual indemnity."

In <u>LaRosa v. Jenkins</u>, the intersection history, maintenance report and Affidavit of Edward Stregar cited by EMCOR do not establish that the bodily injury arose out of EMCOR's work on the traffic light. The decision and order of Judge Thomas V. Polizzi of New York Supreme Court, Queens County establishes that there was no evidence that the accident arose out of EMCOR's work. Judge Polizza held that, "Defendant Welsbach has also proffered evidence sufficient to show, prima facie, that its prior repair to the subject traffic signal, performed over three weeks before plaintiff's accident, involved a condition which was completely unrelated to the malfunction which existed on the date of the accident herein."

Accordingly, EMCOR's motion with respect to these 40 claims should be denied and INA's cross-motion granted.

819547.5

<u>POINT V</u>

**EMCOR FAILS TO DEMONSTRATE THAT 40 OF THE
CLAIMS THAT IT SEEKS SUMMARY JUDGMENT
AROSE OUT OF ITS WORK BECAUSE THERE WAS NO
ELEMENT OF CAUSATION, AS REQUIRED UNDER
EITHER CONNECTICUT OR PENNSYLVANIA LAW**

A.  **Even if Connecticut law applies, EMCOR fails to show that the 40
claims fall within the definition of "products-completed operations
hazard"**

In its Memorandum of Law submitted in support of its motion for summary judgment,

INA demonstrated that, in Connecticut, coverage under a completed operations provision

requires a causal relationship between the bodily injury or property damage and EMCOR's work.

*See* INA Memorandum of Law at pp. 20-22. For the sake of brevity, INA will not repeat its

discussion herein.

Even under the causation analysis used in Connecticut, the evidence cited by EMCOR in

support of its position that 40 of the claims fall within the "products-completed operations

hazard" definition does not support a finding the bodily injury or property damage was caused by

EMCOR's work. Again, INA fully discusses the evidence with respect to each of these 40 claims

in Exhibit "A", attached to the declaration of Thomas A. Leghorn. In each of these claims, the

injuries were not in any sense "connected with," "grew out of," "flowed from," or were

"incidental to" EMCOR's work. See INA Memorandum of Law in support of its motion for

partial summary judgment at pp. 20-23.

Accordingly, EMCOR's motion with respect to these 40 claims should be denied and

INA's cross-motion granted.

819547.5

**B.     Even if Pennsylvania law applies, EMCOR fails to show that the 40 claims fall within the definition of "products-completed operations hazard"**

The evidence relied upon by EMCOR does not demonstrate that the bodily injury or property damage incurred in the 40 claims listed in Exhibit "A" arose out of EMCOR's work even if Pennsylvania law applies. EMCOR's motion should be denied and INA's cross motion granted.

Although Pennsylvania courts have not squarely dealt with the interpretation of the "arises out of" phrase as contained in a products-completed operations hazard definition, Pennsylvania courts, in interpreting the clause in other contexts, require a showing of causality to the injury.  For instance, in the additional insured context, the courts have declared that the "arises out of" phrase requires a showing of causality, including the very Pennsylvania case cited by EMCOR. *Township of Springfield v. Ersek*, 660 A.2d 672, 676 (Commonwealth Ct. 1995) ("arises out of" requires a showing of causality between the injury and the course of the additional insured's employment); s*ee also McCabe v. Old Republic Insurance Company*, 425 Pa. 221, 223, 228 A.2d 901, 903 (1967).  In the automobile context, the courts have interpreted the "arises out of" clause as requiring a causal connection as well.  *See U.S. Underwriters Insurance Co. v. Liberty Mutual Insurance Co.,* 80 F.3d. 90, 94-95 (3rd Cir. 1995) (applying Pennsylvania law); *Manufacturers Causality Insurance Company v. Goodville Mutual Insurance Company,* 403 Pa. 603, 607-608, 170 A.2d 571, 573 (1960).  Further, it has been cautioned that "every incidental factor that arguably contributes to an accident is not a 'but for' cause in the legal sense."  *U.S. Underwriters Insurance Co.,* 80 F.3d. at 94 (quoting *Berry v. Borough of Sugar Notch*, 43 A. 420 (Pa. 1899).  Extrapolating, it is clear that, when faced with a completed

- 21 -

operations provision that contains an "arises out of" clause, the Pennsylvania courts would require, at a minimum, that the injury alleged was causally related to the insured's work.

**POINT VI**

**EMCOR IS JUDICIALLY ESTOPPED FROM
ASSERTING THAT THE CLAIMS SUBMITTED FOR
COVERAGE UNDER THE 1993-1994 AND THE 1994-
1995 POLICIES ARE COMPLETED OPERATIONS**

Among the 40 cases that EMCOR seeks summary judgment are cases that were submitted for coverage under either the 1993-1994 or the 1994-1995 policy. These claims are listed in Exhibit "C" annexed to the Leghorn declaration.

As discussed in INA's Memorandum of Law in support of its motion for partial summary judgment, EMCOR should be estopped from now asserting that any claims submitted for coverage under these policies fall within the products completed hazard definition because of its prior inconsistent positions taken in litigation in New York. *See* INA Memorandum of Law at pp. 25-28. For the sake of brevity, INA will not repeat its discussion herein. Thus, as requested by INA in its motion, INA should be granted summary judgment on all claims submitted for coverage under the 1993-1994 and 1994-1995 policies and EMCOR's motion denied with respect to these claims.

819547.5

## POINT VII

**THIS COURT LACKS SUBJECT MATTER JURISDICTION
WITH RESPECT TO CLAIMS SUBMITTED FOR
COVERAGE UNDER THE 1992-1993 POLICY IN WHICH
NO LOSS PAYMENT WAS MADE AND FOR WHICH
EMCOR DID NOT PAY ANY DEFENSE COSTS**

The Constitution confines the judicial power of the federal courts to deciding cases or controversies. U.S. Const. Art. III, § 2, cl. 1. The doctrine of standing is derived directly from this constitutional provision. *See Allen v. Wright*, 468 U.S. 737, 751, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984). It focuses upon the party seeking to invoke federal jurisdiction, rather than upon the justiciability of the issue at stake in the litigation. *See Flast v. Cohen*, 392 U.S. 83, 99-100, 20 L. Ed. 2d 947, 88 S. Ct. 1942 (1968).

To have standing, "[a] plaintiff must [1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." 468 U.S. at 751; *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir., 1995). "A plaintiff must always have suffered 'a distinct and palpable injury to himself.'" *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 60 L. Ed. 2d 66, 99 S. Ct. 1601 (1979) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975)). The injury must be "concrete in nature and particularized to [the plaintiff]," *In re United States Catholic Conference (Abortion Rights Mobilization, Inc. v. Baker)*, 885 F.2d 1020, 1023-24 (2d Cir. 1989), *cert. denied* 495 U.S. 918, 109 L. Ed. 2d 309, 110 S. Ct. 1946 (1990), and not "abstract," "conjectural," or "hypothetical," *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983).

EMCOR asserts that the aggregate general limits for each of the policies were prematurely exhausted because, in part, 106 claims were improperly classified as general liability

819547.5

claims, the costs associated with each of the claims thereby depleting the aggregate general limit. With respect to the aggregate general limit contained in the 1992-1993 policy, only loss payments (i.e. payments made to settle a case or to pay a judgment) exhausted the limits. Expenditures in the defense of EMCOR did not.  See Exhibit 3, Bates No. 000143, INA Motion of Partial Summary Judgment; Thrasher deposition dated June 4, 2004 at p. 43.

Exhibit "B" annexed to the Leghorn declaration are the claims submitted for coverage under the 1992-1993 policy that EMCOR basis its action against INA for which no loss payment was made and for which EMCOR did not pay any costs associated with its defense.[8]  Exhibit "L", the loss run prepared by INA from its Risk Advantage database and served upon EMCOR in this case, shows the lack of any loss payments in column captioned "Loss Paid" with respect to the claims listed in Exhibit "B". Thus, the classification of these claims as completed operations did not reduce the 1992 – 1993 general aggregate limit. Accordingly, even if EMCOR was to succeed, and these claims were reclassified as products-completed operations hazard claims, there would be no effect on the aggregate general limit. EMCOR cannot dispute that it did not pay the defense costs associated with the claims listed in Exhibit "B".

In other words, EMCOR was not damaged by any improper classification of the claims listed in Exhibit "B". Accordingly, there is no live controversy with respect to these claims. INA's cross-motion should be granted and EMCOR's motion denied as to the claims listed in Exhibit "B".

---

[8] The claims in Exhibit "B" that EMCOR seeks summary judgment are identified with an asterisk.

819547.5

**POINT VIII**

**EMCOR'S MOTION MUST BE DENIED ON THE THREE
CLAIMS THAT IT DID NOT RECEIVE COURT LEAVE TO
ADD TO ITS THIRD AMENDED COMPLAINT**

Currently pending before this Court is INA's motion to strike the supplemental report of EMCOR's liability expert, William Stewart, because he was offering an opinion as to four claims that EMCOR never sought leave to add to its third amended complaint. Now, EMCOR, without leave and without there having been any discovery on these claims, seeks summary judgment with respect to three of these claims as listed in Exhibit "D" to the Leghorn declaration.

INA will not belabor the points and arguments it offered in support of its motion to strike. EMCOR began its review of virtually all claims that had been classified as general liability claims in late 1997 and selected those it believed to have been misclassified in 1998 through 2000. Exhibit "I" Reinhard deposition dated February 3, 2004 at p.105. The parties proceeded with discovery on the basis of the 106 claims that EMCOR identified in dispute in its initial pleadings dating back to 2000. At no time until well after discovery had ended did EMCOR identify any additional claims that it believed to have been improperly classified. There has been no discovery on these claims. It would be manifestly unfair to allow EMCOR to now seek summary judgment on these three claims. In fact, even Ms. Reinhard acknowledged during her deposition that each case should be subject to its own independent factual analysis. Exhibit "K", Reinhard deposition dated February 23, 2004 at p. 184. EMCOR's motion for summary judgment on the three claims runs counter to Ms. Reinhard's testimony.

Trial by ambush has long been rejected in federal court and should be rejected by this Court with respect to the newly asserted claims.

819547.5

**WHEREFORE,** for the reasons and authorities discussed herein Insurance Company of North America respectfully requests that this Court grant INA's cross-motion for summary judgment and deny EMCOR's motion for partial summary judgment.

Dated:      December 6, 2004
              White Plains, New York

Respectfully Submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: _____
          Thomas A. Leghorn (CT #22106)
          Richard S. Oelsner (on the brief)
          Carmen Chapman (on the brief)
          Terrence J. Cortelli (on the brief)
          Attorneys for Defendant
          INSURANCE COMPANY OF NORTH AMERICA
          3 Gannett Drive
          White Plains, New York 10604
          (914) 323-7000
          Fax (914) 323-7001
          File No.: 00756.35967


          Joseph B. Burns
          Co-Counsel
          Rome McGuigan Sabanosh, P.C.
          One State Street
          Hartford, Connecticut 06103
          (860) 549-1000
          Fax (860) 724-3921

819547.3